# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| KIMBALL HILL, INC., *et al.*,[1] | ) Case No. 08-10095 |
|  | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) Hon. Susan Pierson Sonderby |
|  | ) |
|  | ) |

## JOINT PLAN OF KIMBALL HILL, INC. AND ITS DEBTOR SUBSIDIARIES PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

KIRKLAND & ELLIS LLP

Paul M. Basta, Esq. (NY 2568046)
Catherine Peshkin, Esq. (NY MP 5400)
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Ray C. Schrock, Esq. (IL 6257005)
Lauren Hawkins, Esq. (IL 6288225)
Aon Center
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

Dated:  December 2, 2008

---

[1]    The Debtors in these cases include:  Kimball Hill, Inc.; 18th and Peoria, LLC; KH Financial Holding Company; KH Ingham Park South, LLC; KHH Texas Trading Company L.P.; Kimball Hill Far East Detroit, LLC; Kimball Hill Homes Austin, L.P.; Kimball Hill Homes California, Inc.; Kimball Hill Homes Dallas, L.P.; Kimball Hill Homes Florida, Inc.; Kimball Hill Homes Houston, L.P.; Kimball Hill Homes Illinois, LLC; Kimball Hill Homes Nevada, Inc.; Kimball Hill Homes Ohio, Inc.; Kimball Hill Homes Oregon, Inc.; Kimball Hill Homes Realty Florida, Inc.; Kimball Hill Homes San Antonio, L.P.; Kimball Hill Homes Texas Investments, L.L.C.; Kimball Hill Homes Texas Operations, L.L.C.; Kimball Hill Homes Texas, Inc.; Kimball Hill Homes Washington, Inc.; Kimball Hill Homes Wisconsin, Inc.; Kimball Hill Stateway, Inc.; Kimball Hill Texas Investment Company, L.L.C.; Kimball Hill Urban Centers Chicago One, L.L.C.; Kimball Hill Urban Centers Chicago Two, L.L.C.; Kimball Hill Urban Centers Special Purposes, LLC; Kimball Hill Urban Centers, L.L.C.; National Credit and Guaranty Corporation; and The Hamilton Place Partnership.

**THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101–1532 (THE "BANKRUPTCY CODE"). ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE.    THIS PLAN CONTAINS MATERIAL NON-PUBLIC INFORMATION.**

**THE PLAN IS PROVIDED IN THE NATURE OF A SETTLEMENT PROPOSAL IN FURTHERANCE OF SETTLEMENT DISCUSSIONS. ACCORDINGLY, THE PLAN IS ENTITLED TO THE PROTECTIONS OF RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL INFORMATION AND INFORMATION EXCHANGED IN THE CONTEXT OF SETTLEMENT DISCUSSIONS. NOTHING IN THE PLAN SHALL BE DEEMED TO BE THE SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. FURTHER, NOTHING IN THE PLAN SHALL BE AN ADMISSION OF FACT OR LIABILITY OR DEEMED BINDING ON THE DEBTORS.**

**********

K&E 13747550.

# TABLE OF CONTENTS

Page

INTRODUCTION................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW** ............................................1
    A.    Defined Terms .........................................................................................1
    B.    Rules of Interpretation and Computation of Time ................................15
    C.    Reference to Monetary Figures.............................................................16

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS**...........................................**16**
    A.    DIP Facility Claims..............................................................................16
    B.    Administrative Claims ..........................................................................16
    C.    Priority Tax Claims..............................................................................16

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND**
**INTERESTS** ..............................................................................................................**16**
    A.    Classification of Claims and Interests..................................................16
    B.    Treatment of Classes of Claims and Interests.....................................17
    C.    Intercompany Claims and Intercompany Interests ...............................21
    D.    Class Voting Rights .............................................................................21
    E.    Acceptance or Rejection of the Plan ....................................................22

**ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ........................**23**
    A.    Sale of Assets......................................................................................23
    B.    Post-Consummation Trust ...................................................................23
    C.    Liquidation Trust.................................................................................24
    D.    Cancellation of Debt and Equity Securities and Related Obligations ...................25
    E.    Corporate Action.................................................................................25
    F.    Effectuating Documents, Further Transactions ...................................26
    G.    Exemption from Certain Transfer Taxes and Recording Fees...............26
    H.    Employee and Retiree Benefits.............................................................26
    I.    Creation of Professional Fee Escrow Account .....................................26
    J.    Causes of Action.................................................................................27
    K.    Release of Liens..................................................................................29

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES** .............................................................................................**29**
    A.    Executory Contracts and Unexpired Leases to Be Assumed or Assumed
          and Assigned.......................................................................................29
    B.    Payments Related to the Assumption of Executory Contracts and
          Unexpired Leases................................................................................30
    C.    Executory Contracts and Unexpired Leases to Be Rejected.................30
    D.    Bar Date for Rejection Damages .........................................................31
    E.    Obligations to Indemnify Directors, Officers, and Employees..............31

**TABLE OF CONTENTS (cont'd)**

F.    Contracts and Leases Entered into After the Petition Date...................................31
G.    Reservation of Rights......................................................................................31

**ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
INTERESTS** .........................................................................................................**32**
A.    Allowance of Claims and Interests ..................................................................32
B.    Claims and Interests Administration Responsibilities .........................................32
C.    Estimation of Claims and Interests ..................................................................32
D.    Adjustment to Claims Without Objection..........................................................33
E.    Disallowance of Claims or Interests .................................................................33
F.    Offer of Judgment ........................................................................................33
G.    Amendments to Claims..................................................................................34

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS** .............................**34**
A.    Distributions on Account of Claims Allowed as of the Effective Date ................34
B.    Method of Distributions to Holders of Claims ...................................................34
C.    Distributions on Account of Claims Allowed After the Effective Date ...............34
D.    Delivery of Distributions ...............................................................................35
E.    Claims Paid or Payable by Third Parties ..........................................................38

**ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN**.............................**39**
A.    Subordinated Claims.....................................................................................39
B.    Compromise and Settlement of Claims and Controversies ..................................39
C.    Releases by the Debtors.................................................................................39
D.    Exculpation ................................................................................................40
E.    Releases by Holders of Claims and Interests.....................................................40
F.    Injunction ...................................................................................................41
G.    Setoffs .......................................................................................................41
H.    Recoupment ...............................................................................................42

**ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN
ADMINISTRATIVE CLAIMS**..........................................................................**42**
A.    Professional Claims .....................................................................................42
B.    Other Administrative Claims ..........................................................................44

**ARTICLE X. THE POST-CONSUMMATION TRUST; THE
PLAN ADMINISTRATOR**.................................................................................**44**
A.    Generally...................................................................................................44
B.    Purpose of the Post-Consummation Trust .........................................................44
C.    Transfer of Assets to the Post-Consummation Trust ...........................................45
D.    Distribution; Withholding ..............................................................................45
E.    Insurance ...................................................................................................45
F.    Post-Consummation Trust Implementation .......................................................45
G.    Termination of the Post-Consummation Trust ...................................................46
H.    Termination of the Plan Administrator .............................................................46
I.    Exculpation; Indemnification..........................................................................46
J.    Transferability of the Post-Consummation Trust Interests....................................46

K&E 13747550.

**TABLE OF CONTENTS (cont'd)**

**ARTICLE XI. THE LIQUIDATION TRUST; THE**
**LIQUIDATION TRUST ADMINISTRATOR**......................................................**46**
   A.    Generally....................................................................................46
   B.    Purpose of the Liquidation Trust ..............................................46
   C.    Transfer of Assets to the Liquidation Trust .............................47
   D.    Distribution; Withholding.........................................................47
   E.    Insurance ..................................................................................47
   F.    Liquidation Trust Implementation ...........................................48
   G.    Disputed Claims Reserve .........................................................48
   H.    Termination of the Liquidation Trust .......................................48
   I.    Termination of the Liquidation Trust Administrator.................48
   J.    Exculpation; Indemnification....................................................48
   K.    Transferability of the Liquidation Trust Interests....................48

**ARTICLE XII. CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THE PLAN** ................................................................**49**
   A.    Conditions to Confirmation .....................................................49
   B.    Conditions Precedent to Consummation...................................49
   C.    Waiver of Conditions Precedent ..............................................49
   D.    Effect of Non-Occurrence of Conditions to Confirmation .......50
   E.    Satisfaction of Conditions Precedent to Confirmation ............50

**ARTICLE XIII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF**
**THE PLAN** ..................................................................................................**50**
   A.    Modification and Amendments.................................................50
   B.    Effect of Confirmation on Modifications .................................50
   C.    Revocation or Withdrawal of Plan............................................51

**ARTICLE XIV. RETENTION OF JURISDICTION** .................................................**51**

**ARTICLE XV. MISCELLANEOUS PROVISIONS**..................................................**53**
   A.    Immediate Binding Effect........................................................53
   B.    Additional Documents ..............................................................53
   C.    Payment of Statutory Fees .......................................................54
   D.    Dissolution of Committee.........................................................54
   E.    Reservation of Rights................................................................54
   F.    Successors and Assigns.............................................................54
   G.    Service of Documents................................................................54
   H.    Term of Injunctions or Stays....................................................56
   I.    Entire Agreement .....................................................................56
   J.    Governing Law .........................................................................56
   K.    Exhibits ....................................................................................56
   L.    Nonseverability of Plan Provisions..........................................56
   M.    Waiver or Estoppel ..................................................................57
   N.    Conflicts...................................................................................57

K&E 13747550.

## PLAN SUPPLEMENT EXHIBITS LIST[2]

A.      Non-Exclusive List of Retained Causes of Action
B.      Schedule of Assumed Executory Contracts and Unexpired Leases
C.      Non-Exclusive Schedule of Rejected Executory Contracts and Unexpired Leases
D.      Post-Consummation Trust Agreement
E.      Liquidation Trust Agreement

---

[2]    To be filed on or before the Plan Supplement Filing Date.

K&E 13747550.

## INTRODUCTION

Kimball Hill, Inc. and the other debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") propose the following joint plan (the "Plan") for the resolution of outstanding creditor claims against, and interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, and results of operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan generally contemplates the creation of the Post-Consummation Trust and the Liquidation Trust, and the Pro Rata distribution of the net proceeds of the Post-Consummation Trust Assets to Holders of Senior Credit Agreement Claims and the Pro Rata distribution of the net proceeds of the Liquidation Trust Assets to the Holders of Senior Credit Agreement Claims and certain Unsecured Claims. The Debtors will solicit votes from Holders of Claims entitled to vote to accept or reject the Plan as set forth in more detail in the Disclosure Statement and Solicitation Procedures Order.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    Defined Terms:  As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    10 1/2% Senior Subordinated Notes:  The 10 1/2% senior subordinated notes due 2012 issued pursuant to the Senior Subordinated Notes Indenture.

2.    Accrued Professional Compensation:  At any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

3.    Administrative Claim:  A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services, and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the

Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

4.      Administrative Claim Bar Date:  The deadline for filing requests for payment of Administrative Claims for which a Bar Date to file an Administrative Claim has not previously been established, which shall be [___] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of ARTICLE IX.

5.      Administrative Claim Bar Date Order:  The Order, dated [_____], establishing the Administrative Claim Bar Date [Docket No. ____].

6.      Administrative   Expense   Allocation   Procedures:      All   Allowed Administrative Claims incurred from the Petition Date through November 30, 2008 shall be paid from the collateral securing the Senior Credit Agreement Claims; provided that the Allowed Professional fees and expenses incurred by the Creditors' Committee and its Professionals in connection with the investigation and prosecution of the claims set forth in the Committee Standing Motion shall be paid from the unencumbered assets of the Debtors. Ninety-five percent of Allowed Administrative Claims related to costs and expenses incurred from December 1, 2008 through the Effective Date shall be paid from the collateral securing the Senior Credit Agreement Claims and five percent of the Allowed Administrative Claims related to costs and expenses incurred from December 1, 2008 through the Effective Date shall be paid from the unencumbered assets of the Debtors; provided that the Allowed Professional fees and expenses incurred by the Creditors' Committee from and after December 1, 2008 through the Effective Date shall be paid from the unencumbered assets of the Debtors.

7.      Affiliate:  (a) an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (b) a corporation, twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by any of the Debtors, or by an Entity that directly or indirectly owns, controls, or holds with power to vote twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an Entity whose business is operated under a lease or operating agreement by any of the Debtors, or an Entity substantially all of whose property is operated under an operating agreement with any of the Debtors; (d) an Entity that operates the business or substantially all of the property of any of the Debtors under a lease or operating agreement; or (e) the Debtors' domestic and non-domestic, wholly-owned, direct and indirect subsidiaries that have not commenced cases under chapter 11 of the Bankruptcy Code; provided that no Joint Venture or non-Debtor partner or member of a Joint Venture shall be an Affiliate.

K&E 13747550.

8.    <u>Allowed</u>:  With respect to Claims and Interests:  (a) any Claim or Interest, proof of which is timely filed by the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be filed); (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not Disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely filed; or (c) any Claim Allowed pursuant to the Plan; <u>provided</u> that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that (x) no objection to the Allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order; <u>provided</u> <u>further</u> that the Claims and Interests described in clauses (a) and (b) above shall not include any Claim or Interest on account of an option to purchase an Interest that is not exercised by the Voting Deadline.  Except as otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.

9.    <u>Amended Schedule Bar Date</u>:  As set forth in the Bar Date Order, 30 days after a claimant is served with notice that the Debtors amended their Schedules to reduce, delete, or change the status of such claimant's Claim in the Schedules.

10.    <u>AmeriMark Bank $3,500,000 Promissory Note</u>:  That certain Promissory Note, dated as of September 10, 2007, given by Stonehill Square LLC, as borrower, to AmeriMark Bank, as lender, and guaranteed by Kimball Hill.

11.    <u>AmeriMark Bank $4,800,000 Promissory Note</u>:  That certain Promissory Note, dated as of February 16, 2006, given by Kimball Hill, as borrower, to AmeriMark Bank, as lender.

12.    <u>Ballot or Ballots</u>:  The ballots upon which Holders of Impaired Claims or Interests entitled to vote shall cast their vote to accept or reject the Plan.

13.    <u>Bankruptcy Code</u>:  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

14.    <u>Bankruptcy Court</u>:  The United States Bankruptcy Court for the Northern District of Illinois or any other court having jurisdiction over the Chapter 11 Cases.

15.    <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

16.    <u>Bar Date</u>:  The later of: (i) August 1, 2008 or, for Governmental Units, the Governmental Bar Date; and (ii) the Amended Schedule Bar Date; except, as applicable, (a) the Rejection Bar Date, (b) the Cure Bar Date, or (c) as otherwise provided in the Bar Date Order, the Administrative Claim Bar Date Order, the Plan, or by another Bankruptcy Court order.

K&E 13747550.

17.    Bar Date Order:    That certain Order (a) Setting Bar Dates for Filing Proofs of Claim and (b) Approving the Form and Manner of Notice Thereof entered by the Bankruptcy Court on June 11, 2008 [Docket No. 359].

18.    Beneficial Holder:    The Entity holding the beneficial interest in a Claim or Interest.

19.    Business Day:    Any day, other than a Saturday, Sunday, or legal holiday.

20.    Cash:    Cash and cash equivalents.

21.    Cause of Action:    Any claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Cause of Action also includes:   (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any Released or Exculpated Party based in whole or in part upon acts or omissions occurring prior to or after the Petition Date; and (g) any claim listed in the Plan Supplement.

22.    Certificate:    Any instrument evidencing a Claim or an Interest.

23.    Chapter 11 Cases:    The chapter 11 cases filed by the Debtors on the Petition Date in the Bankruptcy Court with case numbers:    08-10095, 08-10102, 08-10107, 08-10111, 08-10116, 08-10119, 08-10121, 08-10122, 08-10123, 08-10125, 08-10126, 08-10128, 08-10130, 08-10131, 08-10132, 08-10134, 08-10135, 08-10136, 08-10138, 08-10140, 08-10141, 08-10144, 08-10146, 08-10147, 08-10149, 08-10151, 08-10153, 08-10156, 08-10158, and 08-10159.

24.    Claim:    (a) Any claim as defined in section 101(5) of the Bankruptcy Code against a Debtor; and (b) with respect to ARTICLES VIII.C, D, E, and F, any claim as defined in section 101(5) of the Bankruptcy Code against the applicable Entities referenced therein.

25.    Claims and Solicitation Agent:    Kurtzman Carson Consultants, LLC.

26.    Claims Register:    The official register of Claims and Interests maintained by the Claims and Solicitation Agent.

27.    Class:    A class of Holders of Claims or Interests as set forth in the Plan.

28.    CM/ECF:    The Bankruptcy Court's Case Management and Electronic Case Filing system, which can be accessed at https://ecf.ilnb.uscourts.gov/cgi-bin/login.pl.

K&E 13747550.

29.   <u>Committee Settlement Payment</u>:  The sum of $6 million in Cash to be paid by the Post-Consummation Trust to the Liquidation Trust on the Effective Date, $2.1 million of which will be paid to the Holders of Allowed Unsecured Senior Subordinated Note Claims from the Liquidation Trust pursuant to the terms set forth herein, as part of the full and final resolution of any and all claims and causes of action that could be or were asserted by the Creditors' Committee, on behalf of the Debtors' Estates, against the Prepetition Agent and the Prepetition Lenders which are described, in part, in the Disclosure Statement and the Committee Standing Motion.

30.   <u>Committee Standing Motion</u>:  The Motion of the Official Committee of Unsecured Creditors of Kimball Hill, Inc., et al., Pursuant to 11 U.S.C. §§ 105(a), 1103(c) and 1109(b), for Entry of an Order Granting Leave, Standing and Authority to Prosecute Causes of Action on Behalf of the Debtors' Estates dated August 28, 2008 [Docket No. 602].

31.   <u>Confirmation</u>:  The entry of the Confirmation Order, subject to all conditions specified in ARTICLE XII having been satisfied or waived pursuant to ARTICLE XII.

32.   <u>Confirmation Date</u>:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

33.   <u>Confirmation Hearing</u>:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

34.   <u>Confirmation Hearing Notice</u>:  The notice approved pursuant to the Solicitation Procedures Order that sets forth the date of the Confirmation Hearing, as well as the voting and objection deadlines with respect to the Plan.

35.   <u>Confirmation Order</u>:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

36.   <u>Consummation</u>:  The occurrence of the Effective Date.

37.   <u>Creditor</u>:  A Holder of a Claim.

38.   <u>Creditors' Committee</u>:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

39.   <u>Cure</u>:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the parties, in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an Executory Contract or Unexpired Lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

40.   <u>Cure Amount Claim</u>:  A Claim based upon a Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

K&E 13747550.

41.    Cure Bar Date:  The deadline for filing requests for payment of Cure, which shall be the later of:  (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable Executory Contract or Unexpired Lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease.

42.    Debtor:  Each of the following Entities:  Kimball Hill; 18th and Peoria, LLC; KH Financial Holding Company; KH Ingham Park South, LLC; KHH Texas Trading Company L.P; Kimball Hill Far East Detroit, LLC; Kimball Hill Homes Austin, L.P.; Kimball Hill Homes California, Inc.; Kimball Hill Homes Dallas, L.P.; Kimball Hill Homes Florida, Inc.; Kimball Hill Homes Houston, L.P.; Kimball Hill Homes Illinois, LLC; Kimball Hill Homes Nevada, Inc.; Kimball Hill Homes Ohio, Inc.; Kimball Hill Homes Oregon, Inc.; Kimball Hill Homes Realty Florida, Inc.; Kimball Hill Homes San Antonio, L.P.; Kimball Hill Homes Texas Investments, L.L.C.; Kimball Hill Homes Texas Operations, L.L.C.; Kimball Hill Homes Texas, Inc.; Kimball Hill Homes Washington, Inc.; Kimball Hill Homes Wisconsin, Inc.; Kimball Hill Stateway, Inc.; Kimball Hill Texas Investment Company, L.L.C.; Kimball Hill Urban Centers Chicago One, L.L.C.; Kimball Hill Urban Centers Chicago Two, L.L.C.; Kimball Hill Urban Centers Special Purposes, LLC; Kimball Hill Urban Centers, L.L.C.; National Credit and Guaranty Corporation; and The Hamilton Place Partnership.

43.    Diminution Claim:  The Claim of the Holders of Allowed Senior Credit Agreement Claims for the diminution in the value of their collateral during the pendency of the Chapter 11 Cases, whether pursuant to section 507(b) of the Bankruptcy Code or otherwise.

44.    DIP Facility:  That certain promissory note, by and among the Debtors and the DIP Lender, dated as of April 24, 2008, and approved by the Bankruptcy Court in the Final Order (I) Authorizing Debtors to Obtain, and the Debtors' Corporate Parent to Provide, Secured Postpetition Financing on a Super-Priority and Priming Lien Basis and (II) Authorizing the Debtors to Use Cash Collateral of Existing Prepetition Secured Lenders and Granting Related Adequate Protection [Docket No. 168].

45.    DIP Facility Claim:  Any Claim on account of the DIP Facility.

46.    DIP Lender:  Kimball Hill.

47.    Disbursing Agent:  The Post-Consummation Trust or the Liquidation Trust, as applicable, each in its capacity as a disbursing agent pursuant to ARTICLE VII or any Third Party Disbursing Agent.

48.    Disclosure Statement:  The disclosure statement for the Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

49.    Disputed:  With respect to any Claim or Interest, any Claim or Interest listed on (a) the Claims Register that is not yet Allowed, or (b) the Schedules as disputed.

50.     <u>Distribution Date</u>:  The date when distributions under the Plan shall commence, which date shall occur as soon as reasonably practicable after the Effective Date, but not later than ten calendar days after the Effective Date without further Bankruptcy Court order.

51.     <u>Distribution Record Date</u>:  The date for determining which Holders of Allowed Claims, except Holders of publicly traded Certificates, are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

52.     <u>Effective Date</u>:  The date selected by the Debtors, in consultation with the Prepetition Agent and the Creditors' Committee, that is a Business Day after the Confirmation Date on which the conditions as specified in ARTICLE XII of the Plan have been satisfied or waived.  Unless otherwise specifically provided in the Plan, anything required to be done by the Debtors on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

53.     <u>Estate</u>:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

54.     <u>Exculpated Claim</u>:  Any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation or Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other agreement.

55.     <u>Exculpated Party</u>:     Each of: (a) the Debtors and their Affiliates; (b) the DIP Lender in its capacity as such; (c) the Prepetition Agent and the Prepetition Lenders, each in their capacities as such; (d) the Creditors' Committee and the members thereof in their capacities as such; (e) the Indenture Trustee; (f) the Plan Administrator in its capacity as such; (g) the Liquidation Trust Administrator in its capacity as such; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' subsidiaries, affiliates, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacities as such; <u>provided</u> that clause (h) shall not include officers, directors, or employees of the Debtors who were no longer acting in such capacity on the Petition Date.

56.     <u>Executory Contract</u>:  A contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

57.     <u>Federal Judgment Rate</u>:  The federal judgment rate of 1.67%, which was in effect as of the Petition Date.

58.     <u>Final Decree</u>:   The decree or decrees for each of the Chapter 11 Cases contemplated under Bankruptcy Rule 3022.

-7-

59.    Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the Debtors, in consultation with the Creditors' Committee and the Prepetition Agent, or the Plan Administrator or Liquidation Trust Administrator, as applicable, with respect to any matter to which any of the foregoing is a party, reserve the right to waive any such appeal or similar conditions of a Final Order; provided further that the Debtors will obtain the consent of (i) the Creditors' Committee or Prepetition Agent, as applicable, with respect to any Final Orders entered in connection with any pending litigation or contested matter to which the Creditors' Committee or Prepetition Agent, as applicable, is a party, and (ii) the Creditors' Committee and the Prepetition Agent, as applicable, with respect to any appeal regarding Confirmation, the resolution of any substantial contribution applications, or the resolution of applications regarding Professionals' Claims.

60.    General Unsecured Claim:  Any Claim against any of the Debtors that is not a/an: (a) DIP Facility Claim;              (b) Administrative Claim;              (c) Priority Tax Claim; (d) Priority Non-Tax Claim; (e) Senior  Credit  Agreement  Claim; (f) Other  Secured  Claim; (g) Secured Bank Claim; (h) Senior Unsecured Claim; (i) Unsecured Senior Subordinated Note Claim; (j) Intercompany Claim; or (k) Subordinated Debt Securities Claim.

61.    Governmental Bar Date:  December 8, 2008.

62.    Holder:  An Entity holding a Claim or Interest, as applicable.

63.    Impaired:  With respect to any Class of Claims or Interests, impairment within the meaning of section 1124 of the Bankruptcy Code.

64.    Indemnification Obligation:  A Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

65.    Indenture Trustee:  In its capacity as such, the indenture trustee for the 10 1/2% Senior Subordinated Notes.

66.    Intercompany Claim:  A Claim held by a Debtor or an Affiliate.

67.    Intercompany Interest:  An Interest held by a Debtor or an Affiliate.

68.    Interest:  Any:  (a) equity security in a Debtor, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual

rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in a Debtor.

69.    <u>Interest Accrual Limitation Date</u>:  The Effective Date.

70.    <u>Interim Compensation Order</u>:  The order, entitled "Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals," entered by the Bankruptcy Court on May 13, 2008 [Docket No. 179], allowing Professionals to seek interim compensation in accordance with the compensation procedures approved therein, as the same may have been modified by any Bankruptcy Court order approving the retention of any Professional.

71.    <u>Joint Venture</u>:  Each of the following Entities:  ABC Title, LLC; Bing Cherry Development Group, LLC; Fieldstone Investments, LP; Greenwood, Berkley, Ellis, LLC; KH Mortgage LLC; KH SRAV I, LLC; Kyle Acquisition Group, LLC; Mitchell Urban Partners LLC; New Far East Side Development Co., L.L.C.; Park Boulevard, LLC; Park Boulevard 1B, LLC; Park Boulevard 1B, L.P.; Parkside Associates, LLC; Parkside Four I, LLC; Parkside Four Phase I, L.P.; Parkside Nine I, LLC; Parkside Nine Phase I, L.P.; Parkside Old Town I, LLC; Premier Title Company of Dallas, L.C.; Premier Title Company of Houston, L.C.; Regency Oaks Limited Partnership; Sherwood Glen on the Fox Apartments Unit 2; Sherwood Glen on the Fox Apartments; Sunridge Park Limited Partnership; South Edge, LLC; Stateway Associates, LLC; WKMM, LLC; Woodridge Residential, L.P.; WSH Development Company, LLC; and Wynndam, LLC.

72.    <u>Judicial Code</u>:  Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

73.    <u>Kimball Hill</u>:  Kimball Hill, Inc.

74.    <u>Kimball Hill Common Stock</u>:  All of the authorized, issued, and outstanding shares of common stock of Kimball Hill as of immediately prior to the Effective Date.

75.    <u>Liquidation Trust</u>:  That certain Liquidation Trust to be created on the Effective Date in accordance with the provisions of ARTICLE XI of the Plan and the Liquidation Trust Agreement.

76.    <u>Liquidation Trust Administrator</u>:    The  Entity  designated  by  the Creditors' Committee, with the consent of the Prepetition Agent, on or before the Confirmation Date and retained as of the Effective Date to administer the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement, and any successor appointed in accordance with the Liquidation Trust Agreement.

77.    <u>Liquidation Trust Agreement</u>:  That certain trust agreement, substantially on the terms set forth on <u>Exhibit E</u> and in form and substance acceptable to the Debtors, the Creditors' Committee, and the Prepetition Agent that, among other things: (a) establishes and governs the Liquidation Trust; and (b) describes the powers, duties, and responsibilities of the Liquidation Trust Administrator, the liquidation of the Liquidation Trust Assets, and the distribution of the proceeds thereof.

K&E 13747550.

78.    <u>Liquidation Trust Assets</u>:    Those assets listed on an exhibit to the Liquidation Trust Agreement, which will be transferred on the Effective Date to, and owned by, the Liquidation Trust.

79.    <u>Liquidation Trust Beneficiaries</u>:  The Holders of Claims that are to be satisfied under the Plan by post-Effective Date distributions to be made by the Liquidation Trust.

80.    <u>Liquidation Trust Budget</u>:  The budget for the expenses projected to be paid by the Liquidation Trust, which budget will be an exhibit to the Liquidation Trust Agreement.

81.    <u>Liquidation Trust Claims</u>:    Those Causes of Action identified in the Liquidation Trust Agreement, which will include certain Causes of Action arising under chapter 5 of the Bankruptcy Code that are not released under the Plan or other Bankruptcy Court-approved settlements; <u>provided</u> that such actions shall not include Causes of Action which, if prosecuted, would have a direct adverse effect on the Post-Consummation Trust Assets.

82.    <u>Liquidation Trust Interests</u>:  The beneficial interests in the Liquidation Trust to be distributed to certain Holders of Claims in accordance with the terms of the Plan.

83.    <u>Liquidation Trust Series A Interests</u>:  The series A beneficial interests in the Liquidation Trust to be distributed to the Holders of Allowed Senior Credit Agreement Claims, which interests shall represent 64% of the aggregate Liquidation Trust Interests.

84.    <u>Liquidation Trust Series B Interests</u>:  The series B beneficial interests in the Liquidation Trust to be distributed to the Holders of Allowed Unsecured Claims, which interests shall represent 36% of the aggregate Liquidation Trust Interests.

85.    <u>Master Ballots</u>:  The master ballots upon which the applicable Nominee or other Holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

86.    <u>Nominee</u>:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

87.    <u>Notice of Confirmation</u>:    That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

88.    <u>Other Secured Claims</u>:  Any Secured Claim that is not a DIP Facility Claim, a Senior Credit Agreement Claim, or a Secured Bank Claim.

89.    <u>Periodic Distribution Date</u>:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

90.    <u>Petition Date</u>:  April 23, 2008.

91.    <u>Plan</u>:    This joint plan of the Debtors pursuant to chapter 11 of the Bankruptcy Code, together with the Plan Supplement, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

92.    <u>Plan Administrator</u>:    The Entity appointed by the Prepetition Lenders to administer the Plan and the Post-Consummation Trust in accordance with the Plan and the Post-Consummation Trust Agreement, and any successor appointed in accordance with the Post-Consummation Trust Agreement.

93.    <u>Plan Objection Deadline</u>:    The date set forth in the Bankruptcy Court order approving the Disclosure Statement as the deadline for filing objections to the Plan.

94.    <u>Plan Supplement</u>:    The compilation of documents and forms of documents, schedules, and exhibits to the Plan, which shall be in form and substance acceptable to the Prepetition Agent and the Creditors' Committee and filed no later than the Plan Supplement Filing Date.

95.    <u>Plan Supplement Filing Date</u>:    The date that is fourteen days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest.

96.    <u>Post-Consummation Trust</u>:    That certain trust to be created on the Effective Date in accordance with the provisions of ARTICLE X of the Plan and the Post-Consummation Trust Agreement.

97.    <u>Post-Consummation Trust Agreement</u>:    That certain trust agreement, substantially in the terms set forth on <u>Exhibit D</u>, satisfactory to the Debtors, the Creditors' Committee, and the Prepetition Agent, that, among other things: (a) establishes and governs the Post-Consummation Trust; and (b) describes the powers, duties, and responsibilities of the Plan Administrator and the liquidation and distribution of proceeds of the Post-Consummation Trust Assets.

98.    <u>Post-Consummation Trust Assets</u>:    All assets of the Debtors and the proceeds thereof that are not listed as transferred to the Liquidation Trust in the Liquidation Trust Agreement.

99.    <u>Post-Consummation Trust Beneficiaries</u>:    The Holders of Claims that are to be satisfied under the Plan by post-Effective Date distributions to be made by the Post-Consummation Trust.

100.    <u>Post-Consummation Trust Budget</u>:    The budget for the expenses projected to be paid by the Post-Consummation Trust (including Administrative Claims and Priority Claims), which budget will be an exhibit to the Post-Consummation Trust Agreement.

-11-

101.   <u>Post-Consummation Trust Expenses</u>:   The costs and expenses necessary to administer and perform the contemplated functions of the Post-Consummation Trust as set forth in the Post-Consummation Trust Agreement.

102.   <u>Pre-Effective Date Sale Transactions</u>:  Any sale of all or a portion of the Debtors' assets through one or more transactions to be consummated subsequent to Confirmation and prior to Consummation.

103.   <u>Prepetition Agent</u>:      Harris, N.A., as administrative agent under the Senior Credit Agreement.

104.   <u>Prepetition Lender</u>:   Any lender under the Senior Credit Agreement as of the Effective Date.

105.   <u>Priority Non-Tax Claim</u>:   Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

106.   <u>Priority Tax Claim</u>:  Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

107.   <u>Pro Rata</u>:  Means:  (i) the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class; or (ii) if applicable, the proportion that the amount of an Allowed Claim is to receive as a particular distribution that is being shared among Classes compared to the aggregate amount of Allowed Claims entitled to receive such distribution under the terms of the Plan.

108.   <u>Professional</u>:   Either an Entity:   (a) employed pursuant to a Bankruptcy Court order in accordance with section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code;  (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(5) of the Bankruptcy Code; or (c) the Debtors' restructuring and financial advisors, Alvarez and Marsal North America, LLC.

109.   <u>Professional Fee Escrow Account</u>:   An interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Debtors or the Plan Administrator, as applicable, on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Professionals in the Chapter 11 Cases.

110.   <u>Professional Fee Reserve Amount</u>:  Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with ARTICLE IX.A.3.

111.   <u>Proof of Claim</u>:   A proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

112.   <u>Proof of Interest</u>:   A proof of Interest filed against any of the Debtors in the Chapter 11 Cases.

113.   <u>Rejection Claims Bar Date</u>:  The Bar Date by which Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease must file their Proof of Claim, which date is on or before the latest of:  (a) the generally applicable Bar Date; (b) 30 days after the date of entry of any order authorizing the rejection of an Executory Contract or Unexpired Lease;  and  (c) 30 days  after  the  effective  date  of  the  rejection  of  such Executory Contract or Unexpired Lease.

114.   <u>Released Party</u>:  Each of:  (a) the Debtors and their Affiliates; (b) the DIP Lender in its capacity as such; (c) the Prepetition Agent and Prepetition Lenders, each in their capacities as such; (d) the Creditors' Committee and the members thereof in their capacities as such; (e) the Indenture Trustee;   (f)  the   Plan Administrator   in   its   capacity   as   such;   (g)   the Liquidation Trust Administrator in its capacity as such; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' subsidiaries, affiliates, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacities as such; <u>provided</u> that clause (h) shall not include officers, directors, or employees of the Debtors who were no longer acting in such capacity on the Petition Date.

115.   <u>Schedules</u>:    The  schedules  of  assets  and  liabilities,  schedules  of Executory Contracts, and statements of financial affairs, as may be amended from time to time, filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

116.   <u>Secured</u>:  A Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

117.   <u>Secured Bank Claim</u>:  Any Claim arising under or in connection with either the AmeriMark   Bank   $4,800,000   Promissory   Note   or   the AmeriMark Bank $3,500,000 Promissory Note to the extent such Claim is Secured.

118.   <u>Senior Credit Agreement</u>:    That certain Credit Agreement, dated as of December 21, 2005, among Kimball Hill, as borrower, each of the Debtors (other than Kimball Hill), as guarantors from time to time, the Prepetition Agent, and the other Prepetition Lenders, as modified, amended and/or restated thereafter, including under that certain Amended and Restated Senior Credit Facility dated as of August 10, 2007 as the same was modified or amended prior to the date hereof.

119.   <u>Senior Credit Agreement Claims</u>:  Both (a) the Secured Claims arising under the Senior Credit Agreement,   and   (b) the  unsecured  deficiency  Claims  arising  under  the Senior Credit Agreement in an amount equal to the difference between the amount of the Senior Credit Agreement Claims and the aggregate value of the collateral pledged to secure such Claims.

-13-

120.    Senior Subordinated Notes Indenture:    That certain Indenture, dated as of December 19, 2005, among Kimball Hill, as issuer, certain Kimball Hill subsidiaries, as guarantors, and U.S. Bank National Association, as Indenture Trustee, as amended from time to time.

121.    Senior Unsecured Claim:  Any Unsecured Claim that is entitled to the benefits of the subordination provisions in the Senior Subordinated Notes Indenture, other than the Senior Credit Agreement Claims.

122.    Servicer:  An indenture trustee, agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

123.    Solicitation Procedures Order:    That certain order entered by the Bankruptcy Court on [January 13], 2009, approving certain solicitation procedures for solicitation of votes on the Plan [Docket No. [_____]].

124.    Subordinated Debt Securities Claim:  Any Claim of the type described in and subject to subordination pursuant to section 510(b) of the Bankruptcy Code relating to the 10 1/2% Senior Subordinated Notes.

125.    Third    Party    Disbursing    Agent:    A    Person    designated    by    the Post-Consummation Trust or the Liquidation Trust, as applicable, to act as a Disbursing Agent.

126.    Unclaimed Distribution:  Any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Plan Administrator or the Liquidation Trust Administrator, as applicable, of an intent to accept a particular    distribution;    (c) responded    to    the    Plan Administrator's    or Liquidation Trust Administrator's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

127.    Unexpired Lease:  A lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

128.    Uniform Commercial Code:  The Uniform Commercial Code as in effect on the Effective Date, as enacted in the applicable state.

129.    Unimpaired:  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is Unimpaired within the meaning of section 1124 of the Bankruptcy Code.

130.    Unsecured Claim:  Any Senior Unsecured Claim, General Unsecured Claim, or Unsecured Senior Subordinated Note Claim.

131.    Unsecured Senior Subordinated Note Claim:  Any Claim arising under or in connection    with    the    Senior    Subordinated    Notes    Indenture    or    the 10 1/2% Senior Subordinated Notes, except that any Subordinated Debt Securities Claim relating to securities issued under the Senior Subordinated Notes Indenture shall not be an Unsecured Senior Subordinated Note Claim.

-14-

132.    Utility Deposit Account:  That certain utility deposit account holding an aggregate of approximately 50% of the Debtors' estimated cost of their monthly utility consumption established pursuant to the Final Order Granting Debtors' Motion for Entry of an Order Determining Adequate Assurance of Payment for Future Utility Services [Docket No. 176].

133.    Voting Deadline:  [_____], 2009.

B.      Rules of Interpretation and Computation of Time.

1.      Rules of Interpretation:  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are references to Articles of the Plan or to the Plan; (f) unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement; (g) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (n) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

2.      Computation of Time:  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

-15-

C.      Reference to Monetary Figures:  All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

# ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

A.      DIP Facility Claims:  In full satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, on or as soon as reasonably practicable after the Effective Date, the Post-Consummation Trust shall pay the DIP Facility Claims in full in Cash to the Liquidation Trust.

B.      Administrative Claims:  In full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Administrative Claim, each Holder thereof shall be paid in full in Cash (a) on the Effective Date or as soon as reasonably practicable thereafter, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after such Claim is Allowed, or (c) upon such other terms as may be agreed upon by such Holder and (i) the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee or (ii) the Plan Administrator or the Liquidation Trust Administrator, as applicable, or otherwise pursuant to an order of the Bankruptcy Court.

C.      Priority Tax Claims:  In full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive on, or as soon as reasonably practicable after the Effective Date, and in each case to be paid out of the collateral securing the Senior Credit Agreement Claims: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) Cash in an amount agreed to by such Holder and the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, or the Plan Administrator, with the consent of the Liquidation Trust Administrator, as applicable; or (c) at the option of the Plan Administrator, with the consent of the Liquidation Trust Administrator, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

A.      Classification of Claims and Interests:      All Claims and Interests, except DIP Facility Claims, Administrative Claims, Priority Tax Claims, Intercompany Claims, and Intercompany Interests are classified in the Classes set forth in ARTICLE III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or

-16-

Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

      1.    <u>Class Identification</u>:  Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type | Impairment | Entitled to Vote |
|-------|------------------------|------------|------------------|
| A-1 | Senior Credit Agreement Claims | Impaired | Yes |
| A-2 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| A-3 | Secured Bank Claims | Unimpaired | No (presumed to accept) |
| B | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| C-1 | Senior Unsecured Claims | Impaired | Yes |
| C-2 | General Unsecured Claims | Impaired | Yes |
| C-3 | Unsecured Senior Subordinated Note Claims | Impaired | Yes |
| D | Subordinated Debt Securities Claims | Impaired | No (presumed to reject) |
| E | Interests | Impaired | No (presumed to reject) |

    B.    <u>Treatment of Classes of Claims and Interests</u>.  To the extent a Class contains Allowed Claims or Interests, the treatment provided to each Class for distribution purposes is specified below.

      1.    <u>Classes A-1—Senior Credit Agreement Claims</u>.

        a.    <u>Classification</u>:  Class A-1 consists of all Senior Credit Agreement Claims.

        b.    <u>Impairment and Voting</u>:  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class A-1 is entitled to vote to accept or reject the Plan.

        c.    <u>Treatment</u>:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class A-1, each Class A-1 Claim asserted in the master Proof of Claim filed by the Prepetition Agent on behalf of all Prepetition Lenders (Proof of Claim No. 1657) shall be Allowed as of the Effective Date (without prejudice to the allowance of other Senior Credit Agreement Claims filed by individual Holders of Class A-1 Claims) and each Holder of an Allowed Class A-1 Claim shall receive:

          (i)    its Pro Rata share of the beneficial interests of the Post-Consummation Trust;

K&E 13747550.

(ii)    its Pro Rata share of the payment on account of the Diminution Claim, which is Allowed in the amount of $10 million and shall be paid in full in Cash on the Effective Date;

(iii)    its Pro Rata share of 64% of the proceeds of the Pre-Effective Date Sale Transactions allocable to the Debtors' unencumbered assets; and

(iv)    its Pro Rata share of 100% of the Liquidation Trust Series A Interests.

In addition, the reasonable fees and expenses of the Prepetition Agent's attorneys and financial advisor incurred in connection with the consummation, administration, and enforcement of the Plan shall be paid from Post-Consummation Trust Assets.

Except as otherwise set forth herein, distributions to Allowed Senior Credit Agreement Claims give effect to the subordination provisions of the Senior Subordinated Notes Indenture.

Further, each Holder of an Allowed Senior Credit Agreement Claim shall be deemed to consent to the distribution of $2.1 million in Cash from the Committee Settlement Payment to Holders of Allowed Unsecured Senior Subordinated Note Claims on the Effective Date as part of the global settlement between the Debtors, the Creditors' Committee, and the Prepetition Agent.

2.    <u>Classes A-2—Other Secured Claims</u>.

a.    <u>Classification</u>:  Class A-2 consists of all Other Secured Claims.

b.    <u>Impairment and Voting</u>:  Class A-2 is Unimpaired by the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.    <u>Treatment</u>:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Other Secured Claim, each Allowed Other Secured Claim shall receive one of the following treatments, unless otherwise agreed to by the Holder of such Allowed Other Secured Claim:

(i)    payment in full in Cash of such Allowed Other Secured Claim from the net proceeds of the collateral securing such Claim;

(ii)    delivery of the collateral securing any such Allowed Other Secured Claim and any interest required to be paid under section 506(b) of the Bankruptcy Code; or

(iii)    such Allowed Other Secured Claim will otherwise be rendered Unimpaired.

K&E 13747550.

3.      Classes A-3—Secured Bank Claims.

a.      Classification:  Classes A-3 consists of all Secured Bank Claims.

b.      Impairment and Voting:  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Claim in Class A-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Secured Bank Claim, each Allowed Secured Bank Claim shall receive one of the following treatments, unless otherwise agreed to by the Holder of such Allowed Secured Bank Claim:

(i)      payment in full in Cash of such Allowed Secured Bank Claim from the net proceeds of the collateral securing such Claim;

(ii)     delivery of the collateral securing any such Allowed Secured Bank Claim and any interest required to be paid under section 506(b) of the Bankruptcy Code; or

(iii)    such Allowed Secured Bank Claim will otherwise be rendered Unimpaired.

4.      Class B—Priority Non-Tax Claims.

a.      Classification:  Class B consists of all Priority Non-Tax Claims.

b.      Impairment and Voting:  Class B is Unimpaired by the Plan.  Each holder of an Allowed Claim in Class B is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.      Treatment:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim in Class B, each Holder of an Allowed Priority Non-Tax Claim shall be paid in full in Cash from the collateral securing the Senior Credit Agreement Claims.

5.      Class C-1—Senior Unsecured Claims.

a.      Classification:  Class C-1 consists of all Senior Unsecured Claims.

b.      Impairment and Voting:  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-1 is entitled to vote to accept or reject the Plan.

c.      Treatment:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Senior Unsecured Claim, each Holder of an Allowed Senior Unsecured Claim shall receive:

-19-

(i)      its Pro Rata share of 36% of the proceeds of the Pre-Effective Date Sale Transactions allocable to the Debtors' unencumbered assets;

(ii)     its Pro Rata share of 100% of the Liquidation Trust Series B Interests; and

(iii)    its Pro Rata share of $3.9 million from the Committee Settlement Payment.

Except as otherwise set forth herein, distributions to Allowed Senior Unsecured Claims give effect to the subordination provisions of the Senior Subordinated Notes Indenture.

6.      <u>Class C-2—General Unsecured Claims</u>.

a.      <u>Classification</u>:  Class C-2 consists of all General Unsecured Claims.

b.      <u>Impairment and Voting</u>:  Class C-2 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-2 is entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive:

(i)      its Pro Rata share of 36% of the proceeds of the Pre-Effective Date Sale Transactions allocable to the Debtors' unencumbered assets;

(ii)     its Pro Rata share of 100% of the Liquidation Trust Series B Interests; and

(iii)    its Pro Rata share of $3.9 million from the Committee Settlement Payment.

7.      <u>Class C-3—Unsecured Senior Subordinated Note Claims</u>.

a.      <u>Classification</u>:  Class C-3 consists of all Unsecured Senior Subordinated Note Claims.

b.      <u>Impairment and Voting</u>:  Class C-3 is Impaired by the Plan.  Each Holder of an Allowed Claim in Class C-3 is entitled to vote to accept or reject the Plan.

c.      <u>Treatment</u>:  In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Unsecured Senior Subordinated Note Claim, each Holder of an Allowed Unsecured Senior Subordinated Note Claim shall receive and retain its Pro Rata share of $2.1 million in Cash from the Committee Settlement Payment; <u>provided</u> that (a) if Class C-3 votes to reject the Plan, or (b) if any Holder of an Allowed Unsecured Senior Subordinated Note Claim or the Indenture Trustee objects to Confirmation of the Plan or files a notice of appeal of the Confirmation Order, then the Cash payment contemplated by this paragraph shall not be made and Holders of Allowed

-20-

Unsecured Senior Subordinated Note Claims shall not receive and retain a distribution under the Plan and, in such event, the $2.1 million in Cash described above shall revert to Holders of Liquidation Trust Series B Interests for distribution in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

For the avoidance of doubt, the treatment and distributions to be paid to the Holders of Allowed Senior Credit Agreement Claims and Senior Unsecured Claims give effect to the subordination provisions of the Senior Subordinated Notes Indenture and section 510(a) of the Bankruptcy Code, and the distribution to be retained by the Holders of Allowed Unsecured Senior Subordinated Note Claims has been provided solely out of the recovery to the Holders of Allowed Senior Credit Agreement Claims.

8.    Class D—Subordinated Debt Securities Claims.

    a.    Classification:  Class D consists of all Subordinated Debt Securities Claims.

    b.    Impairment and Voting:  Class D is Impaired by the Plan.  Each Holder of a Claim in Class D is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

    c.    Treatment:  Holders of Claims in Class D shall not receive a distribution from the Estates under the Plan.

9.    Class E—Interests.

    a.    Classification:  Class E consists of all Interests in the Debtors.

    b.    Impairment and Voting:  Class E is Impaired by the Plan.  Each Holder of an Interest in Class E is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

    c.    Treatment:  Holders of Interests in Class E shall not receive a distribution from the Estates under the Plan.

C.    Intercompany Claims and Intercompany Interests.    All Intercompany Claims and Intercompany Interests will be cancelled as of the Effective Date, and Holders thereof will not receive a distribution under the Plan in respect of such Claims or Interests.

D.    Class Voting Rights:  The voting rights of each Class are as follows.

    1.    Classes Entitled to Vote:  The following Classes are Impaired and thus entitled to vote to accept or reject the Plan.

-21-

| Classes |
| --- |
| A-1 |
| C-1 |
| C-2 |
| C-3 |

2. <u>Conclusively Presumed Acceptance of the Plan</u>: The following Classes are Unimpaired and conclusively presumed to accept the Plan, or are Impaired but conclusively presumed to accept the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| A-2 |
| A-3 |
| B |

3. <u>Conclusively Presumed Rejection of the Plan</u>: The Following Classes are Impaired and conclusively presumed to reject the Plan.  Therefore, such Classes are not entitled to vote to accept or reject the Plan and the vote of such Holders of Claims and Interests shall not be solicited.

| Classes |
| --- |
| D |
| E |

E. <u>Acceptance or Rejection of the Plan</u>.

1. <u>Acceptance by Impaired Classes of Claims</u>:  Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

2. <u>Tabulation of Votes</u>:  The Debtors will tabulate all votes on the Plan on a consolidated basis for the purpose of determining whether the Plan satisfies section 1129(a)(8) and (10) of the Bankruptcy Code.

3. <u>Cramdown</u>:  The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors, (a) with the consent of the Prepetition Agent and the Creditors' Committee, if the modification materially adversely affects the distributions contemplated under the Plan to the Prepetition Lenders or the Holders of Unsecured Claims, as applicable, or (b) in consultation with the Prepetition Agent and the Creditors' Committee, if the modifications do not materially adversely affect the distributions to be made to the Prepetition Lenders or the Holders of Unsecured Claims, reserve any right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

K&E 13747550.

4.    <u>Controversy Concerning Impairment</u>:  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the date that is ten Business Days before the Voting Deadline.

## ARTICLE IV.
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    <u>Sale of Assets</u>:   Prior to the Effective Date, the Debtors, in consultation with the Creditors' Committee and the Prepetition Agent, may consummate the Pre-Effective Date Sale Transactions.

B.    <u>Post-Consummation Trust</u>:

1.    <u>Establishment of the Post-Consummation Trust</u>:   On the Effective Date, the Debtors, on their own behalf and on behalf of the Post-Consummation Trust Beneficiaries, will execute the Post-Consummation Trust Agreement and will take all other steps necessary to establish the Post-Consummation Trust pursuant to the Post-Consummation Trust Agreement as further described in ARTICLE X herein.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, and Bankruptcy Rule 9019, (a) the Liquidation Trust will transfer to the Post-Consummation Trust the Diminution Claim payment and (b) the Debtors will transfer to the Post-Consummation Trust all of their rights, title, and interests in all of the Post-Confirmation Trust Assets.  On the Effective Date, or as soon thereafter as is reasonably practicable, the funds in the Utility Deposit Account will be transferred to the Post-Consummation Trust.  In connection with the transfer of the Post-Confirmation Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives, and the Debtors and the Post-Consummation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

2.    <u>Funding Expenses of the Post-Consummation Trust</u>:  As more fully described in the Post-Consummation Trust Agreement, the Post-Consummation Trust Assets will be reduced to Cash.  Expenses of the Post-Consummation Trust shall be paid in accordance with the terms of the Post-Consummation Trust Budget.

3.    <u>Allocation of Expenses Shared with the Liquidation Trust</u>:  To the extent both the Post-Consummation Trust and Liquidation Trust require the services of the same individuals or incur expenses on account of goods or services beneficial to both, the fees and expenses associated therewith shall be allocated 95% to the Post-Consummation Trust and 5% to the Liquidation Trust.

4.    <u>Appointment of the Plan Administrator</u>:  On the Effective Date and in compliance with the provisions of the Plan, the Plan Administrator will be appointed in accordance with the Post-Consummation Trust Agreement and after the Effective Date, the Plan Administrator will administer       the       Post-Consummation Trust       in       accordance       with       the

-23-

Post-Consummation Trust Agreement.  The Plan Administrator will prepare and make available to the Post-Consummation Trust Beneficiaries, on a semi-annual basis, a written report detailing, among other things, the litigation status of Claims or Causes of Action transferred to the Post-Consummation Trust, any settlements entered into by the Post-Consummation Trust, the proceeds recovered to date from the Post-Consummation Trust Assets, and the distributions made by the Post-Consummation Trust.

C.      Liquidation Trust:

1.      Establishment of the Liquidation Trust:  On the Effective Date, the Debtors, on their own behalf and on behalf of Holders of Allowed Claims entitled to receive Liquidation Trust Interests pursuant to the Plan will execute the Liquidation Trust Agreement and will take all other steps necessary to establish the Liquidation Trust pursuant to the Liquidation Trust Agreement as further described in ARTICLE XI herein.   On the Effective Date, and in accordance with and pursuant to the terms of the Plan, (a) the Post-Consummation Trust, as applicable, will transfer to the Liquidation Trust the Committee Settlement Payment and (b) all of the Estates' rights, title, and interests in all of the Liquidation Trust Assets will be transferred to the Liquidation Trust.   In connection with the transfer of such assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust will vest in the Liquidation Trust and its representatives, and the Debtors and the Liquidation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

2.      Prosecution of Liquidation Trust Claims:  Liquidation Trust Claims may only be prosecuted or settled by the Liquidation Trust.  The Liquidation Trust Claims will be transferred to the Liquidation Trust as of the Effective Date.

3.      Distributions from the Liquidation Trust:      Distributions  from  the Liquidation Trust will occur as set forth in ARTICLE XI and in accordance with the terms of the Liquidation Trust Agreement.

4.      Funding Expenses of the Liquidation Trust:   As more fully described in the Liquidation Trust Agreement, the Liquidation Trust Assets will be reduced to Cash.  Expenses of the Liquidation Trust shall be paid in accordance with the terms of the Liquidation Trust Budget.

5.      Allocation of Expenses Shared with the Post-Consummation Trust:  To the extent both the Post-Consummation Trust and Liquidation Trust require the services of the same individuals or incur expenses on account of goods or services beneficial to both, the fees and expenses associated therewith shall be allocated 95% to the Post-Consummation Trust and 5% to the Liquidation Trust.

6.      Appointment of the Liquidation Trust Administrator:  On the Effective Date and in compliance with the provisions of the Plan, the Liquidation Trust Administrator will be appointed in accordance with the Liquidation Trust Agreement and after the Effective Date, the Liquidation Trust Administrator will administer the Liquidation Trust in accordance with the Liquidation Trust Agreement.   The Liquidation Trust Administrator will prepare and make

-24-

available to Holders of Liquidation Trust Interests, on a semi-annual basis, a written report detailing, among other things, the litigation status of claims or Causes of Action transferred to the Liquidation Trust, any settlements entered into by the Liquidation Trust, the proceeds recovered to date from the Liquidation Trust Assets, and the distributions made by the Liquidation Trust.

D.      Cancellation of Debt and Equity Securities and Related Obligations:      On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the Kimball Hill Common Stock and any other Certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest shall be cancelled solely as to the Debtors, and neither the Liquidation Trust Administrator nor the Plan Administrator shall have any continuing obligations thereunder; and (2) the Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan; provided that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of:  (w) allowing Holders to receive distributions under the Plan; (x) allowing a Servicer to make distributions on account of such Claims or Interests as provided in ARTICLE VII; (y) permitting such Servicer to maintain any rights and liens it may have against property other than property of the Debtors, the Post-Consummation Trust, or the Liquidation Trust for fees, costs, and expenses pursuant to such indenture or other agreement; and (z) governing the rights and obligations of non-Debtor parties to such agreements vis à vis each other; provided further that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors, the Post-Consummation Trust,      or      the      Liquidation Trust.      The      Debtors,      the Post-Consummation Trust, and the Liquidation Trust shall not have any obligations to any Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

E.      Corporate Action:  Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan involving the corporate structure of the Debtors will be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors.  The Debtors may, for the purpose of effectuating      the      transfer      of      the      Post-Consummation Trust Assets      to      the Post-Consummation Trust in a manner deemed to be in the best interests of the Post-Consummation Trust Beneficiaries and the transfer of the Liquidation Trust Assets to the Liquidation Trust in a manner deemed to be in the best interests of the Liquidation Trust Beneficiaries, (1) preserve the corporate existence of some or all of the Debtors so as to permit the transfer of the Post-Consummation Trust Assets and the Liquidation Trust Assets owned by such Debtors by means of direct or indirect transfers of the stock or other equity interests of such Debtors to the Post-Consummation Trust and the Liquidation Trust, as applicable, and if deemed desirable in connection therewith to cancel the existing stock or other equity interests of such Debtors, issue new stock or equity interests of such Debtors, amend the organizational documents of such Debtors and replace the officers and directors of such Debtors, (2) create new corporations or other entities and transfer certain of the Post-Consummation Trust Assets and/or Liquidation Trust Assets thereto so as to permit the

-25-

transfer of such assets by means of direct or indirect transfers of the stock or other equity interests of such new corporations or other entities to the Post-Consummation Trust or Liquidation Trust, as applicable, and (3) effect other transactions determined by the Debtors (in consultation with the Creditors' Committee and Prepetition Agent) to be appropriate to achieve such purpose.  To the extent not used in the transfer of Post-Consummation Trust Assets or Liquidation Trust Assets and not completed prior to the Effective Date, the Debtors (and their boards of directors) will dissolve or otherwise terminate their existence following the Effective Date and are authorized to dissolve or terminate the existence of wholly owned non-Debtor subsidiaries following the Effective Date as well as any remaining health, welfare, or benefit plans.

F.      Effectuating Documents, Further Transactions:  On and after the Effective Date, the Plan Administrator and the Liquidation Trust Administrator, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

G.      Exemption from Certain Transfer Taxes and Recording Fees:  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to the Post-Consummation Trust, the Liquidation Trust, or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors;  (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest;  (3) the making, assignment, or recording of any lease or sublease;  or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.      Employee and Retiree Benefits:  On the Effective Date, except as otherwise set forth herein or in the Plan Supplement, the Debtors' existing employee benefit policies, plans, and agreements that have not been terminated prior to the Effective Date will terminate.

I.      Creation of Professional Fee Escrow Account:  On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall establish the Professional Fee Escrow Account and reserve an amount necessary to pay all of the Accrued Professional Compensation.

K&E 13747550.

J.        Causes of Action:

1.        Maintenance of Causes of Action:  Except as otherwise provided in the Plan, on the Effective Date, all of the Debtors' rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal in an adversary proceeding or contested matter filed in one or more of the Chapter 11 Cases, including the following actions and any Causes of Actions specified on Exhibit A, will be transferred to the Liquidation Trust: (a) objections to Claims under the Plan; and (b) any other litigation or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses, assets or operations or otherwise affecting the Debtors, including possible claims against the following types of parties, both domestic and foreign, for the following types of claims:   (i) Causes of Action against vendors, suppliers of goods or services, or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities or setoff; (ii) Causes of Action against utilities, vendors, suppliers of services or goods, or other parties for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (iii) Causes of Action against vendors, suppliers of goods or services, or other parties for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection of the subject contracts;   (iv) Causes of Action  for  any  liens,  including  mechanic's,  artisan's, materialmen's, possessory or statutory liens held by any one or more of the Debtors; (v) Causes of Action for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, lessor, utility, supplier, vendor, insurer, surety, lender, bondholder, lessor or other party; (vi) Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment related matters;   (vii) Causes of Action  against  any professional services provider or any other party arising out of financial reporting; (viii) Causes of Action arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies or suppliers of environmental services or goods; (ix) Causes of Action against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters; (x) counterclaims and defenses relating to notes, bonds or other contract obligations;  (xi) Causes of Action against local, state, federal, and foreign taxing authorities for refunds of overpayments or other payments; (xii) Causes of Action  against attorneys, accountants, consultants or other professional service providers relating to services rendered; (xiii) contract, tort or equitable Causes of Action that may exist or subsequently arise; (xiv) any intracompany or intercompany Causes of Action; (xv) Causes of Action of the Debtors arising  under  section  362  of  the  Bankruptcy Code;   (xvi) equitable  subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law; (xvii) turnover Causes of Action arising under sections 542 or 543 of the Bankruptcy Code; (xviii) Causes of Action arising under chapter 5 of the Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code; and (xix) Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property or other business tort claims; provided that such actions shall not include Causes of Action which, if prosecuted, would have a direct adverse effect on the Post-Consummation Trust Assets.

K&E 13747550.

The foregoing Causes of Action will be transferred to the Liquidation Trust notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, any claims, rights, and Causes of Action that the respective Debtors may hold against any Entity will vest in the Liquidation Trust. The Liquidation Trust, through its authorized agents or representatives, will have and may exclusively enforce any and all such claims, rights, or Causes of Action transferred to it, and all other similar claims arising pursuant to applicable state laws, including fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor in possession pursuant to the Bankruptcy Code in accordance with the provisions of the Liquidation Trust Agreement. The Liquidation Trust will have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any and all such claims, rights, and Causes of Action transferred to it, and to decline to do any of the foregoing in accordance with the terms of the Liquidation Trust Agreement.

For clarity, subject to the other provisions of the Plan, all of the Liquidation Trust Claims and other Causes of Action will be transferred to the Liquidation Trust as of the Effective Date. Notwithstanding anything to the contrary herein, the Post-Consummation Trust will own and control any Causes of Action or claims arising from or in connection with the collateral securing the Senior Credit Agreement or arising after the Effective Date in respect of any Post-Consummation Trust Asset. The Post-Consummation Trust will have the right to object to all Administrative Claims and Claims which, if Allowed, would entitle the Holder thereof to payments or other distributions from the Post-Consummation Trust and the Liquidation Trust will have the right to object to all Claims which, if Allowed, would entitle the Holder thereof to payments or other distributions from the Liquidation Trust.

2.      Preservation of All Causes of Action Not Expressly Settled or Released: Unless a claim or Cause of Action against a creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later adjudication by the Liquidation Trust or Post-Consummation Trust, as applicable, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan or a Final Order. In addition, the Liquidation Trust or Post-Consummation Trust, as applicable, expressly reserves the right to pursue or adopt any claims or Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits. Any Entity to whom the Debtors incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, in each case prior to the Petition Date, should assume that such obligation, transfer or transaction may be reviewed by the Liquidation Trust or Post-Consummation Trust, as applicable, subsequent to the Effective Date and may, to the extent not theretofore expressly waived, relinquished, released,

-28-

compromised or settled, be the subject of an action after the Effective Date, whether or not: (a) such Entity has filed a Proof of Claim against the Debtors in the Chapter 11 Cases; (b) an objection has been filed to such Entity's Proof of Claim; (c) such Entity's Claim was included in the Debtors' Schedules; or (d) the Debtors have objected to such Entity's scheduled Claim or identified such Claim as contingent, unliquidated or disputed.

K.     Release of Liens:   Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Interests, mortgages, deeds of trust, liens or other security interests against the property of any Estate will be fully released and discharged.  Pursuant to section 1141(c) of the Bankruptcy Code, all claims and interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation.  Upon Confirmation, the Debtors and all property dealt with herein shall be free and clear of all such Claims and Interests, including, but not limited to, liens, security interests, and any and all other encumbrances.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     Executory Contracts and Unexpired Leases to Be Assumed or Assumed and Assigned:

1.     Assumption and Assignment Generally:  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Debtors will assume and assign to the Post-Consummation Trust, the Liquidation Trust, or the applicable purchaser of the Debtors' assets, each of the Executory Contracts and Unexpired Leases listed on Exhibit B.  Each contract and lease listed on Exhibit B will be assumed only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  Listing a contract or lease on Exhibit B does not constitute an admission by the Debtors, the Post-Consummation Trust, or the Liquidation Trust, as applicable, that such contract or lease is an Executory Contract or Unexpired Lease or that the Debtors, the Post-Consummation Trust, or the Liquidation Trust has any liability thereunder.

2.     Assumptions and Assignments of Executory Contracts and Unexpired Leases: Each Executory Contract and Unexpired Lease listed on Exhibit B includes any modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such contract or lease, irrespective of whether such agreement, instrument, or other document is listed on Exhibit B, unless any such modification, amendment, supplement, restatement, or other agreement is rejected pursuant to ARTICLE V.C.

3.     Approval of Assumptions and Assignments:  Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of the assumption or conditional assumption of the Executory Contracts and Unexpired Leases to be assumed under the Plan as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease that is assumed will vest in and be fully enforceable by the Post-Consummation Trust or Liquidation Trust, as applicable, any applicable assignee in

-29-

accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing or providing for its assumption, or applicable law.

B.    Payments Related to the Assumption of Executory Contracts and Unexpired Leases:  To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor assuming such contract or lease or the assignee of such Debtor, if any:  (a) by payment of the Cure Amount Claim in Cash on or as soon as reasonably practicable after the Effective Date; or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease.  If there is a dispute regarding:  (a) the amount of any Cure Amount Claim; (b) the ability of the Post-Consummation Trust, the Liquidation Trust, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (c) any other matter pertaining to assumption or assumption and assignment of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption by the Debtors or the Plan Administrator.    Any amounts required to be paid to cure any Executory Contract or Unexpired Lease to be assumed by the Post-Consummation Trust or Liquidation Trust shall be borne by the Post-Consummation Trust or Liquidation Trust, as applicable.  Any Cure Amount Claims paid by the Debtors from and after December 1, 2008 (a) attributable to assets that would constitute Post-Consummation Trust Assets shall be ascribed to the collateral securing the Senior Credit Agreement Claims and (b) attributable to assets that would constitute Liquidation Trust Assets shall be ascribed to the unencumbered assets of the Debtors.  Cure Amount Claims paid and/or incurred prior to December 1, 2008 shall be allocated in the same manner as Administrative Claims.

C.    Executory Contracts and Unexpired Leases to Be Rejected:    Except for an Executory Contract or Unexpired Lease that was previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court with the effective date of such assumption or rejection on or before the Effective Date, or that is assumed pursuant to ARTICLE V.A, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date will be rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date or as of the date set forth on Exhibit C.  The Executory Contracts and Unexpired Leases to be rejected will include but not be limited to the Executory Contracts and Unexpired Leases listed on Exhibit C. Each contract and lease listed on Exhibit C will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  Listing a contract or lease on Exhibit C does not constitute an admission by a Debtor, the Post-Consummation Trust, or the Liquidation Trust that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor, the Post-Consummation Trust, or the Liquidation Trust has any liability thereunder.  Any Executory Contract and Unexpired Lease not listed on Exhibit B and not previously assumed, assumed and assigned or rejected by an order of the Bankruptcy Court (other than those Executory Contracts and Unexpired Leases identified on Exhibit C) will be rejected on the Effective Date irrespective of whether such contract is listed on Exhibit C and the Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

K&E 13747550.

D.    Bar Date for Rejection Damages:  Notwithstanding anything in any order establishing a Bar Date to the contrary, if the rejection of an Executory Contract or Unexpired Lease, including pursuant to ARTICLE V.C, gives rise to a Claim (including any Claims arising from those Indemnification Obligations described in ARTICLE V.E) by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, the Liquidation Trust, the Post-Consummation Trust, their respective successors, or their respective properties unless a Proof of Claim is filed and served on the Post-Consummation Trust and the Liquidation Trust pursuant to the procedures specified in the notice of the Effective Date or an order of the Bankruptcy Court, in each case no later than 30 days after the Effective Date.

E.    Obligations to Indemnify Directors, Officers, and Employees:  The obligations of each Debtor to indemnify any person serving as one of its directors, officers, or employees as of or following the Effective Date will, to the extent constituting an Executory Contract, be deemed rejected as of the Effective Date.   The Debtors, the Post-Consummation Trust, and the Liquidation Trust will have no obligation on or after the Effective Date to pay or perform such Indemnification Obligations.   Notwithstanding the foregoing, such directors, officers, and employees will have the benefit of any and all directors' and officers' liability insurance policies that may be in effect, but none of the Debtors, the Post-Consummation Trust, or the Liquidation Trust will have any obligation on or after the Effective Date to pay premiums thereunder.

F.    Contracts and Leases Entered into After the Petition Date:  Any contracts or leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be (i) performed by the Post-Consummation Trust in the ordinary course of its business; and/or (ii) terminated, with the relevant counterparty required to file a Claim asserting any alleged damages within the applicable Rejection Claims Bar Date.

G.    Reservation of Rights:  Neither the exclusion nor inclusion of any contract or lease by the Debtors on any Exhibit to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that any Debtor, the Liquidation Trust, or the Post-Consummation Trust, or their respective Affiliates, has any liability thereunder.

Nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors, the Liquidation Trust, or the Post-Consummation Trust under any Executory Contract or non-Executory Contract or any Unexpired Lease or expired lease.

Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Post-Consummation Trust, or the Liquidation Trust under any Executory Contract or non-Executory Contract or any Unexpired Lease or expired lease.

K&E 13747550.

At any time through and including 90 days after the Effective Date, the Debtors and, solely to the extent it affects each, the Liquidation Trust and the Post-Consummation Trust reserve the right to alter, amend, modify, or supplement Exhibit B and Exhibit C.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, then (a) the Debtors, in consultation with the Prepetition Agent and the Creditors' Committee, (b) the Post-Consummation Trust, with the consent of the Liquidation Trust, or (c) the Liquidation Trust with the consent of the Post-Consummation Trust, as applicable, will have 30 days following entry of a Final Order resolving such dispute to amend their decision to assume or reject such contract or lease.

## ARTICLE VI.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

A.    Allowance of Claims and Interests:  After the Effective Date, except as released herein or by Bankruptcy Court order, the Liquidation Trust shall have and retain any and all rights and defenses the Debtors had with respect to any Claims and Interests immediately prior to the Effective Date, including the Causes of Action referenced in ARTICLE IV.

B.    Claims and Interests Administration Responsibilities:  Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidation Trust Administrator shall have the authority:  (1) to file, withdraw, or litigate to judgment any objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; provided that (a) the Plan Administrator, in consultation with the Liquidation Trust Administrator, shall have such authority with respect to Administrative Claims and (b) the Plan Administrator shall have such authority with respect to Priority Tax Claims and Class B Claims.

C.    Estimation of Claims and Interests:  Before the Effective Date, the Debtors, and after the Effective Date, the Liquidation Trust Administrator or Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidation Trust Administrator or Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any

-32-

Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty days after the date on which such Claim is estimated.

D.    Adjustment to Claims Without Objection:  Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register at the request of the Plan Administrator or Liquidation Trust Administrator without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    Disallowance of Claims or Interests:  Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Liquidation Trust Administrator.  All Claims filed on account of an employee benefit referenced in ARTICLE IV.H shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Plan Administrator elects to honor such employee benefit out of the proceeds of the Post-Consummation Trust Assets, without any further notice to or action, order, or approval of the Bankruptcy Court.

**EXCEPT AS OTHERWISE AGREED BY THE DEBTORS, IN CONSULTATION WITH THE CREDITORS' COMMITTEE, OR THE LIQUIDATION TRUST ADMINISTRATOR, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.**

**ANY CLAIM OR INTEREST THAT HAS BEEN OR IS HEREAFTER LISTED IN THE SCHEDULES AS CONTINGENT, UNLIQUIDATED OR DISPUTED, AND FOR WHICH NO PROOF OF CLAIM OR INTEREST HAS BEEN TIMELY FILED IS NOT CONSIDERED ALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION BY THE DEBTORS AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

F.    Offer of Judgment:  The Liquidation Trust Administrator or Plan Administrator, as applicable, is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Holder's Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the

-33-

Holder of a Claim must pay the costs incurred by the Liquidation Trust Administrator or Plan Administrator, as applicable, after the making of such offer, the Liquidation Trust Administrator or Plan Administrator, as applicable, is entitled to set off such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

G.    Amendments to Claims:  On or after the Effective Date, except as provided in ARTICLE VI, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court and the Liquidation Trust Administrator or Plan Administrator, as applicable, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    Distributions on Account of Claims Allowed as of the Effective Date:  Except as otherwise provided in the Plan or a Final Order, or as otherwise agreed to by the relevant parties (which prior to its dissolution, shall include the Creditors' Committee), initial distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; provided that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter, or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

B.    Method of Distributions to Holders of Claims:  The Post-Consummation Trust, the Liquidation Trust, or such Third Party Disbursing Agents as the Post-Consummation Trust or Liquidation Trust may employ, will make all distributions required under the Plan.  Each Disbursing Agent will serve without bond, and any Disbursing Agent may employ or contract with other Persons to assist in or make the distributions required by the Plan.

C.    Distributions on Account of Claims Allowed After the Effective Date:

1.    Payments and Distributions on Disputed Claims:  Except as otherwise provided in the Plan or a Final Order, or as otherwise agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim; provided that Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

-34-

2.      Special Rules for Distributions to Holders of Disputed Claims:  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Disputed Claim has been Allowed or disallowed.   All distributions made pursuant to the Plan on account of an Allowed Claim shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

D.      Delivery of Distributions:

1.      Record Date for Distributions:    On the Distribution Record Date,  the Claims Register shall be closed and any party responsible for making distributions pursuant to ARTICLE VII shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim, other than one based on a publicly traded Certificate, is transferred twenty or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Distributions:  The Disbursing Agents shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.      Delivery of Distributions in General:  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agents or a Servicer, as appropriate:   (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the applicable Disbursing Agent has been notified in writing of a change of address); (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agents have not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf.  Except as provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  No Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan.  Distributions to Holders of publicly traded Certificates will be made in accordance with ARTICLE VII.D.10.

-35-

4.    Accrual of Interest:  Except as specifically otherwise provided in the Plan, in no event shall interest accrue after the Interest Accrual Limitation Date on account of any Allowed Claim.

5.    Allocation Between Principal and Accrued Interest:  Except as otherwise provided in the Plan, distributions on account of Allowed Claims shall be treated as allocated first to principal and thereafter to interest, if any, accrued through the Interest Accrual Limitation Date.

6.    Compliance Matters:  In connection with the Plan, to the extent applicable, the Disbursing Agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and the Liquidation Trust Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Plan Administrator and the Liquidation Trust Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7.    Foreign Currency Exchange Rate:  Except as otherwise provided in the Plan or a Bankruptcy Court order, as of the Effective Date, any Claim asserted in any currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of the Petition Date, as quoted as the 4:00 p.m. (ET) midrange spot rate of exchange for the applicable currency published in *The Wall Street Journal, National Edition*, on the Petition Date.

8.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions.

a.    Fractional Distributions:  Notwithstanding any other provision of the Plan to the contrary, the Disbursing Agent shall not be required to make distributions or payments of fractions of dollars, fractions of Post-Consummation Trust Interests, or fractions of Liquidation Trust Interests.  Whenever any payment of Cash of a fraction of a dollar, payment of a Post-Consummation Trust Interest in a fraction thereof, or payment of a Liquidation Trust Interest in a fraction thereof pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar, nearest whole Post-Consummation Trust Interest, or nearest whole Liquidation Trust Interest (up or down), with half dollars, half Post-Consummation Interests, and half Liquidation Trust Interests or less being rounded down.

b.    De Minimis Distributions:  Neither the Disbursing Agent nor any Servicer shall have any obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of an Allowed Claim on the particular Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $500.

c.      Undeliverable Distributions:  If any distribution to a Holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Plan Administrator, Liquidation Trust Administrator, or Third Party Disbursing Agent, as applicable, is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the applicable Disbursing Agent until such time as a distribution becomes deliverable, or such distribution reverts to the Post-Consummation Trust or Liquidation Trust, as applicable, pursuant to ARTICLE VII.D.8.d, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

d.      Reversion:      Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Post-Consummation Trust or Liquidation Trust, as applicable.  Upon such revesting, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

9.      Manner of Payment Pursuant to the Plan:  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent by check or by wire transfer.  Checks issued by the Disbursing Agents or applicable Servicer on account of Allowed Claims shall be null and void if not negotiated within ninety days after issuance, but may be requested to be reissued until the distribution revests in the Post-Consummation Trust or Liquidation Trust, as applicable, pursuant to ARTICLE VII.D.8.d.

10.     Surrender of Cancelled Instruments or Securities:  On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Plan Administrator, the Liquidation Trust Administrator, or a Servicer (to the extent the relevant Claim is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis à vis one another with respect to such Certificate.  No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder unless and until such Certificate is received by the Plan Administrator, the Liquidation Trust Administrator, or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Plan Administrator, the Liquidation Trust Administrator, or the Servicer pursuant to the provisions of ARTICLE VII.D.11.  Any Holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Plan Administrator, the Liquidation Trust Administrator, or the Servicer prior to the first anniversary of the Effective Date, shall have its Claim discharged with no further action, be forever barred from asserting any such Claim, be deemed to have forfeited all rights and Claims with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto,

-37-

shall revert to the Post-Consummation Trust or Liquidation Trust, as applicable, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary.

11.    Lost, Stolen, Mutilated, or Destroyed Debt Securities: Any Holder of Allowed Claims evidenced by a Certificate that has been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such Certificate, deliver to the Plan Administrator, the Liquidation Trust Administrator or Servicer, if applicable, an affidavit of loss acceptable to the Plan Administrator, the Liquidation Trust Administrator, or Servicer setting forth the unavailability of the Certificate, and such additional indemnity as may be required reasonably by the Plan Administrator, the Liquidation Trust Administrator, or Servicer to hold the Plan Administrator, the Liquidation Trust Administrator, or Servicer harmless from any damages, liabilities, or costs incurred in treating such Holder as a Holder of an Allowed Claim. Upon compliance with this procedure by a Holder of an Allowed Claim evidenced by such a lost, stolen, mutilated, or destroyed Certificate, such Holder shall, for all purposes pursuant to the Plan, be deemed to have surrendered such Certificate.

E.    Claims Paid or Payable by Third Parties:

1.    Claims Paid by Third Parties: The Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Disbursing Agent. Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Disbursing Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Plan Administrator or the Liquidation Trust Administrator, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Post-Consummation Trust or Liquidation Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid; provided that the Plan Administrator or Liquidation Trust Administrator, as applicable, may waive this requirement without further notice.

2.    Claims Payable by Third Parties: No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies or by a third party insurer that has agreed to tender defense until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' or third party insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

K&E 13747550.

3.    <u>Applicability of Insurance Policies</u>:  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Post-Consummation Trust, the Liquidation Trust, or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII.**
**EFFECT OF CONFIRMATION OF THE PLAN**

A.    <u>Subordinated Claims</u>:  Except as otherwise dictated by the terms of the Plan, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Plan Administrator and the Liquidation Trust Administrator reserve the right to reclassify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

B.    <u>Compromise and Settlement of Claims and Controversies</u>:  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest (including the full and final resolution of any and all claims and causes of action asserted by the Creditors' Committee against the Prepetition Agent and the Prepetition Lenders and the Diminution Claim asserted by the Prepetition Lenders), or any distribution to be made on account of such an Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trust Administrator and Plan Administrator, as applicable, may compromise and settle Claims against them and Causes of Action against other Entities.

C.    **<u>Releases by the Debtors</u>:  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious emergence of the Debtors and the implementation of the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, their Estates, the Post-Consummation Trust, the Liquidation Trust, and their Affiliates, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities**

-39-

K&E 13747550.

whatsoever, including any derivative Claims or Causes of Action asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, the Post-Consummation Trust, the Liquidation Trust, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith and where such failure to perform constitutes willful misconduct, gross negligence, or fraud.

D.   **Exculpation:**   Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence, willful misconduct, or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   The Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.   **Releases by Holders of Claims and Interests:**   Except as otherwise specifically provided in the Plan, on and after the Effective Date, Holders of Claims and Interests (1) voting to accept the Plan or (2) abstaining from voting on the Plan and, in either case, electing not to opt-out of the release contained in this paragraph (which by definition, does not include Holders of Claims and Interests who are not entitled to vote in favor of or against the Plan), shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Post-Consummation Trust, the Liquidation Trust and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Chapter 11 Cases,

-40-

the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Debtor or a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor or the Released Party reasonably believed to be in the best interests of the Debtors (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct, gross negligence, or fraud; __provided__ that this release and discharge shall not apply to any distributions on account of Claims or Interests specifically contemplated in ARTICLE VII hereof.

F.    __Injunction__:  Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to ARTICLE VIII.C or ARTICLE VIII.E, discharged pursuant to ARTICLE VIII.B, or are subject to exculpation pursuant to ARTICLE VIII.D are permanently enjoined, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the Plan or Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Plan Administrator or the Liquidation Trust Administrator, as applicable, and any such Entity agree in writing that such Entity will:  (a) waive all Claims against the Post-Consummation Trust, the Liquidation Trust, and the Estates related to such action and (b) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.

G.    __Setoffs__:    Except as otherwise expressly provided for in the Plan, the Plan Administrator or Liquidation Trust Administrator, as applicable, pursuant to the

Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Post-Consummation Trust or Liquidation Trust, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); **provided** that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, and Causes of Action that the Post-Consummation Trust or Liquidation Trust, as applicable, may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Post-Consummation Trust or Liquidation Trust, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Voting Deadline, and notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise and obtain such authority from the Bankruptcy Court on or prior to the Effective Date.

H.    **Recoupment:**  In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor, the Post-Consummation Trust or the Liquidation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**ARTICLE IX.**
**ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS**

A.    Professional Claims:

1.    Final Fee Applications:    All final requests for payment of Claims of a Professional shall be filed no later than forty-five days after the Effective Date.  Any objections to final requests for payment of Claims of a Professional shall be filed no later than sixty days after the Effective Date.   After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

2.    Payment of Interim Amounts:   Except as otherwise provided in the Plan and subject to ARTICLE IX.A.1, Professionals shall be paid pursuant to the Interim Compensation Order for amounts earned through the Effective Date.

3.    Professional Fee Reserve Amount:   To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and

K&E 13747550.

shall deliver such estimate to the Debtors.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional nor a cap on the fees and expenses of such Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

4.      Professional Fee Escrow Account:  In accordance with ARTICLE IX.A.3, on the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds shall not be considered property of the Post-Consummation Trust.  The remaining amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Plan Administrator from the Professional Fee Escrow Account when such Claims are Allowed by a Bankruptcy Court order.  When all Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Post-Consummation Trust and Liquidation Trust in accordance with the Administrative Expense Allocation Procedures.

5.      Post-Effective Date Fees and Expenses:  From and after the Effective Date, the Plan Administrator and the Liquidation Trust Administrator, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Post-Consummation Trust, the Liquidation Trust, the Debtors' Professionals, and the Creditors' Committee in accordance with (a) the Administrative Expense Allocation Procedures and (b) the Post-Consummation Trust Budget and the Liquidation Trust Budget, as applicable.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Post-Consummation Trust and the Liquidation Trust may employ any Professional in the ordinary course of business.

6.      Substantial Contribution Compensation and Expenses:  Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors and the Creditors' Committee or the Plan Administrator and the Liquidation Trust Administrator, as applicable, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement.

7.      Indenture Trustee Fees:  On the Effective Date, or as soon as reasonably practicable thereafter, all reasonable fees and expenses of the Indenture Trustee (and its counsel, agents, and advisors), as determined by the Creditors' Committee, that are payable pursuant to the Senior Subordinated Notes Indenture (including, without limitation, in connection with service on the Creditors' Committee and in connection with distributions under the Plan, but

-43-

excluding fees and expenses related to the litigation of Disputed Claims and disputes related to Confirmation) shall be paid by the Liquidation Trust from the Liquidation Trust Assets.

B.    Other Administrative Claims:

1.    Administrative Claim Bar Date:  Requests for payment of Administrative Claims must be filed and served on the Plan Administrator and the Liquidation Trust Administrator pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than, as applicable, (a) the pre-Effective Date date set forth in the Administrative Claims Bar Date Order, or (b) [___] days after the Effective Date, as set forth in detail in the Administrative Claims Bar Date Order.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the Debtors, the Post-Consummation Trust or the Liquidation Trust, or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order.

## ARTICLE X.
## THE POST-CONSUMMATION TRUST;
## THE PLAN ADMINISTRATOR

A.    Generally:    The  powers,  authority,  responsibilities,  and  duties  of  the Post-Consummation Trust and the Plan Administrator are set forth in and will be governed by the  Post-Consummation Trust Agreement.    The  Prepetition Agent will  designate the  initial Plan Administrator.    The  Post-Consummation Trust Assets  shall  be  set  forth  in  the Post-Consummation Trust Agreement included in the Plan Supplement.

B.    Purpose of the Post-Consummation Trust:    The  Post-Consummation Trust will be established for the primary purpose of liquidating the Post-Consummation Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably  necessary  to,  and  consistent  with,  the  liquidating  purpose  of  the Post-Consummation Trust.  Upon the transfer of the Post-Consummation Trust Assets to the Post-Consummation Trust, the Debtors will have no reversionary or further interest in or with respect to the Post-Consummation Trust Assets or the Post-Consummation Trust.  For all federal income  tax  purposes,  the  Post-Consummation Trust Beneficiaries  of  the Post-Consummation Trust will be treated as grantors and owners thereof and it is intended that the Post-Consummation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury  Regulations  and  that  such  trust  is  owned  by  the Post-Consummation Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Post-Consummation Trust Beneficiaries be treated as if they had received a distribution of an undivided interest in the Post-Consummation Trust Assets and then contributed such interests to the Post-Consummation Trust. Accordingly, the Post-Consummation Trust will, in  an  expeditious  but  orderly  manner,  liquidate  and  convert  to  Cash  the

-44-

Post-Consumation Trust Assets, make timely distributions to the Post-Consumation Trust Beneficiaries, and not unduly prolong its duration. The Post-Consumation Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Post-Consumation Trust Agreement. The Post-Consumation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Post-Consumation Trust Beneficiaries treated as grantors and owners of the trust.

C.    Transfer of Assets to the Post-Consumation Trust:    The Debtors and the Plan Administrator will establish the Post-Consumation Trust on behalf of the Post-Consumation Trust Beneficiaries pursuant to the Post-Consumation Trust Agreement, to be treated as the grantors and deemed owners of the Post-Consumation Trust Assets and the Debtors will, as set forth below, transfer, assign, and deliver to the Post-Consumation Trust, on behalf of the Post-Consumation Trust Beneficiaries, all of their rights, titles, and interests in the Post-Consumation Trust Assets. The Post-Consumation Trust will agree to accept and hold the Post-Consumation Trust Assets in the Post-Consumation Trust for the benefit of the Post-Consumation Trust Beneficiaries, subject to the terms of the Plan and the Post-Consumation Trust Agreement. On the Effective Date, the Debtors will transfer the Post-Consumation Trust Assets to the Post-Consumation Trust for the benefit of the Post-Consumation Trust Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all the Post-Consumation Trust Assets will vest in the Post-Consumation Trust in accordance with section 1141 of the Bankruptcy Code. Upon the transfer of the Post-Consumation Trust Assets to the Post-Consumation Trust, the Debtors will have no interest in or with respect to such Post-Consumation Trust Assets or the Post-Consumation Trust.

D.    Distribution; Withholding:    The Plan Administrator will make distributions to the Post-Consumation Trust Beneficiaries of the Post-Consumation Trust as provided in the Post-Consumation Trust Agreement and the Plan. The Post-Consumation Trust may withhold from amounts distributable to any entity any and all amounts, determined in the Plan Administrator's sole discretion, to be required by the Plan or any law, regulation, rule, ruling, directive, or other governmental requirement. After appropriate reserves have been established to fund amounts required under the Plan and as identified in the Post-Consumation Trust Agreement (including, but not limited to, amounts to pay Post-Consumation Trust Expenses and the fees and expenses of the Plan Administrator and the Post-Consumation Trust), the funds to be distributed to the Post-Consumation Trust Beneficiaries will be distributed to such Holders on a Pro Rata basis according to the percentages set forth in the Post-Consumation Trust Agreement.

E.    Insurance:    The Post-Consumation Trust will maintain customary insurance coverage for the protection of persons serving as administrators and overseers of the Post-Consumation Trust on and after the Effective Date.

F.    Post-Consumation Trust    Implementation:    On the Effective Date, the Post-Consumation Trust will be established and become effective for the benefit of the Post-Consumation Trust Beneficiaries entitled to distributions from the Post-Consumation Trust under the Plan. The Post-Consumation Trust Agreement will

contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Post-Consummation Trust as a grantor trust and the Post-Consummation Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. All parties (including the Debtors, the Plan Administrator, and the Post-Consummation Trust Beneficiaries) will execute any documents or other instruments as necessary to cause title to the Post-Consummation Trust Assets to be transferred to the Post-Consummation Trust.

G.      Termination of the Post-Consummation Trust:   The Post-Consummation Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or prior to the date that is six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Post-Consummation Trust for a finite period if such an extension is necessary to liquidate the Post-Consummation Trust Assets or to complete any distribution required under the Plan. Notwithstanding the foregoing, multiple extensions may be obtained so long as (1) Bankruptcy Court approval is obtained at least six months prior to the expiration of each extended term and (2) the Plan Administrator receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Post-Consummation Trust as a grantor trust for federal income tax purposes.

H.      Termination of the Plan Administrator:  The duties, responsibilities, and powers of the Plan Administrator will terminate in accordance with the terms of the Post-Consummation Trust Agreement.

**I.      Exculpation;   Indemnification:      The   Plan Administrator,   the Post-Consummation Trust, and any professionals of the Post-Consummation Trust and their representatives will be exculpated and indemnified pursuant to the terms of the Post-Consummation Trust Agreement and the Plan.**

J.      Transferability of the Post-Consummation Trust Interests:  To the extent practicable, the Post-Consummation Trust Interests shall be transferable in accordance with the terms of the Post-Consummation Trust Agreement.

## ARTICLE XI.
## THE LIQUIDATION TRUST;
## THE LIQUIDATION TRUST ADMINISTRATOR

A.      Generally:  The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trust Administrator are set forth in and will be governed by the Liquidation Trust Agreement.    The Creditors' Committee will designate the initial Liquidation Trust Administrator, who shall be acceptable to the Prepetition Agent.

B.      Purpose of the Liquidation Trust:  The Liquidation Trust will be established for the primary purpose of liquidating its assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.  Upon the transfer of the Liquidation Trust Assets,

-46-

the Debtors will have no reversionary or further interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust. For all federal income tax purposes, the Liquidation Trust Beneficiaries will be treated as grantors and owners thereof and it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by the Liquidation Trust Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Liquidation Trust Beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidation Trust Assets and then contributed such interests to the Liquidation Trust. Accordingly, the Liquidation Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries, and not unduly prolong its duration. The Liquidation Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement. The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the trust.

C.     <u>Transfer of Assets to the Liquidation Trust</u>:     The Debtors and the Liquidation Trust Administrator will establish the Liquidation Trust on behalf of the Liquidation Trust Beneficiaries pursuant to the Liquidation Trust Agreement, to be treated as the grantors and deemed owners of the Liquidation Trust Assets, and the Debtors will, as set forth below, transfer, assign, and deliver to the Liquidation Trust, on behalf of the Liquidation Trust Beneficiaries, all of their right, title, and interests in the Liquidation Trust Assets, notwithstanding any prohibition of assignability under non-bankruptcy law. The Liquidation Trust will agree to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Plan and the Liquidation Trust Agreement.

On the Effective Date, the Debtors will transfer the Liquidation Trust Assets to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all the Liquidation Trust Claims will vest in the Liquidation Trust in accordance with section 1141 of the Bankruptcy Code. Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtors will have no interest in or with respect to such Liquidation Trust Assets or the Liquidation Trust.

D.     <u>Distribution; Withholding</u>: The Liquidation Trust Administrator will make distributions to the Liquidation Trust Beneficiaries of the Liquidation Trust as provided in the Liquidation Trust Agreement and the Plan. The Liquidation Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidation Trust Administrator's sole discretion, to be required by the Plan or any law, regulation, rule, ruling, directive, or other governmental requirement.

E.     <u>Insurance</u>: The Liquidation Trust will maintain customary insurance coverage for the protection of Entities serving as administrators and overseers of the Liquidation Trust on and after the Effective Date.

K&E 13747550.

F.      Liquidation Trust Implementation:  On the Effective Date, the Liquidation Trust will be established and become effective for the benefit of the Holders of Allowed Claims entitled to distributions from the Liquidation Trust under the Plan.  The Liquidation Trust Agreement will contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidation Trust as a grantor trust and the Holders of Allowed Claims as the grantors and owners thereof for federal income tax purposes. All parties (including the Debtors, the Liquidation Trust Administrator, and the Holders of Liquidation Trust Interests) will execute any documents or other instruments as necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust.

G.      Disputed Claims Reserve:   The Liquidation Trust Administrator will maintain, in accordance with the Liquidation Trust Administrator's powers and responsibilities under the Plan and the Liquidation Trust Agreement, a Disputed Claims reserve.   The Liquidation Trust Administrator will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidation Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts will be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.  The Liquidation Trust will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such Holders and, when such Disputed Claims are ultimately resolved, Holders whose Disputed Claims are determined to be Allowed Claims will receive distributions from the Liquidation Trust net of the taxes that the Liquidation Trust previously paid on their behalf.

H.      Termination of the Liquidation Trust:  The Liquidation Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or prior to the date that is six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidation Trust for a finite period if such an extension is necessary to liquidate the Liquidation Trust Assets.  Notwithstanding the foregoing, multiple extensions may be obtained so long as (1) Bankruptcy Court approval is obtained at least six months prior to the expiration of each extended term and (2) the Liquidation Trust Administrator receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a grantor trust for federal income tax purposes.

I.      Termination of the Liquidation Trust Administrator:  The duties, responsibilities, and powers of the Liquidation Trust Administrator will terminate in accordance with the terms of the Liquidation Trust Agreement.

J.      Exculpation;   Indemnification:         The    Liquidation Trust Administrator,    the Liquidation Trust, the professionals of the Liquidation Trust, and their representatives will be exculpated and indemnified pursuant to the terms of the Liquidation Trust Agreement.

K.      Transferability of the Liquidation Trust Interests:   To the extent practicable, the Liquidation Trust Interests shall be transferable in accordance with the terms of the Liquidation Trust Agreement.

K&E 13747550.

**ARTICLE XII.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.     <u>Conditions to Confirmation</u>:  The following are conditions precedent to Confirmation that must be satisfied or waived in accordance with ARTICLE XII.C:

1.     The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.     The proposed Confirmation Order shall be in form and substance acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee.

3.     The Liquidation Trust Agreement, Post-Consummation Trust Agreement, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall be filed with the Bankruptcy Court in form and substance acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee.

B.     <u>Conditions Precedent to Consummation</u>:  The following are conditions precedent to Consummation that must be satisfied or waived in accordance with ARTICLE XII.C:

1.     The Bankruptcy Court shall have authorized the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated by ARTICLE V.

2.     The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee.

3.     The most current version of the Liquidation Trust Agreement, the Post-Consummation Trust Agreement, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall be filed with the Bankruptcy Court in form and substance acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee.

4.     The Confirmation Date shall have occurred.

C.     <u>Waiver of Conditions Precedent</u>:  The Debtors, with consent of the Prepetition Agent and the Creditors' Committee, may waive any of the conditions to Confirmation or Consummation set forth in ARTICLE XII at any time, without any notice to other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan. A failure to satisfy or waive any condition to Confirmation or Consummation may be asserted as a failure of Confirmation or Consummation regardless of the circumstances giving rise to such failure (including any action or inaction by the party asserting such failure). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

-49-

D.      Effect of Non-Occurrence of Conditions to Confirmation:  Each of the conditions to Consummation must be satisfied or duly waived pursuant to ARTICLE XII.C and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order.  If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided that, notwithstanding the filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order granting such motion.      If the Confirmation Order is vacated for any reason, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of Executory Contracts or Unexpired Leases pursuant to ARTICLE V, and nothing contained in the Plan or Disclosure Statement shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action; (2) prejudice in any manner the rights of such Debtor or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

E.      Satisfaction of Conditions Precedent to Confirmation:      Upon entry of a Confirmation Order in form and substance acceptable to the Debtors, the Prepetition Agent, and the Creditors' Committee, each of the conditions precedent to Confirmation, as set forth in ARTICLE XII.A, shall be deemed to have been satisfied or waived in accordance with the Plan.

## ARTICLE XIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      Modification and Amendments:  Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, expressly reserve their rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with ARTICLE XIII.  Upon its Filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at www.ilnb.uscourts.gov, and at the Claims and Solicitation Agent's website at http://www.kccllc.net/kimballhill.  The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.      Effect of Confirmation on Modifications:  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant

K&E 13747550.

to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    <u>Revocation or Withdrawal of Plan</u>:  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  If a Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then**:**  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall**:**  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to:  (a) the assumption, assumption, and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Plan Administrator or Liquidation Trust Administrator, as applicable, amending, modifying, or supplementing, after the Effective Date, pursuant to ARTICLE V, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

K&E 13747550.

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      To issue such orders in aid of execution of the Plan as may be necessary or appropriate to carry out its intent and purpose or to implement the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

10.     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

11.     Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

13.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in ARTICLE VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to ARTICLE VII.E.1;

16.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

17.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement.

K&E 13747550.

18.     Enter an order or orders and Final Decree concluding or closing each of the Chapter 11 Cases;

19.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

20.     Consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

21.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

22.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, including the Post-Consummation Trust Agreement and the Liquidation Trust Agreement;

23.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

24.     Enforce all orders previously entered by the Bankruptcy Court; and

25.     Hear and determine any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

A.      Immediate Binding Effect:    Subject to ARTICLE XII.B and notwithstanding Bankruptcy Rules 3020(e), 6004, or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Consummation Trust, the Liquidation Trust, and any and all Holders of Claims and Interests (irrespective of whether the Classes of Claims and Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      Additional Documents:  On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents in form and substance reasonably acceptable to the Prepetition Agent and the Creditors' Committee as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Liquidation Trust Administrator or the Plan Administrator, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

K&E 13747550.

C.     Payment of Statutory Fees:     All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for each quarter (including any fraction thereof) until the respective Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.     Dissolution of Committee:     Upon the Effective Date, the Creditors' Committee shall dissolve automatically, except with respect to any appeals filed regarding Confirmation and the resolution of applications for Professional Claims, and members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.  Notwithstanding anything to the contrary in the Plan or Confirmation Order, the consent and consultation rights afforded to the Creditors' Committee, if any, shall expire immediately upon Consummation, except any consent and consultation rights in connection with any appeals filed regarding Confirmation, any pending litigation or contested matter to which the Creditors' Committee is a party, and the resolution of applications for Professional Claims.

E.     Reservation of Rights:     Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.     Successors and Assigns:     The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.     Service of Documents.

        1.     After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Post-Consummation Trust, the Liquidation Trust, the Creditors' Committee, the Prepetition Agent, or the United States Trustee must be sent by overnight delivery service, facsimile transmission, courier service, or messenger to:

| Debtors | Counsel to Debtors |
|---|---|
| Kimball Hill, Inc.<br>5999 New Wilke Road, Suite 504<br>Rolling Meadows, IL 60008<br>Attn:    Ann Hamilton, Esq. | Kirkland & Ellis LLP<br>153 East 53rd Street<br>New York, New York 10022<br>Attn:    Paul M. Basta, Esq.<br>            Catherine Peshkin, Esq.<br>and<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>Attn:    Ray C. Schrock, Esq.<br>            Lauren Hawkins, Esq. |
| **United States Trustee** | **Counsel to the Creditors' Committee** |
| Office of the United States Trustee<br>for the Northern District of Illinois<br>219 South Dearborn Street<br>Chicago, Illinois 60604<br>Attn:    William T. Neary, Esq. | Akin Gump Strauss Hauer & Feld LLP<br>590 Madison Avenue<br>New York, New York 100222524<br>Attn:    Philip C. Dublin, Esq.<br>            Meredith Lahaie, Esq.<br>and |
| **Counsel to the Prepetition Agent** | |
| Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, Illinois 60606<br>Attn:    J. Robert Stoll, Esq.<br>            John J. Voorhees, Jr., Esq. | Shaw Gussis Fishman Glantz Wolfson & Towbin LLC<br>321 North Clark Street<br>Chicago, Illinois 60601<br>Attn:    Steven B Towbin, Esq.<br>            Mark Radtke, Esq. |
| **Plan Administrator** | **Liquidation Trust Administrator** |
| [_____] | [_____] |

2.      After the Effective Date, the Plan Administrator and the Liquidation Trust Administrator shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

3.      In accordance with Bankruptcy Rules 2002 and 3020(c), within 14 days after the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors or Plan Administrator shall publish the Notice of Confirmation once in *The Wall Street Journal* (National Edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the Confirmation Order shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

H.     Term of Injunctions or Stays:   Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.     Entire Agreement:   Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.     Governing Law:   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Illinois, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

K.     Exhibits:   All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.   After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' Claims and Solicitation Agent, Kurtzman Carson Consultants LLC, at 2335 Alaska Avenue, El Segundo, California 90245, or by downloading such exhibits and documents from the Claims and Solicitation Agent's website at http://www.kccllc.net/kimballhill or the Bankruptcy Court's website at www.ilnb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.     Nonseverability of Plan Provisions:   If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the

K&E 13747550.

Prepetition Agent, the Creditors' Committee, the Liquidation Trust Administrator, or the Plan Administrator, as applicable; and (3) nonseverable and mutually dependent.

**M.**      **Waiver or Estoppel:  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Creditors' Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.**

N.      Conflicts:  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

K&E 13747550.

Chicago, Illinois
Dated:  December 2, 2008


Kimball Hill, Inc.;
18th and Peoria, LLC;
KH Financial Holding Company;
KH Ingham Park South, LLC;
KHH Texas Trading Company L.P.;
Kimball Hill Far East Detroit, LLC;
Kimball Hill Homes Austin, L.P.;
Kimball Hill Homes California, Inc.;
Kimball Hill Homes Dallas, L.P.;
Kimball Hill Homes Florida, Inc.;
Kimball Hill Homes Houston, L.P.;
Kimball Hill Homes Illinois, LLC;
Kimball Hill Homes Nevada, Inc.;
Kimball Hill Homes Ohio, Inc.;
Kimball Hill Homes Oregon, Inc.;
Kimball Hill Homes Realty Florida, Inc.;
Kimball Hill Homes San Antonio, L.P.;
Kimball Hill Homes Texas Investments, L.L.C.;
Kimball Hill Homes Texas Operations, L.L.C.;
Kimball Hill Homes Texas, Inc.;
Kimball Hill Homes Washington, Inc.;
Kimball Hill Homes Wisconsin, Inc.;
Kimball Hill Stateway, Inc.;
Kimball Hill Texas Investment Company, L.L.C.;
Kimball Hill Urban Centers Chicago One, L.L.C.;
Kimball Hill Urban Centers Chicago Two, L.L.C.;
Kimball Hill Urban Centers Special Purposes, LLC;
Kimball Hill Urban Centers, L.L.C.;
National Credit and Guaranty Corporation; and
The Hamilton Place Partnership.


By: */s/ C. Kenneth Love*
   Name:  C. Kenneth Love
   Title:  Authorized Signatory

COUNSEL:

*/s/ Ray C. Schrock*_____
Paul M. Basta, Esq.
Catherine Peshkin, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022

and

Ray C. Schrock, Esq.
Lauren Hawkins, Esq.
Kirkland & Ellis LLP
Aon Center
200 East Randolph Drive
Chicago, Illinois 60601

Counsel to the Debtors