## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>KIMBALL HILL, INC., *et al.*,[1]<br><br>Debtors. | )  Chapter 11<br>)<br>)  Case No. 08-10095<br>)  (Jointly Administered)<br>)<br>)  Hon. Susan Pierson Sonderby<br>) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING JOINT PLAN OF KIMBALL HILL, INC. AND ITS DEBTOR SUBSIDIARIES PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

The above-captioned debtors (collectively, the "Debtors") having:[2]

- on April 23, 2008 (the "Petition Date"), commenced these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

- continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

- filed, on December 2, 2008, the *Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code*

---

[1]   The Debtors in these cases include:  Kimball Hill, Inc.; 18th and Peoria, LLC; KH Financial Holding Company; KH Ingham Park South, LLC; KHH Texas Trading Company L.P.; Kimball Hill Far East Detroit, LLC; Kimball Hill Homes Austin, L.P.; Kimball Hill Homes California, Inc.; Kimball Hill Homes Dallas, L.P.; Kimball Hill Homes Florida, Inc.; Kimball Hill Homes Houston, L.P.; Kimball Hill Homes Illinois, LLC; Kimball Hill Homes Nevada, Inc.; Kimball Hill Homes Ohio, Inc.; Kimball Hill Homes Oregon, Inc.; Kimball Hill Homes Realty Florida, Inc.; Kimball Hill Homes San Antonio, L.P.; Kimball Hill Homes Texas Investments, L.L.C.; Kimball Hill Homes Texas Operations, L.L.C.; Kimball Hill Homes Texas, Inc.; Kimball Hill Homes Washington, Inc.; Kimball Hill Homes Wisconsin, Inc.; Kimball Hill Stateway, Inc.; Kimball Hill Texas Investment Company, L.L.C.; Kimball Hill Urban Centers Chicago One, L.L.C.; Kimball Hill Urban Centers Chicago Two, L.L.C.; Kimball Hill Urban Centers Special Purposes, LLC; Kimball Hill Urban Centers, L.L.C.; National Credit and Guaranty Corporation; and The Hamilton Place Partnership.

[2]   Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in Article I.A of the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply to this order (the "Confirmation Order").

[Docket No. 814] and the *Disclosure Statement for the Debtors' Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 815], which plan and related documents were subsequently amended multiple times;

- filed, on December 2, 2008, the *Motion of the Debtors for an Order Approving Disclosure Statement and Related Relief* [Docket No. 813] (the "Disclosure Statement Motion");

- filed, on January 21, 2009, the amended *Disclosure Statement for the Debtors' Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 926] (as amended, the "Disclosure Statement") with the amended *Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 899] (as amended, the "Plan") attached thereto, as evidenced by the *Affidavit of Service of Kenneth C. Chow Regarding the Disclosure Statement for the Debtors' Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 929];

- obtained approval of the Disclosure Statement by that certain *Order Approving the Debtors' Disclosure Statement and Granting Related Relief*, dated January 21, 2009 [Docket No. 925] (the "Solicitation Procedures Order"), which Solicitation Procedures Order also approved, among other things, solicitation procedures (the "Solicitation Procedures") and certain solicitation materials including notices, Ballots and Master Ballots (collectively, the "Solicitation Package") for soliciting votes with respect to the Plan;

- distributed, on or before January 30, 2009, Solicitation Packages to the parties entitled to receive Solicitation Packages pursuant to the Solicitation Procedures Order, and such distribution appearing to be consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, as evidenced by the *Affidavit of Service of Romelia A. Edwards Regarding Solicitation Packages Served on January 30, 2009*, filed on February 10, 2009 [Docket No. 981] (the "KCC Affidavit") and the *Affidavit of Service of Jane Sullivan on Behalf of Financial Balloting Group Regarding Solicitation Packages Served on January 29, 2009*, filed on February 10, 2009 [Docket No. 982] (the "FBG Affidavit");

- distributed, on or before January 30, 2009, certain other solicitation-related materials to parties on the Master Service List and the 2002 List, as defined in the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* filed on May 13, 2008 [Docket No. 174] (the "Case Management Order") in accordance with the Solicitation Procedures, as evidenced by the KCC Affidavit;

- published, on or before February 12, 2009, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") in the national editions of *USA Today, The Wall Street Journal,* and *The Chicago Tribune* as evidenced by the *Affidavit of Publication of Antoinette Chase in the USA Today* [Docket No. 1065], filed on March 3, 2009, the

*Affidavit of Publication of Erin Ostenson in The Wall Street Journal* [Docket No. 1064], filed on March 3, 2009, and the *Affidavit of Publication of Linda Lundberg in the Chicago Tribune* [Docket No. 1066], filed on March 3, 2009, (collectively, the "Publication Affidavits");

- filed, on February 15, 2009, the *Plan Supplement to the Debtors' Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries* [Docket No. 996] (as amended, the "Plan Supplement");[3]

- filed, on February 26, 2009 and March 4, 2009, certain amendments to the Plan Supplement [Docket Nos. 1021-1028] and [Docket Nos. 1080 and 1082], respectively;

- filed, on March 4, 2009, the *Affidavit of Romelia A. Edwards with Respect to the Tabulation of Votes on the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 1074], detailing the Plan voting results with respect to all classes of claims other than Class C-3 Claims (as amended, the "KCC Voting Report") and the *Affidavit of Jane Sullivan with Respect to the Tabulation of Votes on the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 1073], detailing the Plan voting results with respect to Class C-3 Claims (the "FBG Voting Report," and together with the KCC Voting Report, collectively, the "Voting Reports");

- filed, on March 4, 2009, the *Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code with Technical Modifications* [Docket No. 1076];

- filed, on March 4, 2009, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No, 1078] (the "Plan Confirmation Brief"), together with the *Declaration of Andrew D. J. Hede in Support of Confirmation of Joint Plan of Kimball Hill, Inc. and Its Debtor*

---

[3]  The Solicitation Procedures Order established February 13, 2009, as the deadline to file the Debtors' Plan Supplement (i.e., twenty-four (24) days before the Confirmation Hearing). On February 13, 2009 the Debtors attempted to electronically file the Plan Supplement via the Court's CM/ECF document filing system, but the CM/ECF system shut down for maintenance prior to the end of the business day. Accordingly, on February 13, 2009, the Debtors posted the Plan Supplement on the case website, served it on the Master Service List and 2002 List, and commenced service of all other notices, all as if the Plan Supplement had been formally filed with the Court on February 13, 2009. The Debtors filed the Plan Supplement via the CM/ECF system on Sunday, February 15, 2009, as soon as the system was available for use.

*Subsidiaries Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 1079] (the "Hede Declaration"); and

- filed, on March 6, 2009, the *Supplemental Affidavit of Romelia A. Edwards with Respect to the Tabulation of Votes on the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 1091].

This Court having:

- entered the Solicitation Procedures Order on January 21, 2009 [Docket No. 925];

- set March 9, 2009 at 2:00 p.m. prevailing Central Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

- reviewed the Plan, Disclosure Statement, the Plan Supplement, the Plan Confirmation Brief, the Hede Declaration, and the Voting Reports regarding Confirmation, including all objections, statements, and reservation of rights;

- heard the statements, arguments, and objections made by counsel with respect to Confirmation;

- considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

- overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

- taken judicial notice of the papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief

4

granted herein; and after due deliberation thereon and good cause appearing therefore, the Court

hereby makes and issues the following findings of fact, conclusions of law, and orders:[4]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THE COURT HEREBY FINDS AND DETERMINES THAT:

**I.      Jurisdiction and Venue**

A.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction

over this matter pursuant to 28 U.S.C. § 1334 and has exclusive jurisdiction to determine

whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be

confirmed.

**II.     Commencement and Joint Administration of the Chapter 11 Cases**

B.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  By prior order of the

Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 47].  The Debtors have

operated their businesses and managed their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed

---

[4]    The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings
of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding
pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute
conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law
constitute findings of fact, they are adopted as such.

in the Chapter 11 Cases. The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

### III.   Modifications to the Plan

C.      Any modifications to the Plan described or set forth herein constitute technical changes or changes with respect to particular Claims by agreement with Holders of such Claims, and do not materially or adversely affect or change the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

### IV.   Judicial Notice

D.      The Court takes judicial notice of (and deems admitted into evidence for Confirmation of the Plan) the docket of the Chapter 11 Cases, including all pleadings and other documents on file, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.   All unresolved objections, statements, and reservations of rights are overruled on the merits.

### V.   Solicitation Procedures Order

E.      On January 21, 2009, the Court entered the Solicitation Procedures Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed January 13, 2009 as the Record Date; (c) fixed February 27, 2009 at 5:00 p.m. prevailing Pacific Time as the

Voting Deadline; (d) fixed February 27, 2009 at 5:00 p.m. prevailing Central Time as the Plan Objection Deadline; (e) fixed March 9, 2009 at 2:00 p.m. prevailing Central Time as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Solicitation Procedures and the Solicitation Package.

## VI.    Transmittal and Mailing of Materials; Notice

F.    As evidenced by the KCC Affidavit and the FBG Affidavit, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, was provided to: (a) all known Holders of Claims and Interests and (b) Entities that properly requested notice (and did not withdraw such request) in accordance with Bankruptcy Rule 2002. Such notice was in compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be necessary or required. Additionally, notice to all parties subject to retained Causes of Action and all counterparties to Executory Contracts and Unexpired Leases was provided in compliance with the Solicitation Procedures Order.

G.    The Debtors published the Confirmation Hearing Notice in the *USA Today*, the National Edition of *The Wall Street Journal*, and *The Chicago Tribune*, in compliance with the Solicitation Procedures and Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavits.

## VII.    Adequacy of Solicitation

H.    Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations. Specifically, the Solicitation Package approved by the Court in the Solicitation Procedures Order (including the

7

Disclosure Statement, the Plan, the appropriate Ballots, the Master Ballots, and the related notices) were transmitted to and served on all Holders of Claims in Classes that were entitled to vote on the Plan and relevant portions of the Solicitation Package were transmitted to and served on other parties in interest in the Chapter 11 Cases. Transmittal and service was adequate and sufficient, and no further notice is necessary or required or shall be required. Additionally, Holders of Claims and Interests and other potential parties in interest that were not entitled to vote on the Plan were provided with non-voting materials approved by the Court (including the Confirmation Hearing Notice) in accordance with the Solicitation Procedures Order. Pursuant to the Solicitation Procedures Order, the Debtors were excused from mailing a Solicitation Package to those Entities to whom the Debtors attempted to mail a notice of commencement or a notice of the Claims Bar Date if either of such notices was returned and marked "undeliverable" by the United States Postal Service or other mail carrier unless such Entity informed the Debtors in writing of their new address. All procedures used to distribute the Solicitation Package to Holders of Claims were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## VIII.   Plan Supplement

I.       On February 15, 2009, the Debtors filed the Plan Supplement and served notice of such filing on the Master List, the 2002 List, each of the counterparties to the Debtors' Executory Contracts and Unexpired Leases, and all parties to retained Causes of Action. On February 26, 2009 and March 4, 2009 the Debtors filed certain amendments to the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required. The

Debtors are authorized to modify the Plan Supplement following entry of this Confirmation Order in accordance with the terms of the Plan and to the extent consistent with the Bankruptcy Code.

## IX.    Voting Report

J.    On March 4, 2009, the Debtors' Voting and Solicitation Agent filed the KCC Voting Report with the Court. On the same day, the Debtors' Securities Voting Agent filed the FBG Voting Report with the Court. All procedures used to tabulate the Ballots and Master Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

K.    As set forth in the Plan and Disclosure Statement, only Holders of Claims in Class A-1, Class C-1, Class C-2, and Class C-3 are eligible to vote on the Plan pursuant to the Solicitation Procedures. Holders of Claims in Class A-2, Class A-3, and Class B are Unimpaired and, thus, conclusively deemed to accept the Plan (the "Unimpaired Accepting Classes"). Holders of Claims in Class D and Holders of Interests in Class E are Impaired, but are not entitled to receive a distribution under the Plan. Therefore, Holders of Claims in Class D and Holders of Interests in Class E are presumed to reject the Plan pursuant to the Solicitation Procedures and are not entitled to vote on the Plan (the "Impaired Rejecting Classes"). As evidenced by the Voting Reports, creditors in each of the Classes eligible to vote on the Plan voted to accept the Plan (collectively, the "Impaired Accepting Classes"):

| Class | Claim/Interest | Status | Voting Right | % of Creditors Accepting | % of Claim Amount Accepting |
|-------|---------------|--------|-------------|-------------------------|----------------------------|
| A-1 | Senior Credit Agreement Claims | Impaired | Entitled to Vote | 100.00% | 100.00% |
| C-1 | Senior Unsecured Claims | Impaired | Entitled to Vote | 90.00% | 99.99% |
| C-2 | General Unsecured Claims | Impaired | Entitled to Vote | 94.44% | 97.78% |
| C-3 | Unsecured Senior Subordinated Note Claims | Impaired | Entitled to Vote | 98.89% | 99.90% |

L.    Based on the foregoing, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

## X.    Bankruptcy Rule 3016

M.    The Plan is dated and identifies the Entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a).    The filing of the Disclosure Statement satisfies Bankruptcy Rule 3016(b).

## XI.    Burden of Proof

N.    The Debtors, as proponents of the Plan, (a) have met their burden of proving the requisite elements of section 1129(a) and 1129(b) of the Bankruptcy Code by the applicable evidentiary standard for Confirmation and (b) have proven the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

## XII.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code

O.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

### (a)    Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

P.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

### (i)    Section 1122 and 1123(a)(1) – Proper Classification

Q.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.    Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into nine (9) Classes, based on differences in the legal nature or priority of such Claims and Interests.[5]  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  Further, the classifications were not done for any improper purpose and the creation of such Classes does not discriminate unfairly between or among Holders of Claims or Interests.

R.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code are satisfied.

---

[5]    Article II of the Plan discusses the treatment of Administrative Claims, DIP Facility Claims, and Priority Tax Claims.  Section 1123(a)(1) of the Bankruptcy Code excepts such claims from the classification requirement.

### (ii)    Section 1123(a)(2) – Specification of Unimpaired Classes

S.      Article III of the Plan specifies that Claims in Class A-2, Class A-3, and Class B are Unimpaired under the Plan.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims,  DIP Credit Agreement Claims,  and  Priority Tax Claims  are Unimpaired, however, these Claims are not classified under the Plan (collectively, the "Unclassified Claims") pursuant to section 1123(a)(1) of the Bankruptcy Code. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

### (iii)    Section 1123(a)(3) – Specification of Treatment of Impaired Classes

T.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Class A-1, Class C-1, Class C-2, Class C-3, Class D, and Class E. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

### (iv)    Section 1123(a)(4) – No Discrimination

U.      In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.    Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

### (v)    Section 1123(a)(5) – Adequate Means for Plan Implementation

V.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV the Plan and various other provisions of the Plan specifically provide, in sufficient detail, adequate, and proper means for the implementation of the Plan, including: (a) the sale of the Debtors' assets; (b) the establishment of the Post-Consummation Trust; (c) the transfer of certain assets including the Post-Consummation Trust Assets to the Post-Consummation Trust; (d) the funding of the

expenses of the Post-Consummation Trust; (e) the appointment of the Plan Administrator; (f) the
establishment of the Liquidation Trust; (g) the prosecution of Liquidation Trust Claims; (h) the
transfer of certain assets including the Liquidation Trust Assets to the Liquidation Trust; (i) the
funding of expenses of the Liquidation Trust; (j) the allocation of expenses between the
Liquidation Trust and the Post-Consummation Trust; (k) the appointment of the
Liquidation Trust Administrator; (l) the cancellation of instruments and equity securities and
related obligations; (m) the creation of the Professional Fee Escrow Account; (n) the
maintenance of Causes of Actions and the preservation of all Causes of Action not expressly
settled or released; (o) the release of all Interests, mortgages, deeds of trust, liens, or other
security interests against the property of any Estate; and (p) the general authority for all corporate
action necessary to effectuate the Plan.  Accordingly, the requirements of section 1123(a)(5) of
the Bankruptcy Code are satisfied.

### (vi)    Section 1123(a)(6) – Voting Power of Equity Securities

W.      Section 1123(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11
Cases because, among other things, the Debtors are not issuing any securities under the Plan.  On
the Effective Date, all securities pertaining to the Debtors will be cancelled.

### (vii)   Section 1123(a)(7) – The Appointment of a Successor to the Debtors

X.      The Plan complies with section 1123(a)(7) of the Bankruptcy Code, regarding the
selection of individuals to administer debts, because the selection of the Plan Administrator and
the Liquidation Trust Administrator has been accomplished in a fair and reasonable manner,
consistent with public policy.  Accordingly, the requirements of section 1123(a)(7) of the
Bankruptcy Code have been satisfied.

**(b)     Section 1123(b) – Discretionary Contents of the Plan**

Y.       The Plan contains various provisions that may be construed as discretionary but are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.   As a result, the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

**(i)     Section 1123(b)(1) and 1123(b)(2) – Unimpaired Claims and Executory Contracts and Unexpired Leases**

Z.       Pursuant to section 1123(b)(1) and (b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.  Further, Article V of the Plan provides for the assumption, assumption and assignment, or rejection of the Executory Contracts and Unexpired Leases of the Debtors not previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and applicable orders of the Court.

**(ii)    Section 1123(b)(3) - Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action**

AA.      Compromise and Settlement.  Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, the compromise and settlement provisions of the Plan constitute a good faith compromise of all Claims, Interests, or Causes of Action relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or any distribution to be made on account of such an Allowed Claim.  The compromise and settlement of such Claims, Interests, or Causes of Action embodied in the Plan

is in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests, and is fair, equitable, and reasonable.

BB.    The global settlement between the Creditors' Committee, the Prepetition Lenders, and the Prepetition Agent upon which the Plan is premised, including the settlements with respect to the allocation of the Post-Consummation and Liquidation Trust Assets as set forth in Article IV of the Plan and the Plan Supplement is fair, equitable, and reasonable, and complies with the applicable legal standard set forth in Bankruptcy Rule 9019.

CC.    All settlements and compromises of Claims, Interests, or Causes of Action of non-Debtor entities that are embodied in the Plan are effective and binding on each Holder of a Claim and Interest who may have standing to assert such Claims, Interests, or Causes of Action, and any such Holder of a Claim or Interest is forever barred from asserting such Claims, Interests, or Causes of Action after the Effective Date.

DD.    Releases by the Debtors. The release provisions described in Article VIII.C of the Plan (the "Debtor Releases") are essential to the Plan and represent a valid exercise of the Debtors' business judgment. The Debtor Releases are: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Causes of Action released by the Debtor Releases; (c) in the best interests of the Debtors and all Holders of Claims; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar against any of the Debtors or any Holder of a Claim or Interest that would have been legally entitled to assert any Cause of Action on behalf of any of the Debtors or any of the Estates from asserting any Cause of Action released pursuant to the Debtor Releases against any of the Released Parties.

EE.    Exculpation. The exculpation provisions set forth in Article VIII.D of the Plan are essential to the Plan. The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Article VIII.D of the Plan and the exculpation provisions are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

FF.    Releases by Holders of Claims and Interests. The releases by Holders of Claims and Interests described in Article VIII.E of the Plan (the "Third Party Releases") are essential to the Plan. The Third Party Releases are: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Released Parties; (c) in the best interests of the Debtors and all Holders of Claims; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (e) a bar to Holders of Claims and Interests, voting to accept the Plan and electing not to opt out of the release, from asserting any claim against any of the Released Parties.

GG.    The Third Party Releases provide for the release of the Debtors, the Post-Consummation Trust, the Liquidation Trust, and the Released Parties by Holders of Claims and Interests that voted in favor of the Plan and chose not to opt-out of the releases (which by definition, do not include Holders of Claims and Interests who are not entitled to vote in favor of or against the Plan). The Ballots explicitly state that a vote to accept the Plan without opting out constitutes an acceptance and assent to the release provisions set forth in Article VIII of the Plan. Thus, Holders of Claims and Interests voting to accept the Plan and choosing not to opt-out of the provision regarding Third Party Releases were given due and adequate notice that they would be granting such releases by acting in such a manner.

HH.    Injunction. The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to preserve and enforce the Debtor Releases, the Third Party Releases, and the exculpation provisions in Article VIII of the Plan, and are narrowly tailored to achieve that purpose.

II.    The Debtor Releases, the Third Party Releases, and the exculpation and injunction provisions set forth in the Plan: (a) are within the jurisdiction of the Court under 28 U.S.C. § 1334(a), 1334(b), and 1334(d); (b) are essential to implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are integral elements of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors, their Estates, and Holders of Claims; (e) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (g) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and other applicable law, including other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing and the Chapter 11 Cases provides a sufficient evidentiary basis to support the Debtor Releases, the Third Party Release, and the exculpation and injunction provisions granted herein and contained in Article VIII of the Plan.

JJ.    Preservation of Claims and Causes of Action. Article IV of the Plan appropriately provides for the maintenance of Causes of Action specified on Exhibit A to the Plan and the preservation by the Debtors of all Claims and Causes of Action against a Holder of a Claim or an Interest or other Entity that have not been expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including herein) for later adjudication by the Liquidation Trust or Post-Consummation Trust, as applicable, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding retained Causes of

17

Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Further, those Entities listed in the Plan Supplement as subject to a retained Cause of Action as provided in Article IV of the Plan were provided with timely, adequate, and sufficient notice.

(c)    **Section 1129(a)(2) – Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

KK.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, 3018, and 3019.

LL.    Votes to accept or reject the Plan were solicited by the Debtors and their respective agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

MM.    The Debtors and certain of their representatives have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Solicitation Procedures, the Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article VIII.D of the Plan.

NN.    The Debtors and their respective present and former representatives have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the

Plan and, therefore, are not, and on account of such distributions will not be, liable for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### (d)    Section 1129(a)(3) – Proposal of the Plan in Good Faith

OO.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Debtors' good faith is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the Plan Confirmation Brief, the Hede Declaration, the record of the Confirmation Hearing, and all other proceedings held in the Chapter 11 Cases. The Plan is the product of comprehensive, arm's-length negotiations between the Debtors, the Prepetition Agent, and the Creditors' Committee. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, and that the Plan serves the public interest and assures fair treatment of Holders of Claims and Interests. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of maximizing the value of the Debtors' assets recoveries to Holders of Claims. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### (e)    Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable

PP.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, including

the payment of Professional Claims and the establishment of the Professional Fee Escrow Account, have been approved by, or are subject to approval of the Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

    **(f)**    **Section 1129(a)(5) – Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

QQ.    Section 1129(a)(5) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases. To the extent section 1129(a)(5) applies to the Post-Consummation Trust and the Liquidation Trust, the Debtors have disclosed that (a) the Prepetition Agent, in consultation with the Prepetition Lenders, has determined to designate U.S. Bank National Association as the Plan Administrator and (b) the Creditors' Committee, in consultation with the Prepetition Agent, has designated U.S. Bank National Association as the Liquidation Trust Administrator.

    **(g)**    **Section 1129(a)(6) – Approval of Rate Changes**

RR.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

    **(h)**    **Section 1129(a)(7) – Best Interests of Holders of Claims and Interests**

SS.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Plan Distribution Analysis and the Liquidation Analyses included in the Disclosure Statement and the other evidence proffered at the Confirmation Hearing or in the Hede Declaration: (a) are persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) are based upon reasonable and sound assumptions; (c) have not been controverted by other evidence or have not been challenged; (d) provide a reasonable estimate of the liquidation values of the Debtors upon conversion to a case under chapter 7 of the Bankruptcy Code; and

(d) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted

the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a

value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if

the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. As a result,

the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

### (i)    Section 1129(a)(8) – Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

TT.    Class A-2, Class A-3, and Class B are Unimpaired Classes and are conclusively

presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth

in the Voting Report, the Impaired Accepting Classes (i.e., Class A-1, Class C-1, Class C-2, and

Class C-3) have voted to accept the Plan. Because the Plan has not been accepted by the

Rejecting Classes, the Debtors sought Confirmation of the Plan under section 1129(b) of the

Bankruptcy Code, rather than section 1129(a)(8) of the Bankruptcy Code. As set forth below in

Paragraph 14 and in the Hede Declaration, although section 1129(a)(8) of the Bankruptcy Code

has not been satisfied with respect to the Impaired Rejecting Classes, the Plan is confirmable

because the Plan does not discriminate unfairly and is fair and equitable with respect to the

Impaired Rejecting Classes. As a result, the requirements of section 1129(b) of the Bankruptcy

Code are satisfied.

### (j)    Section 1129(a)(9) – Treatment of Priority Claims

UU.    The Plan provides for treatment of Administrative Claims, DIP Facility Claims,

Priority Tax Claims, and Other Priority Claims in the manner required by section 1129(a)(9) of

the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy

Code are satisfied.

(k)    **Section 1129(a)(10) – Acceptance by at Least One Impaired Class**

VV.    As set forth in the Voting Report, the Impaired Accepting Classes have voted to accept the Plan. As such, there is at least one class of Claims that is Impaired under the Plan that has accepted the Plan (without including any acceptance of the Plan by any insider), thus satisfying section 1129(a)(10) of the Bankruptcy Code in all respects.

(l)    **Section 1129(a)(11) – Feasibility of the Plan**

WW.    The Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at or prior to the Confirmation Hearing or in the Hede Declaration:    (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible; and (e) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.    Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code are satisfied.

(m)    **Section 1129(a)(12) – Payment of Bankruptcy Fees**

XX.    In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XV.C of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.    The Debtors, the Post-Consummation Trust, and the Liquidation Trust, as applicable, have adequate means to pay all such fees.

(n)    **Section 1129(a)(13) – Retiree Benefits**

YY.    Article IV.H of the Plan provides that all retiree benefit programs (as that term is defined in section 1114 of the Bankruptcy Code), as modified or amended during the Chapter 11

Cases, will continue in effect for the duration of the period that the Debtors have obligated themselves to provide such benefits. The Debtors do not have any retiree benefit programs. In addition, on or after the Effective Date, except for the Debtors' health plan, all of the Debtors' existing employee benefit policies, plans, and agreements that have not been terminated prior to the Effective Date, including without limitation the employee stock option plan, will terminate. The Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

      **(o)**      **Section 1129(b) – Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

ZZ.      Notwithstanding the fact that the Impaired Rejecting Classes are deemed to have rejected the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code because: (a) the Impaired Accepting Classes have voted to accept the Plan and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Impaired Rejecting Classes. The Plan does not discriminate unfairly with respect to Class D or Class E because no Holders of Claims or Interests junior to Class D or Class E shall receive any distribution under the Plan. Moreover, it appears that there are no Claims in Class D. Accordingly, the Plan is fair and equitable towards all Holders of Subordinated Debt Securities Claims (i.e., Class D) and all Holders of Interests (i.e., Class E). As a result, the Plans satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the Confirmation Order and upon occurrence of the Effective Date, the Plan shall be binding on the members of the Impaired Rejecting Classes.

**(p)    Section 1129(c) – Only One Plan**

AAA.  Other than the Plan (including previous versions thereof), no other plan has been

filed in the Chapter 11 Cases, thus satisfying section 1129(c) of the Bankruptcy Code.

**(q)    Section 1129(d) – Principal Purpose of the Plan Is Not the Avoidance of Taxes or Application of the Securities Law**

BBB.  No governmental unit has requested that the Court refuse to confirm the Plan on

the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of

the application of section 5 of the Securities Act.  Further, as evidenced by the terms of the Plan,

the principal purpose of the Plan is not to avoid taxes or the application of securities law.

Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**XIII.   Satisfaction of Confirmation Requirements**

CCC.  Based upon the foregoing, the Plan satisfies the requirements for Confirmation set

forth in section 1129 of the Bankruptcy Code.

**XIV.   Good Faith**

DDD.  The Debtors, the Creditors' Committee, the Prepetition Agent, the Prepetition

Lenders, and each of their representatives have been acting and will continue to act in good faith

if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and

transfers contemplated thereby; and (b) take the actions authorized and directed by this

Confirmation Order.

**XV.    Implementation of Other Necessary Documents and Agreements**

EEE.  All documents and agreements necessary to implement the Plan, including, the

Post-Consummation Trust Agreement and the Liquidation Trust Agreement, are essential

elements of the Plan and entry into and consummation of the transactions contemplated by each

24

such documents and agreements are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtors have exercised their reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors, the Plan Administrator, and the Liquidation Trust Administrator, as applicable, shall be authorized to execute and deliver all agreements, documents, instruments, and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, pay all fees thereunder. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's-length, are fair and reasonable and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements.

## XVI.   Executory Contracts and Unexpired Leases

FFF.    The Debtors have exercised their reasonable business judgment in determining whether to assume, assume and assign, or reject each of the Executory Contracts and Unexpired Leases as set forth in Article V of the Plan and in the Plan Supplement. Each assumption, assignment, and rejection of an Executory Contract or Unexpired Lease as provided in Article V of the Plan shall be legal, valid, and binding upon the applicable Debtor, the Post-Consummation Trust, or the Liquidation Trust, as applicable, and all other Debtor or non-Debtor parties to such Executory Contracts or Unexpired Leases, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation Date.

## XVII.  Adequate Assurance

GGG. The Debtors have provided adequate assurance of future performance for each assumed Executory Contract and Unexpired Lease that is being assumed by the Debtors pursuant

to the Plan. Further, the Debtors have cured or provided adequate assurance that the Debtors, the Post-Consummation Trust, or the Liquidation Trust, as applicable, will cure defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases being assumed by each of the foregoing parties, as applicable, pursuant to the Plan. As a result, the requirements of section 365 of the Bankruptcy Code are satisfied.

**XVIII. Conditions Precedent to Confirmation**

HHH.  Entry of this Confirmation Order satisfies the conditions to Confirmation set forth in Article XII.A.2 and Article XII.A.3 of the Plan.

**XIX.  Conditions Precedent to Consummation**

III.  Each of the conditions precedent to Consummation set forth in Article XII.B of the Plan is satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied.

**XX.  Retention of Jurisdiction**

JJJ.  The Court properly may retain jurisdiction over the matters set forth in Article XIV of the Plan and other applicable provisions of the Plan.

*    *    *    *

**ORDER**

Based on the foregoing, it is hereby ORDERED:

**A.  Order**

1.  This Confirmation Order shall and does confirm the Plan. A copy of the Plan is attached hereto as Exhibit A.

**B.    Objections**

2.    To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

**C.    Findings of Fact and Conclusions of Law**

3.    The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation of the Plan are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**D.    Confirmation of the Plan**

4.    The Plan and each of its provisions, terms, and conditions and all documents and agreements related thereto, including the Post-Consummation Trust Agreement and the Liquidation Trust Agreement (all as may be modified by this Confirmation Order or in accordance with the Plan), are approved and confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers) are approved, and such documents' execution, delivery, and performance by the Debtors

is hereby authorized. Without further order or authorization of the Court, the Debtors, the Post-Consummation Trust, and the Liquidation Trust are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan in accordance with the terms and conditions of the Post-Consummation Trust Agreement and the Liquidation Trust Agreement, as applicable.

     5.      The Plan and the Plan Supplement and each of their provisions, terms, and conditions, and all documents and agreements related thereto, once finalized and executed, including the Post-Consummation Trust Agreement and the Liquidation Trust Agreement are incorporated by reference herein and shall constitute legal, valid, binding, and authorized obligations enforceable in accordance with their terms as of the Effective Date.

     6.      The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**E.    Plan Classification Controlling**

     7.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and

(d) shall not be binding on the Debtors, the Plan Administrator, and the Liquidation Trust Administrator except for voting purposes.

**F.     The Post-Consummation Trust; the Plan Administrator**

8.     The Plan Administrator's appointment shall be effective as of the Effective Date.

9.     The Post-Consummation Trust Agreement and all of the terms and conditions contained therein are approved and the Debtors are authorized to execute the Post-Consummation Trust Agreement on the Effective Date.

10.    The powers, authority, responsibilities, and duties of the Post-Consummation Trust and the Plan Administrator are set forth in and will be governed by the Post-Consummation Trust Agreement.

11.    On the Effective Date, and in accordance with and pursuant to sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) the Liquidation Trust will transfer to the Post-Consummation Trust the Diminution Claim payment and (b) the Debtors will transfer to the Post-Consummation Trust all of their rights, title, and interests in all of the Post-Consummation Trust Assets. In connection with the transfer of the Post-Consummation Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives and the Debtors and the Post-Consummation Trust are authorized to take all actions necessary to effectuate the transfer of such privileges in accordance with the Plan and the Post-Consummation Trust Agreement.

12.    On the Effective Date, the Debtors will assign and transfer to the Post-Consummation Trust and the Liquidation Trust all of their rights and obligations in

29

connection with the employment agreements for the following parties: (a) Ann M. Hamilton; (b) Bradley R. Grining; and (c) Michael T. Richardson (collectively, the "Employment Agreements"). The Post-Consummation Trust and the Liquidation Trust shall perform their obligations under the Employment Agreements pursuant to the terms and conditions set forth therein, provided that nothing in the Plan or the Confirmation Order shall alter the allocation of expenses between the Post-Consummation Trust and Liquidation Trust as set forth in the Employment Agreements, the Post-Consummation Trust Agreement, and the Liquidation Trust Agreement.

**G.      The Liquidation Trust; the Liquidation Trust Administrator**

13.      The Liquidation Trust Administrator's appointment shall be effective as of the Effective Date. The Liquidation Trust Administrator's compensation shall be as set forth in the Liquidation Trust Agreement.

14.      The Liquidation Trust Agreement and all of the terms and conditions contained therein are approved and the Debtors are authorized to execute the Liquidation Trust Agreement on the Effective Date.

15.      The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trust Administrator are set forth in and will be governed by the Liquidation Trust Agreement.

16.      On the Effective Date, and in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code and pursuant to the terms of the Plan, (a) the Post-Consummation Trust will transfer to the Liquidation Trust the Committee Settlement Payment and (b) the Debtors will transfer to the Liquidation Trust all of the Estates' rights, title, and interests in all of the Liquidation Trust Assets. All such assets shall vest exclusively in the

Liquidation Trust on the Effective Date. The Liquidation Trust will have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Liquidation Trust Claims and Causes of Action (to the extent a Cause of Action has been transferred to the Liquidation Trust) in accordance with the terms of the Plan and the Liquidation Trust Agreement.

17.     In connection with the transfer to the Liquidation Trust Assets, any attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust will vest in the Liquidation Trust and its representatives, and the Debtors and the Liquidation Trust are authorized to take all actions necessary to effectuate the transfer of such privileges.

## II.     Compromise and Settlement of Claims and Controversies

18.     After the Effective Date, the Liquidation Trust Administrator or Plan Administrator, as applicable, may compromise and settle Claims against them and Causes of Action against other Entities in accordance with the provisions of the Plan, the Post-Consummation Trust, and the Liquidation Trust, as applicable, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a) without any further order or approval of the Court.

## I.     The Debtor Releases, Third Party Releases, Injunction and Exculpation Provisions

19.     The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are essential provisions of the Plan and are hereby approved and authorized in their entirety:

### (a)     Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration,

31

including the service of the Released Parties to facilitate the expeditious emergence of the Debtors and the implementation of the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, their Estates, the Post-Consummation Trust, the Liquidation Trust, and their Affiliates, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, the Post Consummation Trust, the Liquidation Trust, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith and where such failure to perform constitutes willful misconduct, gross negligence, or fraud.

Pursuant to Article I of the Plan, Released Parties shall include each of: (a) the Debtors and their Affiliates, which include Kimball Hill, Inc.; 18th and Peoria, LLC; KH Financial Holding Company; KH Ingham Park South, LLC; KHH Texas Trading Company L.P; Kimball Hill Far East Detroit, LLC; Kimball Hill Homes Austin, L.P.; Kimball Hill Homes California, Inc.; Kimball Hill Homes Dallas, L.P.; Kimball Hill Homes Florida, Inc.; Kimball Hill Homes Houston, L.P.; Kimball Hill Homes Illinois, LLC; Kimball Hill Homes Nevada, Inc.; Kimball Hill Homes Ohio, Inc.; Kimball Hill Homes Oregon, Inc.; Kimball Hill Homes Realty Florida, Inc.; Kimball Hill Homes San Antonio, L.P.; Kimball Hill Homes Texas Investments, L.L.C.; Kimball Hill Homes Texas Operations, L.L.C.; Kimball Hill Homes Texas, Inc.; Kimball Hill Homes Washington, Inc.; Kimball Hill Homes Wisconsin, Inc.; Kimball Hill Stateway, Inc.; Kimball Hill Texas Investment Company, L.L.C.; Kimball Hill Urban Centers Chicago One, L.L.C.; Kimball Hill Urban Centers Chicago Two, L.L.C.; Kimball Hill Urban Centers Special Purposes, LLC; Kimball Hill Urban Centers, L.L.C.; National Credit and Guaranty Corporation; and The Hamilton Place Partnership.; (b) the DIP Lender, Kimball Hill, Inc., in its capacity as such; (c) the Prepetition Agent, Harris, N.A. and the Prepetition Lenders as of the Effective Date, each in their capacities as such; (d) the Creditors' Committee and the current and former members thereof, which include US Bank, N.A., SMH Capital Advisors, Inc.,

California National Bank, Tower Crossing Homeowners' Association, Masco Corporation, and Builders Gypsum Supply Co., each in their capacities as such; (e) the Indenture Trustee, U.S. Bank, N.A.; (f) the Plan Administrator, in its capacity as such; (g) the Liquidation Trust Administrator, in its capacity as such; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' subsidiaries, Affiliates, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacities as such; provided that clause (h) shall not include officers, directors, or employees of the Debtors who were no longer acting in such capacity on the Petition Date. Clause (h) of the foregoing sentence includes, Akin Gump Strauss Hauer & Feld LLP, Alvarez & Marsal North America, LLC, Deloitte Tax LLP, FTI Consulting, Inc., Foley & Lardner LLP, Garden City Group, Inc., Gardere Wynne Sewell LLP, Houlihan Lokey Howard & Zukin Capital, Inc., Kirkland & Ellis LLP, Kurtzman Carson Consultants LLC, Macquarie Capital (USA) Inc., Mayer Brown LLP and Neal, Gerber & Eisenberg, LLP.

### (b)    Releases by Holders of Claims and Interests.

Except as otherwise specifically provided in the Plan, on and after the Effective Date, Holders of Claims and Interests voting to accept the Plan and electing not to opt out of the release contained in this paragraph (which by definition, does not include Holders of Claims and Interests who are not entitled to vote in favor of or against the Plan), shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Post–Consummation Trust, the Liquidation Trust, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Debtor or a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor or the Released Party reasonably believed to be in the best interests of the

Debtors (to the extent such duty is imposed by applicable non bankruptcy law)
where such failure to perform constitutes willful misconduct, gross negligence, or
fraud; provided that this release and discharge shall not apply to any distributions
on account of Claims or Interests specifically contemplated in Article VII of the
Plan.

Entry of this Confirmation Order shall constitute the Court's approval,
pursuant to Bankruptcy Rule 9019, of the Releases by Holders of Claims and
Interests, which includes by reference each of the related provisions and
definitions contained herein, and further, shall constitute the Court's finding that
the Releases by Holders of Claims and Interests are (1) in exchange for the good
and valuable consideration provided by the Released Parties, a good faith
settlement and compromise of the Claims released by the Releases by Holders of
Claims and Interests; (2) in the best interests of the Debtors and all Holders of
Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and
opportunity for hearing; and (5) a bar to any of the releasing parties asserting any
Claim released by the Releases by Holders of Claims and Interests against any of
the Released Parties.

**(c)    Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party
shall have or incur, and each Exculpated Party is released and exculpated from
any Claim, obligation, Cause of Action, or liability to one another or to any
exculpating party for any Exculpated Claim, except for gross negligence, willful
misconduct, or fraud, but in all respects such Entities shall be entitled to
reasonably rely upon the advice of counsel with respect to their duties and
responsibilities pursuant to the Plan. The Debtors (and each of their respective
Affiliates, agents, directors, officers, employees, advisors, and attorneys) have,
and upon the Effective Date shall be deemed to have, participated in good faith
and in compliance with the applicable provisions of the Bankruptcy Code with
regard to the distributions of the securities pursuant to the Plan, and therefore are
not, and on account of such distributions shall not be, liable at any time for the
violation of any applicable law, rule, or regulation governing the solicitation of
acceptances or rejections of the Plan or such distributions made pursuant to the
Plan.

Pursuant to Article I of the Plan, Exculpated Parties are the same as the
Released Parties with the inclusion of any Disbursing Agents.

**(d)    Injunction**

Except as otherwise expressly provided in the Plan or for obligations
issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims
or Interests that have been released pursuant to Article VIII.C of the Plan or
Article VIII.E of the Plan, compromised pursuant to Article VIII.B of the Plan, or

are subject to exculpation pursuant to Article VIII.D of the Plan are permanently
enjoined, from and after the Effective Date, from: (1) commencing or continuing
in any manner any action or other proceeding of any kind on account of or in
connection with or with respect to any such Claims or Interests; (2) enforcing,
attaching, collecting, or recovering by any manner or means any judgment, award,
decree, or order against such Entities on account of or in connection with or with
respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any
encumbrance of any kind against such Entities or the property or estates of such
Entities on account of or in connection with or with respect to any such Claims or
Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind
against any obligation due from such Entities or against the property or Estates of
such Entities on account of or in connection with or with respect to any such
Claims or Interests unless such Holder has filed a motion requesting the right to
perform such setoff on or before the Effective Date, and notwithstanding an
indication in a Proof of Claim or Interest or otherwise that such Holder asserts,
has, or intends to preserve any right of setoff pursuant to section 553 of the
Bankruptcy Code or otherwise; and (5) commencing or continuing in any manner
any action or other proceeding of any kind on account of or in connection with or
with respect to any such Claims or Interests released or settled pursuant to the
Plan, provided that notwithstanding anything to the contrary herein, no release
will be granted by this paragraph.  Nothing in the Plan or this Confirmation Order
shall preclude any Entity from pursuing an action against one or more of the
Debtors in a nominal capacity to recover insurance proceeds so long as the Plan
Administrator or the Liquidation Trust Administrator, as applicable, and any such
Entity agree in writing that such Entity will:  (a) waive all Claims against the
Post-Consummation Trust, the Liquidation Trust, and the Estates related to such
action and (b) enforce any judgment on account of such Claim solely against
applicable insurance proceeds, if any.

## J.    Maintenance of Causes of Action

20.    The provisions of Article IV.J of the Plan are hereby approved in their entirety.

Except as otherwise provided in the Plan (including Article VIII.C of the Plan), on the

Effective Date, all of the Debtors' rights to commence and pursue, as appropriate, any and all

Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal

in an adversary proceeding or contested matter filed in one or more of the Chapter 11 Cases,

including, but not limited to, the Causes of Action set forth in Article IV.J of the Plan and any

Causes of Action specified on Exhibit A to the Plan, will be transferred to the Liquidation Trust
or the Post-Consummation Trust, as applicable, in accordance with the Plan.

21.     Unless a Claim or Cause of Action against a creditor or other Person is expressly
waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the
Debtors expressly reserve and transfer such Claim or Cause of Action to the Liquidation Trust or
the Post-Consummation Trust, as applicable, for later adjudication by the applicable trust.

**K.     Allowance and Payment of Certain Administrative Claims**

22.     Professional Claims.  All final requests for payment of Claims of a Professional
shall be filed no later than forty-five (45) days after the Effective Date.  Any objections to final
requests for payment of Claims of a Professional shall be filed no later than seventy-five (75)
days after the Effective Date.  After notice and a hearing in accordance with the procedures
established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such
Professional Claims shall be determined by the Court.  Except as otherwise provided in the Plan
and subject to Article IX.A.1 of the Plan, Professionals shall be paid pursuant to the Interim
Compensation Order for amounts earned through the Effective Date.

23.     Except as otherwise specifically provided in the Plan, from and after the
Effective Date, the Debtors, the Post-Consummation Trust, or the Liquidation Trust, as
applicable, shall, in the ordinary course of business and without any further notice to or action,
order, or approval of the Court, pay in Cash the reasonable legal, professional, or other fees and
expenses related to implementation and Consummation incurred by the Debtors or incurred by
the Creditors' Committee in connection with those matters for which it remains in existence after
the Effective Date pursuant to the Plan.  Upon the Effective Date, any requirement that

Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.

24.     Other Administrative Claims. Except as otherwise provided in Paragraph 22 of this Confirmation Order, requests for payment of Administrative Claims must be filed and served on the Plan Administrator and the Liquidation Trust Administrator pursuant to the procedures specified in the Administrative Bar Date Order, no later than, as applicable, (a) February 27, 2009 for Administrative Claims arising between the Petition Date and January 16, 2009 and (b) May 4, 2009 for Administrative Claims arising after January 16, 2009.    Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the Debtors, the Post-Consummation Trust or the Liquidation Trust, or their respective property, and such Administrative Claims will be deemed disallowed as of the Effective Date. In the event that any party with standing objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order. Objections to payment of Administrative Claims must be filed and served on the Plan Administrator, the Liquidation Trust Administrator, and the requesting party by the later of (a) one hundred eighty (180) days after the Effective Date and (b) ninety (90) days after the filing of the applicable request for payment of Administrative Claims.

**L.     Cancellation of Debt and Equity Securities and Related Obligations**

25.     On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the Kimball Hill Common Stock and any other Certificate, note, bond, indenture, purchase

37

right, option, warrant, or other instrument or document directly or indirectly evidencing or

creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any

Claim or Interest shall be cancelled solely as to the Debtors, and neither the Liquidation Trust

Administrator nor the Plan Administrator shall have any continuing obligations thereunder; and

(b) the Holders of or parties to such cancelled instruments, securities, and other documentation

will have no rights arising from or relating to such instruments, securities, and other

documentation or the cancellation thereof, except the rights provided pursuant to the Plan;

provided that notwithstanding Confirmation, any such indenture or agreement that governs the

rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of:

(1) allowing Holders to receive distributions under the Plan; (2) allowing a Servicer to make

distributions on account of such Claims or Interests as provided in Article VII of the Plan;

(3) permitting such Servicer to maintain any rights and liens it may have against property other

than property of the Debtors, the Post-Consummation Trust, or the Liquidation Trust for fees,

costs, and expenses pursuant to such indenture or other agreement; and (4) governing the rights

and obligations of non-Debtor parties to such agreements vis-à-vis each other; provided further

that the preceding proviso shall not affect the disallowance of Claims or Interests pursuant to the

Bankruptcy Code, this Confirmation Order, or the Plan, or result in any expense or liability to the

Debtors, the Post-Consummation Trust, or the Liquidation Trust.    The Debtors, the

Post-Consummation Trust, and the Liquidation Trust shall not have any obligations to any

Servicer for any fees, costs, or expenses, except as expressly otherwise provided in the Plan.

**M.     Release of Liens, Claims, and Equity Interests**

        26.     Except as otherwise provided in the Plan or in any contract, instrument, release, or

other agreement or document entered into or delivered in connection with the Plan, on the

Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Interests, mortgages, deeds of trust, and liens against the property of any Estate will be fully released. All Claims and Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation. Upon Confirmation, the Debtors and all property dealt with herein shall be free and clear of all such Claims and Interests, including, but not limited to, liens, security interests, and any and all other encumbrances.

## N.   Exemptions from Taxation

27.   Pursuant to section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from a Debtor to the Post-Consummation Trust, the Liquidation Trust, or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

**O.     Assumption and Rejection of Executory Contracts and Unexpired Leases**

28.     Approval of Assumptions and Assignments. This Confirmation Order constitutes approval of the assumption or conditional assumption of the Executory Contracts and Unexpired Leases to be assumed under the Plan as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.    Each Executory Contract and Unexpired Lease that is assumed will vest in and be fully enforceable by the Post-Consummation Trust or Liquidation Trust, as applicable, any applicable assignee in accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Court authorizing or providing for its assumption, or applicable law.  Except for an Executory Contract or Unexpired Lease that was previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court with the effective date of such assumption or rejection on or before the Effective Date, or that is assumed pursuant to Article V.A of the Plan, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date will be rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date or as of the date set forth on Exhibit C to the Plan.

29.     Bar Date for Rejection Damages.    Notwithstanding anything in any order establishing a Bar Date to the contrary, if the rejection of an Executory Contract or Unexpired Lease, including pursuant to Article V.C of the Plan, gives rise to a Claim (including any Claims arising from those Indemnification Obligations described in Article V.E of the Plan) by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, the Liquidation Trust, the Post-Consummation Trust, their respective successors, or their respective properties unless a Proof of Claim is filed and served on

40

the Post-Consummation Trust and the Liquidation Trust pursuant to the procedures specified in the notice of the Effective Date or an order of the Court, in each case no later than thirty (30) days after the Effective Date.

30.    Obligations to Indemnify Directors, Officers, and Employees.    The obligations of each Debtor to indemnify any person serving as one of its directors, officers, or employees as of or following the Effective Date will, to the extent constituting an Executory Contract, be deemed rejected as of the Effective Date.    The Debtors, the Post Consummation Trust, and the Liquidation Trust will have no obligation on or after the Effective Date to pay or perform such Indemnification Obligations.    Notwithstanding the foregoing, such directors, officers, and employees will have the benefit of any and all directors' and officers' liability insurance policies that may be in effect, but none of the Debtors, the Post-Consummation Trust, or the Liquidation Trust will have any obligation on or after the Effective Date to pay premiums thereunder.

31.    Contracts and Leases Entered into After the Petition Date.    Any contracts or leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be (a) performed by the Post-Consummation Trust or the Liquidation Trust, as applicable, in the ordinary course of its business; or (b) terminated, with the relevant counterparty required to file a Claim asserting any alleged damages within thirty (30) days of receiving notice of termination or the applicable Administrative Claim Bar Date, whichever is later.

32.    Reservation of Rights With Respect to Executory Contracts and Unexpired Leases.    Nothing in this Confirmation Order, the Plan, or any exhibit to the Plan is intended to be or shall be construed as a waiver of the Debtors' authority to assume and assign or reject an

41

Executory Contract or Unexpired Lease prior to the Effective Date pursuant to procedures approved by the Court. Neither the exclusion nor inclusion of any contract or lease by the Debtors on any Exhibit to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that any Debtor, the Liquidation Trust, or the Post-Consummation Trust, or their respective Affiliates, has any liability thereunder. Nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors, the Liquidation Trust, or the Post-Consummation Trust under any Executory Contract or non-Executory Contract or any Unexpired Lease or expired lease. Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Post-Consummation Trust, or the Liquidation Trust under any Executory Contract or non-Executory Contract or any Unexpired Lease or expired lease. At any time through and including the Effective Date, the Debtors may alter, amend, modify, or supplement Exhibit B and Exhibit C to the Plan. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, then (a) the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, (b) the Post-Consummation Trust, with the consent of the Liquidation Trust, or (c) the Liquidation Trust with the consent of the Post-Consummation Trust, as applicable, will have thirty (30) days following entry of a Final Order resolving such dispute to amend their decision to assume or reject such contract or lease.

**P.      Procedures for Resolving Disputed Claims and Interests**

       33.     After the Effective Date, except as released in the Plan or in this Confirmation Order, the Liquidation Trust shall have and retain any and all rights and defenses

the Debtors had with respect to any Claims and Interests immediately prior to the Effective Date,

including the Causes of Action referenced in Article IV of the Plan.

34.     Claims and Interests Administration Responsibilities.    Except as otherwise

specifically provided in the Plan and the Plan Supplement, after the Effective Date, the

Liquidation Trust Administrator shall have the sole authority: (1) to file, withdraw, or litigate to

judgment any objections to Claims or Interests; (2) to settle or compromise any Disputed Claim

or Interest without any further notice to or action, order, or approval by the Court; and (3) to

administer and adjust the Claims Register to reflect any such settlements or compromises without

any further notice to or action, order, or approval by the Court; provided that (a) the

Plan Administrator, in consultation with the Liquidation Trust Administrator, shall have such

authority with respect to Administrative Claims and (b) the Plan Administrator, in consultation

with the Liquidation Trust Administrator, shall have such authority with respect to Priority Tax

Claims and Class B Claims.

35.     Estimation of Claims and Interests.   Before the Effective Date, the Debtors, and

after the Effective Date, the Liquidation Trust Administrator or Plan Administrator, as

applicable, may at any time request that the Court estimate any Disputed Claim or Interest that is

contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason,

regardless of whether any party previously has objected to such Claim or Interest or whether the

Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such

Claim or Interest, including during the litigation of any objection to any Claim or Interest or

during the appeal relating to such objection.  Notwithstanding any provision to the contrary in the

Plan, a Claim or Interest that has been disallowed, but that either is subject to appeal or has not

been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless

otherwise ordered by the Court.   In the event that the Court estimates any contingent or

unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on

such Claim or Interest for all purposes under the Plan (including for purposes of distributions),

and the Liquidation Trust Administrator or Plan Administrator, as applicable, may elect to pursue

any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim

or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or

otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a

motion requesting the right to seek such reconsideration on or before twenty days after the date

on which such Claim is estimated.

     36.     <u>Adjustment to Claims Without Objection.</u>  Any Claim or Interest that has been

paid or satisfied, or any Claim or Interest that has been amended or superseded, may be so

adjusted or disallowed absent objection at the request of the Plan Administrator or

Liquidation Trust Administrator without any further notice to or action, order, or approval of the

Court.

     37.     <u>Disallowance of Claims or Interests.</u>  Any Claim or Interest held by Entities from

which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that

is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or

724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the

Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on

account of such Claims and Interests until such time as such Causes of Action against that Entity

have been settled or a Court order with respect thereto has been entered and all sums due, if any,

to the Debtors by that Entity have been turned over or paid to the Liquidation Trust

Administrator.   All Claims filed by former employees on account of an employee benefit referenced in Article IV.H of the Plan shall be deemed satisfied and disallowed as of the Effective Date to the extent the Plan Administrator elects to honor such employee benefit out of the proceeds of the Post-Consummation Trust Assets, without any further notice to or action, order, or approval of the Court.

38.    Except as otherwise agreed by the Debtors, with consent of the Creditors' Committee, or the Liquidation Trust Administrator, as applicable, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed as of the Effective Date without any further notice to or action, order, or approval of the Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Court order.

39.    Offer of Judgment.   The Liquidation Trust Administrator or Plan Administrator, as applicable, is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Holder's Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.   To the extent the Holder of a Claim must pay the costs incurred by the Liquidation Trust Administrator or Plan Administrator, as applicable, after the making of such offer, the Liquidation Trust Administrator or Plan Administrator, as applicable, is entitled to set off such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Court.

40.    Amendments to Claims.   On or after the Effective Date, except as provided in Article VI of the Plan, a Claim may not be filed or amended without the prior authorization of the

Court and the Liquidation Trust Administrator or Plan Administrator, as applicable, and any such new or amended Claim filed shall be deemed disallowed in full without any further action.

## Q.    Immediate Binding Effect

41.    Subject    to    Article XII.B    of    the    Plan    and    notwithstanding Bankruptcy Rules 3020(e), 6004, or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Consummation Trust, the Liquidation Trust, and any and all Holders of Claims and Interests (irrespective of whether the Classes of Claims and Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## R.    Additional Documents

42.    On or before the Effective Date, the Debtors may file with the Court such agreements and other documents in form and substance reasonably acceptable to the Prepetition Agent and the Creditors' Committee as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Liquidation Trust Administrator, or the Plan Administrator, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

S.     **Payment of Statutory Fees**

43.     All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid for

each quarter (including any fraction thereof) until the respective Chapter 11 Cases are converted,

dismissed, or closed, whichever occurs first.

T.     **Dissolution of Creditors' Committee**

44.     Upon the Effective Date, the Creditors' Committee shall dissolve automatically,

except with respect to any appeals filed regarding Confirmation, any pending litigation or

contested matter to which the Creditors' Committee is a party, and the resolution of applications

for Professional Claims, and members thereof shall be released and discharged from all rights,

duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under

the Bankruptcy Code.     Notwithstanding anything to the contrary in the Plan or

Confirmation Order, the consent and consultation rights afforded to the Creditors' Committee, if

any, shall expire immediately upon Consummation, except any consent and consultation rights in

connection with any appeals filed regarding Confirmation, any pending litigation or contested

matter to which the Creditors' Committee is a party, and the resolution of applications for

Professional Claims.     Further, on the Effective Date, the Committee Standing Motion will be

withdrawn with prejudice.

U.     **Reservation of Rights**

45.     Except as expressly set forth in the Plan, the Plan shall have no force or effect

unless the Court enters this Confirmation Order. None of the Filing of the Plan, any statement or

provision contained in the Plan, or the taking of any action by any Debtor with respect to the

Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an

admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

## V.   Successors and Assigns

46.   The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## W.   Service of Confirmation Order

47.   In accordance with Bankruptcy Rules 2002 and 3020(c), within fourteen (14) days after the date of entry of this Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.   To supplement the notice described in the preceding sentence, within twenty days (20) after the date of this Confirmation Order, the Debtors or Plan Administrator, whichever is applicable, shall publish the Notice of Confirmation in the *USA Today*, the National Edition of *The Wall Street Journal*, and *The Chicago Tribune*. Mailing and publication of the Notice of Confirmation in the time and manner set forth in this Confirmation Order shall be good and sufficient notice under the particular circumstances and in

48

accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

## X.    Notice of Effective Date

48.    The   Debtors   shall   serve   a   notice   of   the   Effective Date (the "Effective Date Notice")   on   all   Entities   on   whom   the   Debtors   served   the Confirmation Hearing Notice and to the Office of the United States Trustee for the Northern District of Illinois no later than ten (10) days after the Effective Date.

## Y.    Injunctions and Automatic Stay

49.    Unless otherwise provided in the Plan or herein, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105, 362, or 525 of the Bankruptcy Code or otherwise, or any order of the Court, and extant on the date of this Confirmation Order (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or herein shall remain in full force and effect in accordance with their terms.   This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, or liabilities released pursuant to the Plan.

## Z.    Governing Law

50.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Illinois, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents,

instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

## AA.   Modifications to Plan

51.    Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, with the consent of the Prepetition Agent and the Creditors' Committee, expressly reserve their rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII of the Plan.

## BB.   Nonseverability of Plan Provisions

52.    The provisions of this Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors,