the Prepetition Agent, the Creditors' Committee, the Liquidation Trust Administrator, or the Plan Administrator, as applicable; and (c) nonseverable and mutually dependent.

### CC.  References to Plan Provisions

53. Captions and headings to articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure specifically to include or to refer to any particular article, section or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

### DD.  Waiver or Estoppel

54. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Creditors' Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court prior to the Confirmation Date.

### EE.  Authorization to Consummate

55. The Debtors are authorized to Consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XII.B of the Plan.

### FF.  Effect of Non-Occurrence of Conditions to Consummation

56. Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article XII.C of the Plan and Consummation must occur within one hundred eighty

(180) days of Confirmation, or by such later date established by Court order. If Consummation has not occurred within one hundred eighty (180) days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, this Confirmation Order may be vacated by the Court; provided that, notwithstanding the filing of such motion to vacate, this Confirmation Order may not be vacated if Consummation occurs before the Court enters an order granting such motion. If this Confirmation Order is vacated for any reason, then except as provided in any order of the Court vacating this Confirmation Order, the Plan will be null and void in all respects, including the treatment of Claims and termination of Interests pursuant to the Plan and the assumptions, assumptions and assignments, or rejections of Executory Contracts or Unexpired Leases pursuant to Article V of the Plan, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## GG.  Substantial Consummation

57. The substantial Consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to have occurred upon the date of the first payment made pursuant to the Plan.

## HH.  Retention of Jurisdiction

58. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b) Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c) Resolve any matters related to: (a) the assumption, assumption, and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Plan Administrator, or Liquidation Trust Administrator, as applicable, amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d) Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e) Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f) Adjudicate, decide, or resolve any and all matters related to Causes of Action;

(g) Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h) Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(i) To issue such orders in aid of execution of the Plan as may be necessary or appropriate to carry out its intent and purpose or to implement the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(j) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

(k) Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(l) Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(m) Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(n) Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(o) Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.E.1 of the Plan;

(p) Enter and implement such orders as are necessary or appropriate if this Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(q) Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, this Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement.

(r) Enter an order or orders and Final Decree concluding or closing each of the Chapter 11 Cases;

(s) Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(t) Consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including this Confirmation Order;

(u) Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(v) Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or this Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, including the Post Consummation Trust Agreement and the Liquidation Trust Agreement;

(w) Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(x) Enforce all orders previously entered by the Bankruptcy Court; and

(y) Hear and determine any other matter not inconsistent with the Bankruptcy Code.

## II. Home and Land Sales

59. Except as otherwise provided in the Plan, on the Effective Date, title to all of the Debtors' assets shall pass to the Post-Consummation Trust or the Liquidation Trust (as applicable) free and clear of all liens. Title agents and title insurance underwriters may rely upon the filing of a copy of this Confirmation Order in each county where the Debtors, the Post-Consummation Trust, or the Liquidation Trust are selling land or residential homes to issue their title policies on properties located within each such county without exception to prepetition lien claims, whether asserted or unasserted, known or unknown.

## JJ. Specific Creditor Provisions

(a) **Beazer Homes**[6]

60. Subject to all applicable Bar Dates, notwithstanding any provision of the Plan or any order or agreement entered or approved in furtherance of the Plan, no provision shall

---

[6] Paragraph 60 of the Confirmation Order resolves the objection Beazer filed to the Plan [Docket No. 1038].

55

constitute or be deemed to constitute an impairment in any respect of the ability of Beazer Homes Holdings Corp. ("Beazer") to assert and maintain defenses or counterclaims against Kimball Hill Homes Nevada, Inc., ("KHHN") any Released Parties, Exculpated Parties, and/or their interests in South Edge, LLC in any dispute or transaction involving South Edge, LLC or the interests of Beazer and/or KHHN's membership interests therein.

### (b) Texas Taxing Authorities[7]

61. All liens securing the Claims of the Texas Taxing Authorities, for both prepetition and postpetition tax years, shall remain in full force and effect until all taxes, penalties and interest secured by such liens pursuant to Texas state law have been paid.

62. Upon the sale of any property subject to taxes by any of the Texas Taxing Authorities, the taxes, as well as any penalties and interest otherwise collectible thereon, shall be paid in full at the time of the closing of the sale transaction. To the extent that the current year's taxes are not yet due and payable, the property shall be transferred subject to the tax liens for the current tax year until the payment in full by the purchaser of the current year's taxes, and any penalties and interest that may ultimately accrue thereon, in the ordinary course.

---

[7] Paragraphs 61 through 66 of the Confirmation Order resolve the objections the Texas taxing authorities (collectively, the "Texas Taxing Authorities") filed to the Plan [Docket Nos. 1019, 1031, and 1055]. The Texas Taxing Authorities are the County of Denton, County of Guadalupe, County of Hays, County of Williamson, Hays CISD, Round Rock ISD, Dallas County, DeSoto, DeSoto ISD, Kaufman County, Rockwall CAD, Tarrant County, McAllen, McAllen ISD, South Texas College, South Texas ISD, Bexar County, Cypress-Fairbanks ISD, Fort Bend County, Galveston County, Harris County, Judson ISD, Katy ISD, League City, Travis County, City of Austin, City of Pflugerville, Austin Independent School District, Pflugerville Independent School District, Manor Independent School District, Austin Community College, Travis County Municipal Utility District Number 15, Travis County Emergency Services District Number 2, and Travis County Hospital District.

63. To the extent that any properties subject to prepetition taxes by the Texas Taxing Authorities have not been sold, or the taxes, penalties, and interest thereon been otherwise paid, within five (5) years from the date of assessment of such taxes, the Texas Taxing Authorities shall be at full liberty to proceed against such properties without further recourse to the Bankruptcy Court.

64. The Claims of the Texas Taxing Authorities shall accrue interest from the Petition Date through the Effective Date pursuant to section 506(b) of the Bankruptcy Code, as well as from the Effective Date until paid in full, at the rate provided under Texas law (1% per month) as required by section 511 of the Bankruptcy Code.

65. The Debtors shall have ninety (90) days from the Confirmation Date to file objections to the Claims of the Texas Taxing Authorities filed prior to the Confirmation Date, which Claims shall continue to accrue interest as provided above until the appropriate amount of taxes, as determined by agreement of the parties or subsequent order of the Bankruptcy Court, is paid in full.

66. Postpetition taxes for the 2009 and following tax years shall be paid in the ordinary course, prior to delinquency, without the necessity of the Texas Taxing Authorities filing administrative expense Claims or requests for payment. If such postpetition taxes are not timely paid, the Texas Taxing Authorities will be entitled to exercise all rights through state court procedures against such properties as they would otherwise be entitled to do under state law, without further recourse to the Bankruptcy Court.

(c)     **South Edge, Focus Entities, and Kyle[8]**

67.     Pursuant to the Solicitation Procedures, the amount of a Claim established pursuant to the Solicitation Procedures shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for distribution purposes. Article I.A of the Plan provides that any Unsecured Claim that is entitled to the benefits of the subordination provisions in the Senior Subordinated Notes Indenture (other than Senior Credit Agreement Claims) are Senior Unsecured Claims.

68.     The designation and/or classification of the Claims filed by South Edge, LLC ("South Edge"), Claim Numbers 1635 and 1641 (collectively, the "South Edge Claims"), as General Unsecured Claims for voting purposes is not binding on South Edge for allowance and distribution purposes. The South Edge Claims shall be classified for allowance and distribution purposes in accordance with the Plan and all parties reserve all rights with respect thereto. For example, and not by way of limitation, South Edge reserves the right to take the position that all or portions of the South Edge Claims should be classified as Senior Unsecured Claims (Class C-1), rather than General Unsecured Claims (Class C-2), and are entitled to distributions in accordance therewith.

69.     The designation and/or classification of Claims Nos. 1471, 1478, 1485, 1488, 1492 and 1499 (collectively, the "Focus Claims") filed by Holdings Manager, LLC, Focus South Group, LLC and John Ritter (collectively, the "Focus Entities") as General Unsecured Claims for

---

[8] Paragraph 68 of the Confirmation Order resolves the objection South Edge filed to the Plan [Docket No. 1035]. Paragraph 69 of the Confirmation Order resolves the objection the Focus Entities filed to the Plan [Docket No. 1032]. Paragraphs 70 and 71 of the Confirmation Order resolves the objections Kyle filed to the Plan [Docket No. 1040 and 1054].

58

voting purposes is not binding on the Focus Entities for allowance and distribution purposes. The Focus Claims shall be classified for allowance and distribution purposes in accordance with the Plan and all parties reserve all rights with respect thereto. For example, and not by way of limitation, the Focus Entities reserve the right to take the position that all or portions of the Focus Claims should be classified as Senior Unsecured Claims (Class C-1), rather than General Unsecured Claims (Class C-2), and are entitled to distributions in accordance therewith."

70. The designation and/or classification of the Claims filed by Kyle Acquisition Group, LLC ("Kyle"), Claim Numbers 1504 and 1508 (collectively, the "Kyle Claims"), as General Unsecured Claims for voting purposes is not binding on Kyle for allowance and distribution purposes. The Kyle Claims shall be classified for allowance and distribution purposes in accordance with the Plan and all parties reserve all rights with respect thereto. For example, and not by way of limitation, Kyle reserves the right to take the position that all or portions of the Kyle Claims should be classified as Senior Unsecured Claims (Class C-1), rather than General Unsecured Claims (Class C-2), and are entitled to distributions in accordance therewith.

71. Further, Kyle's objection with respect to the reserve treatment of its contingent Claims is resolved as follows:

(a) Within thirty (30) days after the Effective Date, Kyle will file Proofs of Claim or a single Proof of Claim amending the Kyle Claims to assert the specific monetary amount of its Claims.

(b) If Kyle and the Liquidation Trust Administrator are unable to agree on the amount and/or classification of the Kyle Claims for reserve purposes, not later than thirty (30) days after Kyle amends its Proofs of Claim as set forth above, the Liquidation Trust Administrator shall file a motion to estimate the Kyle Claims (the "Estimation Motion") for the sole purposes of establishing a reserve for distributions and determining how the amended Kyle Claims should be classified for reserve purposes. The

59

    Estimation Motion shall be heard at, to the extent necessary, an evidentiary hearing at either (i) the first omnibus hearing scheduled to occur at least fourteen (14) days after the Estimation Motion is filed or (ii) a special hearing the Court sets to consider the Estimation Motion. The parties respectfully request that the Court schedule such hearing in any event no later than June 30, 2009.

 (c) No distributions shall be made on account of Liquidation Trust Series B Interests prior to the agreed estimation or Court estimation, in each case pursuant to the procedures set forth above. The parties waive any right to appeal or seek reconsideration of the Court's estimation ruling described above.

 **(d) Inland Bank & Trust Company[9]**

72. In full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim held by Inland Bank & Trust Company f/k/a AmeriMark Bank ("Inland Bank"), Inland Bank shall receive the following treatment:

 (a) Upon the Effective Date, the AmeriMark Bank $3,500,000 Promissory Note and related documents (the "Stonehill Loan") secured by the two buildings and personal property known as Stonehill Square and located at 5999 New Wilke Road, Rolling Meadows, IL 60008 (collectively, the "Stonehill Buildings") shall be reinstated pursuant to section 1124 of the Bankruptcy Code, including through the following:

 (b) Upon the Effective Date, (a) the Debtors shall transfer title to the Stonehill Buildings to the Liquidation Trust subject to all liens, Claims, interests, and encumbrances of Inland Bank that existed as to the Stonehill Buildings just prior to the Effective Date, and the Liquidation Trust shall assume all obligations of the borrower under the Stonehill Loan; and (b) the Debtors or the Liquidation Trust shall pay Inland Bank on the Effective Date any amounts required by section 1124 of the Bankruptcy Code to reinstate the Stonehill Loan, and the Liquidation Trust shall thereafter perform all obligations of the borrower under the Stonehill Loan. Notwithstanding the foregoing, the Stonehill Loan shall be modified as follows: If the Liquidation Trust sells one of the buildings

---

[9] Paragraphs 72 through 75 of the Confirmation Order resolve the objections Inland Bank filed to the Plan [Docket Nos. 1033 and 1084].

comprising the Stonehill Buildings before the Stonehill Loan is paid in full, the Liquidation Trust shall apply the net proceeds from such sale to the then outstanding balance of the Stonehill Loan, and such sale shall not constitute an event of default nor shall such sale entitle Inland to exercise any remedies under the Stonehill Loan including acceleration of the Stonehill Loan.

73. Any Claims of Inland on account of the AmeriMark Bank $4,800,000 Promissory Note and related documents (the "2900 Loan") secured by the real and personal property located at 2900 Golf Road, Rolling Meadows, IL 60008 (the real property and personal property being collectively referred to as the "2900 Building") shall be treated as follows:

(a) Upon the Effective Date, pursuant to Article III.B.3 of the Plan, the Debtors shall convey to Inland Bank fee simple title to the 2900 Building. The Debtors' transfer of title to the 2900 Building shall be free and clear of all liens, Claims, interests, and encumbrances, except for property tax Claims on the 2900 Building. For the avoidance of doubt, the Debtors and Inland shall be entitled to the exemption of any stamp or similar tax pursuant to section 1146(a) of the Bankruptcy Code that would otherwise be incurred as a result of the transfer of the 2900 Building to Inland Bank.

74. Inland Bank shall use reasonable and commercial efforts to sell the 2900 Building. The amount of Inland Bank's Allowed Secured Bank Claim with respect to the 2900 Loan shall be determined in accordance with the Bankruptcy Code. Any deficiency Claim of Inland Bank on account of the 2900 Loan (the "Deficiency Claim"), as agreed to by Inland Bank and the Liquidation Trust Administrator, on account of the 2900 Loan shall be considered a Senior Unsecured Claim under Article III.B.5 of the Plan. In the event that Inland Bank and the Liquidation Trust Administrator are unable to agree regarding the allowable amount of Inland Bank's Allowed Secured Bank Claim, Inland Bank or the Liquidation Trust Administrator may seek a determination by the Court of the allowable amount of Inland Bank's Allowed Secured Bank Claim and any Senior Unsecured Claim.

75. If the 2900 Building is sold such that Inland Bank receives net proceeds greater than those necessary to pay the AmeriMark Bank $4,800,000 Promissory Note in full, with interest and fees as provided by such Note ("Excess Proceeds"), Inland shall reduce the outstanding balance of the Stonehill Loan by the amount equal to the Excess Proceeds.

### KK. Final Confirmation Order

76. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: 2/12/09

United States Bankruptcy Judge