UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08bk10095 |
| | ) | |
| In re Kimball Hill, Inc., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

This matter comes on for consideration on the Motion of LCP SLJV 2008-1 IL-1, LLC for Entry of an Order (I) Enforcing Confirmation Order; (II) Awarding Damages; and (III) Granting Related Relief [Dkt. No. 4066] (the "Motion") brought by LCP SLJV 2008-1 IL-1, LLC ("LCP"), the current owner of real property once owned by a non-Debtor (Debtor defined *infra*), but related, entity, and assignee of Debtors' personal property in the above-captioned bankruptcy case. The Motion is opposed by Fidelity and Deposit Company of Maryland ("F&D"), a surety on projects relating to those assets and a creditor of the bankruptcy estate.

The core of this dispute is not one of first impression for this court. Under similar but not identical circumstances, this court previously found that F&D violated the confirmation order in this case. *See In re Kimball Hill, Inc.*, 565 B.R. 878 (Bankr. N.D. Ill. 2017) (Barnes, J.) (the "TRG Decision"). Damages arising out of that violation are being tried separately before the court. The TRG Decision guides much of the court's analysis herein.

The differences, however, are meaningful. As a result while, for the reasons more fully set forth below, the court will grant in part the Motion, damages in this matter will be less straightforward. A separate hearing on damages will follow.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28

U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.,* or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Each of the foregoing has been previously addressed by the court in the TRG Decision. 565 B.R. at 888-91. In sum, the court has jurisdiction and statutory authority to hear and determine the Motion as it is a request to enforce an injunction extant in an order confirming a liquidating chapter 11 plan. That jurisdiction is not, however, exclusive. *Id.* at 891. The court also has constitutional authority to enter a final order with respect to the Motion because both parties have consented to this court's hearing and determining the issues therein—LCP by filing the Motion and F&D by filing its claim and by its participation in this case. More importantly, no party has contested the jurisdiction or authority of this court in this matter.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

PROCEDURAL HISTORY

In taking up the Motion, the court has considered the arguments of the parties at the January 24, 2018 and June 13, 2018 hearings on the Motion and has reviewed and considered the following filed documents relating to the Motion:

(1)    Response of Fidelity and Deposit Company of Maryland in Opposition to Motion of LCP SLJV 2008-1 IL-1, LLC for Entry of an Order (I) Enforcing Confirmation Order; (II) Awarding Damages; and (III) Granting Related Relief [Dkt. No. 4216]; and

(2)    Reply in Further Support of Motion of LCP SLJV 2008-1 IL-1, LLC for Entry of an Order (I) Enforcing Confirmation Order; (II) Awarding Damages; and (III) Granting Related Relief [Dkt. No. 4223] (the "Reply").

The court has also taken into consideration any and all exhibits submitted in conjunction with the Motion and the foregoing filings. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi,* Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In*

*re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same). In doing so, the court has considered the procedural history and previous court filings in this case, as is discussed below in detail.

BACKGROUND

The relevant history is largely undisputed and has been set forth in detail in the TRG Decision, 565 B.R. at 883-88. There are, however, differences.

A.    The TRG Decision

In the TRG Decision, the court was faced with a similar motion to Motion at bar here. There the movant, TRG Venture Two, LLC ("TRG"), sought enforcement of this court's March 12, 2009 order (the "Confirmation Order"),[1] which order confirmed the joint plan of liquidation (the "Plan")[2] of Kimball Hill, Inc. ("Kimball Hill" and together with its affiliates, "KHI") and 29 other KHI debtors (collectively with Kimball Hill, the "Debtors"). *See* TRG Decision, 565 B.R. at 883-88.

After the Plan was confirmed, TRG acquired property from an intermediary of the Debtors' bankruptcy estate. *Id.* at 886. The property was subject to certain annexation agreements governing its development and performance of requirements therein was secured by performance bonds. *Id.* at 883. In turn, F&D acted as the surety for such bonds with a right of indemnity from KHI. *Id.*

Thereafter, despite F&D having submitted multiple claims in the Debtors' bankruptcy cases for its exposure under the bonds and voting in favor of the Plan, when F&D was pursued as the surety under the bonds, it sought recovery from TRG in the state courts. *Id.* at 887. TRG, in turn, first sought in the state courts dismissal of the collection actions brought by F&D. That was largely successful until, in 2015 and 2016, appeals reversed several of the dismissals. At that time, TRG brought its motion to this court. *Id.*

TRG alleged and the court found that terms of the Plan and F&D's participation thereunder and in the bankruptcy cases foreclosed F&D's ability to pursue TRG as a successor in interest to the Debtors. In particular, the court found that the release (the "Release")[3] and the plan injunction (the

---

[1]    Findings of Fact, Conclusions of Law, and Order Confirming Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code [Dkt. No. 1118].

[2]    Joint Plan of Reorganization of Kimball Hill, Inc. and Its Debtor Subsidiaries Pursuant to Chapter 11 of the Bankruptcy Code [Dkt. No. 814, as amended].

[3]    [O]n and after the Effective Date, Holders of Claims and Interests *voting to accept* the Plan ... shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Post-Consummation Trust, the Liquidation Trust, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively) ....

Plan, at VIII.E (emphasis added); Confirmation Order, at ¶ 19(b) (emphasis added); *see* TRG Decision, 565 B.R. at 884. "Released Parties" is defined in the Plan as the Debtors and their Affiliates, the lenders, the creditors committee and its members, the indenture trustee in the case, the Plan Administrator (defined *infra*),

"Plan Injunction"),[4] combined with F&D's votes in favor of the Plan, stipulations with
municipalities and claims in the bankruptcy cases,[5] prevented F&D from seeking recovery from
TRG. As a result, the court concluded that F&D had violated the terms of the Release and the Plan
Injunction. TRG Decision, 565 B.R. at 901.

B.    LCP

As does TRG, LCP holds title to property in a subdivision once developed by one of the
Debtors. The subdivision at issue is located in Sugar Grove, Illinois and is named Settler's Ridge.
Settler's Ridge had two owners, each owning a portion of the property that was to become the
subdivision—Alexander Family of Illinois Limited Partnership ("AFILP") and KH SRAV I, LLC
("KHS"). KHS, a non-Debtor, was managed and majority owned by Kimball Hill Homes Illinois,
LLC ("KHH"), a Debtor. KHS executed a mortgage with respect its portion of Settler's Ridge in
favor of Wachovia Bank, N.A. ("Wachovia") to secure a $40 million loan for the development of
Settler's Ridge. KHI, another Debtor, guaranteed the Wachovia loan.

As was customary and had occurred with TRG, the municipality having jurisdiction over the
Settler's Ridge project entered into an annexation agreement with AFILP and KHS as owners and
KHH as developer (the "Annexation Agreement"), which Annexation Agreement set forth the
terms and conditions under which Settler's Ridge would be developed, including the duties and
rights of each of the parties. KHH, as the developer, was required to post bonds to ensure its
performance under the Annexation Agreement and it did so, with F&D as the surety (the
"Performance Bonds"). The municipality, the Village of Sugar Grove (the "Village"), had the right
to pursue F&D under the Performance Bonds if certain public improvements were not completed.

---

and each of the foregoing's related entities and employees. Plan, at I.A(115). "Affiliate" is defined in the
Plan as "an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or
more of the outstanding voting securities of any of the Debtors." *Id.* at I.A(7).

[4]    [A]ll Entities who have held, hold, or may hold Claims or Interests that have been released ...
       are permanently enjoined, from and after the Effective Date, from: (1) commencing or
       continuing in any manner any action or other proceeding of any kind on account of or in
       connection with or with respect to any such Claims or Interests; (2) enforcing, attaching,
       collecting, or recovering by any manner or means any judgment, award, decree, or order ...
       with respect to any such Claims or Interest ... (5) commencing or continuing in any manner
       any action or other proceeding of any kind on account of or in connection with or with
       respect to any such Claims or Interests released or settled pursuant to the Plan ....

Plan, at VIII.F; Confirmation Order, at ¶ 19(d); *see* TRG Decision, 565 B.R. at 885.

[5]    F&D brought multiple claims in the bankruptcy cases with respect to the liability it sought to recover
from TRG. While the court ultimately collapsed those claims into one for distribution purposes and
disallowed the contingent amounts, in so doing, the court expressly stated that F&D retained a right to seek
reconsideration under section 502(j) should the noncontingent amount of the claim change. Order Granting
Twenty-Second Omnibus Objection to Duplicate Claims of Fidelity & Deposit Co. of Maryland and Zurich
American Insurance Company [Dkt. No. 3537] (the "F&D Claim Order"); TRG Decision, 565 B.R. at 887.
When F&D challenged some of those conclusions on appeal, the District Court affirmed the consolidation of
F&D's claims for distribution purposes and found that due notice of the same was given. *In re Kimball Hill,
Inc.,* Case No. 13 C 07146, 2014 WL 5615650, at *5 (N.D. Ill. Nov. 4, 2014).

If F&D was forced to pay funds under the Performance Bonds, F&D had a right of indemnity from KHH that was memorialized in an indemnity agreement (the "Indemnity Agreement").

LCP acquired the Wachovia mortgage and related notes as a part of a pool of defaulted mortgage loans in October 2008.[6] On June 3, 2009, the trust created under the Plan (the "KHI Trust"),[7] KHS and LCP (as subsequent holder of the Wachovia mortgage) entered into an Agreement of Deed in Lieu of Foreclosure to address the mortgage liability owed by KHS and the guaranty of the same by KHI. Reply, Exh. C [Dkt. Nos. 4223-4 to 4223-7] (the "DIL Agreement"). The DIL Agreement provided for the transfer to LCP of the Settler's Ridge real property owned by KHS via a quitclaim deed and the sale of KHH's and KHI's personal property interests relating to the real property in exchange for a covenant by LCP not to sue KHS or KHI on account of the mortgage, thereby resolving LCP's (previously Wachovia's) bankruptcy claim against KHI as guarantor.

In 2010, the Village sought relief from the Plan Injunction in order to permit them to continue enforcement of the regulations governing Settler's Ridge by suing F&D and other sureties under the Annexation Agreement. On April 30, 2010, the court approved a stipulation by the Debtors, F&D and the Village to resolve the Village's request. Stipulation and Agreed Order for Modification of Plan Injunction [Dkt. No. 2365] (the "Village Stipulation"). In the Village Stipulation, all parties stipulated that under the Plan the Debtors rejected the Annexation Agreement as part of their rejection of executory contracts generally. However, parties with damages stemming from the rejection of these contracts were allowed to file claims. The Village filed a claim on account of rejection of the Annexation Agreement for $6,533,653.32 [Claim No. 2363] (defined in the Village Agreement as the "Village Claim"). F&D filed multiple claims relating to the Settler's Ridge project (defined in the Village Agreement as the "Zurich Claims").

The Village Stipulation provides specifically that:

The Plan Injunction shall be modified for the limited purpose of permitting the Village to proceed against the Bonds, at no cost to the KHI Trusts, so that the Village may establish liability against [KHH] under the Annexation Agreement for the sole purpose of recovering *against the proceeds of the Bonds, if any.*

…

To the extent that a Surety actually satisfies any portion of the Village Claim pursuant to the Bonds, … the Village hereby agrees to (a) assign the Village Claim to such Surety in an amount equal to the payment(s) made by such Surety in discharge of its obligations under the Bonds and (b) waive any and all of its remaining claims

---

[6]      LCP's status as the holder of the mortgage has not been challenged.

[7]      As governed by the KHI Post-Consummation Trust Agreement [Dkt. No. 1024] (the "KHI Trust Agreement"). The Plan actually created two trusts: The KHI Trust and the so-called "Liquidation Trust." *See* Plan, at XI. The parties herein focus only on the terms and operation of the KHI Trust, as well as the rights and obligations thereunder. The administrator under the Plan (the "Plan Administrator") administers the KHI Trust and is afforded the authority on behalf of the KHI Trust to liquidate, including by sale or agreement, the remainder of the Debtors' assets so vested in the KHI Trust. KHI Trust Agreement, at ¶ 1.4. The Plan Administrator was also afforded the authority to resolve claims. Confirmation Order, at ¶ 34.

described in the Village Claim to the extent not assigned to the Surety. For the avoidance of doubt, a Surety may succeed to the Village's rights in the Village Claim solely to the extent the Surety satisfies any portion of the Village Claim pursuant to the Bond; *provided, however, under no circumstances may a Surety obtain a double recovery on account of the Zurich Claims* … (to the extent that the Zurich Claims … are based upon claim liability of the Debtors or the [Plan] Administrators arising out of the Bonds) *and the Village Claim* (to the extent Zurich obtains an assignment of or is subrogated to the Village's rights).

Village Stip., at ¶¶ 1, 3 (emphasis added). The Village Stipulation is signed by the same counsel that continues to represent F&D with respect to the current dispute and the previous TRG dispute. Notably, the Village and F&D agreed in the Village Stipulation that their claims were subject to the Plan Injunction. Village Stip., at ¶ J.

At or about the time that F&D was seeking recovery from this court on its claims, it also began to seek recovery against TRG and LCP on essentially the same basis in the Illinois state courts. In addition to pursuing TRG in several other matters, it filed a third-party complaint against both TRG and LCP in the Village's suit against F&D under the Performance Bonds.[8] Amended Third Party Complaint of Fidelity and Deposit Company of Maryland [Dkt. No. 3969-3] (the "Third-Party Complaint"). TRG and LCP subsequently moved for dismissal of the Third-Party Complaint from the Sugar Grove Lawsuit and were successful in June 2012.

Following a trial on the remainder of its claims, the Village obtained a judgment against F&D in the amount of $2,159,400.00 in the Sugar Grove Lawsuit. A month later, the Village and F&D settled that judgment for the sum of $2,156,232,59. This, however, did not end F&D's efforts. Rather than solely seeking recovery from the Debtor's bankruptcy case for its loss,[9] F&D sought recovery against TRG and LCP in the Sugar Grove Lawsuit.

After having been successful at the state court appellate level in obtaining reversals of several of the TRG dismissals,[10] F&D filed a motion to reconsider the dismissal of the Third-Party Complaint against TRG and LCP in the Sugar Grove Lawsuit. The motion was granted by the state court on December 12, 2016.[11]

---

[8]      *Village of Sugar Grove v. Fidelity & Dep. Co. of Maryland*, pending in the Circuit Court of Kane County, Illinois, Case No. 10 MR 597 (the "Sugar Grove Lawsuit"). The Sugar Grove Lawsuit is the action that the court approved under the Village Stipulation.

[9]      Despite the fact that the F&D Claim Order and section 502(j) of the Bankruptcy Code provide a process to allow amendment of claims for additional amounts paid under the Performance Bonds, F&D has not applied in this court for any such additional, noncontingent amount.

[10]      *See City of Elgin v. Arch Ins. Co.*, 53 N.E.3d 31 (Ill. App. Ct. 2015), *appeal denied*, 60 N.E.3d 871 (Ill. 2016) (the "Elgin Decision"); *Vill. of Montgomery v. Fid. & Deposit Co. of Maryland*, 2016 IL App (2d) 150571-U (Ill. App. Ct. 2016), *appeal denied*, 65 N.E.3d 847 (Ill. 2016).

[11]      While counsel for F&D had represented to this court at a hearing on the TRG motion that he would take no action in the Sugar Grove Lawsuit during the briefing and resolution of the TRG motion, F&D's motion for reconsideration was granted while the TRG motion was being briefed in this court.

Two days after the state court granted F&D's motion to reconsider, on December 14, 2016, the TRG Decision was announced orally by this court. On March 10, 2017, after the court had announced the TRG Decision but before the written decision had been issued, F&D filed a motion in the Sugar Grove Lawsuit seeking leave to file a second amended third-party complaint against TRG and LCP [Mot., Exh. C] (the "Request for Leave to Amend"). Attached to the Request for Leave to Amend is the proposed seconded amended third-party complaint. Mot., Exh. C, Exh. 1 (the "Second Amended Third-Party Complaint"). The Second Amended Third-Party Complaint continues to assert claims against both TRG and LCP for amounts that F&D paid under its settlement with the Village.[12]

Shortly after the filing of the Request for Leave to Amend by F&D, on March 27, 2017, LCP filed the Motion presently before the court. The Motion prays that the court find that the claims that the terms of the Plan bar the claims F&D is pursuing in the Sugar Grove Lawsuit and award damages to LCP for F&D's continued violation of the Release and Plan Injunction.

DISCUSSION

F&D's pursuit of the claims discussed herein has engaged both this and other courts and has resulted in multiple rulings, including the TRG Decision, from this court and the rulings from the state courts and the District Court. The majority of the issues raised in this matter have, therefore, already been addressed in one way or another. Much of what was said by this court in the TRG Decision has not changed.

There is one factual difference between TRG and LCP, though, one that F&D alleges changes the outcome. That is the nature and extent of LCP's rights in the Settler's Ridge development.

That difference will be examined in light of the burden that, by a preponderance of the evidence, falls on LCP as the movant. TRG Decision, 565 B.R. at 891. It will be further examined in light of Illinois contract law. Bankruptcy plans are, after all, contracts and state principles of contract interpretation apply. *Id.* at 888 (*citing In re Harvey*, 213 F.3d 318, 320 (7th Cir. 2000) ("[B]ankruptcy plans are to be treated as contracts and interpreted under state law . . ..")). The Plan makes it clear that that the applicable state law is Illinois state law. Plan, at XV.J. A more fulsome discussion of the burdens and applicable law upon which this Memorandum Decision relies exists in the TRG Decision. *See* TRG Decision, 565 B.R. at 891.

LCP argues that F&D's claims against it in the Sugar Grove Lawsuit are subject to the Release and the Plan Injunction and that that fact ends the inquiry. F&D replies that the court should not look at the claims asserted in the Sugar Grove Lawsuit, but instead look at the nature of

---

[12]    The same counsel for F&D who signed the Village Stipulation submitted the Request for Leave to Amend. Again, F&D made this submission despite its representation to this court that it would await a ruling from this court before taking any further steps. While this court did not formally stay the state court suits as they included unrelated claims and the Plan Injunction needed no further order to be effective as to those claims that were stayed, any deliberate action in violation of the Plan Injunction and the representations to the court will be considered when damages are considered in this and the TRG matter, as applicable.

the parties. Neither party is entirely correct. Claims and parties in this matter cannot be considered in isolation.

As was the case with TRG, LCP must first show that the claims upon which F&D proceeds in the Sugar Grove Lawsuit were subject to the Release or Plan Injunction. Further, LCP must show that F&D had knowledge of the Plan Injunction and intended the actions which violated the Plan Injunction. TRG Decision, 565 B.R. at 895-96. Finally, LCP must show that it is a party that has the right to invoke the protections of the Release or Plan Injunction.

For the purposes of this analysis, the court will take up the second question first, turning to the reach of the Release and Plan Injunction only after having done so. Only if the court finds that LCP has carried its burden with respect to all questions will the court consider what remedies, if any, are appropriate.

A.    F&D's Knowledge of the Terms of the Release and the Plan Injunction

In the TRG Decision, the court considered F&D's knowledge of the terms of the Release and the Plan Injunction. It stated then that

> F&D cannot contest that the latter part of this inquiry is satisfied. Certainly, it had knowledge of both the Release and the Plan Injunction. It voted in favor of the Plan that contained them, and later acknowledged their effect in the Municipal Stipulations.

TRG Decision, 565 B.R. at 896. The same is true here. As a result, the court concludes that F&D had the requisite knowledge of the terms of the Release and Plan Injunction. *See In re Weinhold*, 393 B.R. 623, 628-29 (Bankr. E.D. Wis. 2008).

B.    LCP's Right to Invoke the Protections of the Release and Plan Injunction

This brings the analysis to the point of difference mentioned above, and it is a big difference. In the TRG Decision, it was clear that TRG was a successor to the Debtor. The Plan itself provided that:

> The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, *successor or assign*, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

Plan, at XV.F (emphasis added). The court therefore concluded that, because TRG purchased estate assets from a Debtor, TRG was the successor owner to property of the estate and entitled, pursuant to the express terms of the Plan, to claim the protections afforded Released Parties thereunder. TRG Decision, 565 B.R. at 896.

That conclusion is not nearly as clear here. In order to determine if the claims against LCP in the Sugar Grove Lawsuit were affected by the Release or the Plan Injunction, the court must ask

if LCP was a party protected by the Release or the Plan Injunction.[13] To do so, the court must therefore examine LCP's rights and how and from whom they were acquired.

LCP acquired the Settler's Ridge real property via a quitclaim deed from KHS, a non-Debtor entity. F&D argues that because of this difference from TRG, LCP is at best a successor in title only. The court agrees with this basic assumption, but the matter is not so cut-and-dried.

The transfer of the real property from KHS to LCP was done under the DIL Agreement, but there are also other elements to the transaction. The DIL Agreement addresses the transfer of multiple interests to LCP and provides a list of steps to effectuate the transfers. DIL Agreement, at ¶ 1. Focusing on one element while ignoring the rest is problematic.

1.    *Personal Property from KHH and KHI*

While the real property under the DIL Agreement was transferred from a non-Debtor, the personal property and rights of Debtors KHH and KHI were also transferred to LCP thereunder. Specifically, KHH assigned contract rights to LCP related to the development of Settler's Ridge [Reply, Exh. D] (the "KHH Assignment"), allowing LCP to continue development of the real property. The KHH Assignment provides that it is in connection with the DIL Agreement and is "for good and valuable consideration." *Id.* KHI also sold its intellectual property relating to Settler's Ridge to LCP "for good and valuable consideration" and in connection with the DIL Agreement. Reply, Exh. F (the "KHI Bill of Sale").

The KHH Assignment and the KHI Bill of Sale were transfers of interests of the Debtors. As the successor to and/or assign of those interests, LCP is entitled to enforce the Release. *See* Plan, at XV.F; TRG Decision, 565 B.R. at 887, 896. F&D's argument to the contrary is unavailing.[14]

F&D also argues that LCP should not be protected by the Release and Plan Injunction because LCP did not provide value to the Debtors. This argument is not supported by the facts. As previously mentioned, the Plan Administrator negotiated the DIL Agreement in exchange for the release of KHH and KHI's liability to Wachovia and subsequently to LCP. A release of debt

---

[13]    Recall that the Release applies to parties voting in favor of the Plan, thereby releasing their claims and interests, known and unknown, in law and in equity, from being asserted against the Debtor or any Released Party. Plan, at VIII.E; Confirmation Order, at ¶ 19(b). The Plan Injunction works together with the Release to enjoin any entity whose claim was released from prosecuting any released claim. Plan, at VIII.F; Confirmation Order, at ¶ 19(d). Because F&D voted in favor of the Plan, any claim that F&D could have asserted against the Debtors, known or unknown, in equity or in law, was released and enjoined by the Plan and Confirmation Order.

[14]    F&D urges the court to reject the broad reading of "successor" as provided in the TRG Decision, and instead hold that successors in title but not successors to the entity or its business as a whole be deemed not protected by this provision and thus the Release and Plan Injunction. Not only is this restrictive reading of "successor" inconsistent with the inclusion of assigns in the Plan provision, but it runs contrary to the use of these provisions in bankruptcy plans generally. *See* TRG Decision, 565 B.R. at 900-01 ("Reading the Release and Plan Injunction in the manner urged by F&D would render the protections to successors and assigns meaningless."); *see also In re Ingersoll, Inc.*, 562 F.3d 856, 864 (7th Cir. 2009) (allowing broad releases in liquidating chapter 11 plans as against successors and assigns).

provides value to a bankruptcy estate and ultimately to F&D.[15]  *See 4100 W. Grand LLC v. TY Grand LLC (In re 4100 W. Grand LLC)*, 481 B.R. 444, 456 (Bankr. N.D. Ill. 2012) (Cox, J.) (demonstrating how release of liability is valued).

Therefore, any claims that F&D asserts against LCP that stem from the personal property transferred to LCP are claims asserted against a successor or assign of the Debtors and are subject to the Release and Plan Injunction.

2.    *Real Property from KHS*

The DIL Agreement also provides for the transfer of the real property owned by KHS to LCP.  Just as F&D would be hard-pressed to argue that an interest of KHH or KHI transferred to LCP would not be subject to the Release and Plan Injunction, LCP would be hard-pressed to argue that an interest of a non-Debtor, in this instance KHS, transferred to LCP was subject to the Release and Plan Injunction.  Nonetheless, LCP attempts to do so, belatedly asserting at the June 13, 2018 hearing on the Motion that the transfers under the DIL Agreement constituted a single transaction and thus that the real property transferred thereunder should be afforded the same protection as the personal property transferred from the Debtors.

This simply cannot be the case.[16]  The plain language of the Release and Plan Injunction clearly only extends to claims against the Debtors and their Affiliates, not against KHI as a whole.  In no way did the Plan or the Confirmation Order extend these protections to non-Debtors unless such parties were Affiliates.  Extending releases and injunctions to non-debtors, without more, is contrary to generally-accepted bankruptcy practice.  *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, Case No. 13 C 03306, 2015 WL 11255491, at *12 (N.D. Ill. Aug. 21, 2015) ("The Seventh Circuit has 'preached caution' in approving non-debtor releases, finding that '[i]n most instances, [non-debtor] releases … will not pass muster under [the *Airadigm*] rule.") (*quoting Ingersoll*, 562 F.3d at 864-65 (7th Cir. 2009).

---

[15]    If the DIL Agreement had not been negotiated, Wachovia, and subsequently LCP, would have had a claim under the $40 million loan against KHI as the guarantor.  The release of this liability lowered the amount asserted in claims against the KHI Trusts, thus providing value by permitting the KHI Trusts to distribute more money on account of the remaining claims.  F&D, which has an allowed claim against the Debtors in accordance with the F&D Claim Order, therefore also received increased value on account of the DIL Agreement.

[16]    To accept LCP's theory in this regard, the court would have to accept that a guarantor of secured debt whose obligation was unaffected by a bankruptcy which discharges the underlying debt, *see, e.g., In re Digital Impact, Inc.*, 223 B.R. 1, 10 (Bankr. N.D. Okla. 1998) ("Section 524(e) was intended to insure that co-debtors or guarantors (who are not debtors in the bankruptcy case), and their property, are not automatically released from the debt or guaranty upon the discharge of a debtor, and that the rights of creditors are not impaired by the debtor's discharge.  For example, in the case of a guaranty, the guarantor is not released upon the discharge of the debtor who is primarily liable on the debt; Section 524(e) preserves a creditor's right to pursue a guarantor notwithstanding the discharge of the debtor, which might be deemed a modification of the underlying debt without the creditor's consent, and which might otherwise release the guarantor under state law."), would be released from that guarantee liability by acquiring the underlying collateral from the bankruptcy estate where a release had been ordered.  The obligations stand independent from one another and do not merge.

In this case, the language of the Release and Plan Injunction protects the Debtors and their Affiliates. The definition of Affiliate is provided in footnote 3, *supra*, and clearly is limited to those non-Debtors who own an interest in any of the Debtors. Plan, at I.A(7). KHS was not a Debtor and LCP has made no effort show that it was an Affiliate of one of the Debtors. KHS, and by extension its property, is not covered by the Release and the Plan Injunction. Under the Elgin Decision, KHS and thus LCP could therefore be responsible for the restrictions contained in the Annexation Agreement that ran with the land. *City of Elgin*, 53 N.E.3d at 36.

The rights and liabilities transferred to LCP from KHS, a non-Debtor, via a quit claim deed, a separate agreement from the DIL Agreement, were not affected by this bankruptcy case. As a result, LCP, as either a successor or assign of KHS, cannot claim the protection of the Release or Plan Injunction related to the property acquired from KHS.

As such, though LCP need not adhere to the Annexation Agreement as an acquirer from KHH, LCP might be required to adhere to the Annexation Agreement as a covenant that runs with the land as an acquirer from KHS.

C.    F&D's Claims

The fact that LCP can claim the protection of the Release and Plan Injunction on the one hand but cannot on the other creates a problem in considering the validity of the Sugar Grove Lawsuit. To resolve this problem, the court must determine whether the claims in the Sugar Grove Lawsuit stem from the contracts, the personal property, or the real property interest that LCP acquired.

1.    *F&D's Original Claims in the Sugar Grove Lawsuit*

In the TRG Decision, the court determined that F&D had asserted the totality of its claims against the Debtors in the bankruptcy case and had voted those claims in favor of the Plan. The Plan, in turn, released the claims and enjoined F&D from pursuing them against specific parties. TRG Decision, 565 B.R. at 895-900.

Specifically, the court found that F&D had submitted ten proofs of claims, claims which "not only expressly asserted claims under the Indemnity Agreements, but also asserted claims under 'principals of common law' and 'Suretyship.'" *Id.* at 884 (capitalization in original) (the so-called, "F&D Claims"). The F&D Claims, as a matter of law, included F&D's future claims relating to the bonds and indemnities. *Id.* at 898 ("Those future claims are claims within the meaning of section 101(5) and thus are also within the meaning of Claims under the Plan."). The F&D Claims also included claims relating to the rights that the state appellate courts had focused on in reversing several of the dismissals. *Id.* at 900. Further, the court found that that F&D's claims in the state lawsuits fell within the definition of "Claims" in the Plan, Plan, at I.A(24), and the broad definition of "claim" prescribed by the Bankruptcy Code and applicable precedent, 11 U.S.C. § 101(5); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). TRG Decision, 565 B.R. at 896-97.

As a result, the court found that F&D's claims against TRG in the state lawsuits had been released under the terms of the Release and enjoined under the Plan Injunction. *Id.* at 898-901. That determination, by definition, included F&D's claims against TRG in the Sugar Grove Lawsuit. To the extent that the claims therein against LCP are of the very same nature as those discussed in

TRG, the state court claims by F&D in the Sugar Grove Lawsuit against LCP fall within the Release and the Plan Injunction as well.[17]

Such claims are, in large part, the same. Each of Counts I (as against LCP) and IV (as against TRG) seeks relief under the theory of indemnity. Third-Party Compl., at pp. 39-42, 45-47, respectively. Counts I and IV allege that LCP and TRG are in breach of an alleged duty to indemnify F&D for its payment to the Village under the Annexation Agreements and the Performance Bonds. These counts are, therefore, that same.

Each of Counts II (as against LCP) and V (as against TRG) seeks relief under the theory of exoneration. *Id.* at pp. 43, 48, respectively. The Counts allege that LCP and TRG have become the "*de facto* principal" on the Performance Bonds and, therefore, they each owe F&D the same duties as the bond principal, KHH, a Debtor.

Counts III (as against LCP) and VI (as against TRG) seek relief under the theory of *quia timet*.[18] *Id.* at pp. 44, 49, respectively. F&D's legal and factual arguments against LCP and TRG under this theory mirror those made for exoneration. Therefore, F&D seeks the same relief against both LCP and TRG under those counts as well.

Because F&D's rights as against LCP under Count I are the very same rights as existed against KHH, a Debtor, under the Indemnity Agreement, and because claims under the Indemnity Agreement, as a contract with a Debtor, were subject to the Release and Plan Injunction, the court's holding in the TRG Decision holds equally true as against LCP as it did against TRG.[19] None of F&D's original claims in the Sugar Grove Lawsuit asserted the theories espoused in the Elgin Decision. Because the claims as asserted in the Sugar Grove Lawsuit were released and enjoined, the Third-Party Complaint as brought against LCP in the Sugar Grove Lawsuit violated the Release and Plan Injunction.[20] Further, LCP, as a Released Party insofar as the personal property rights

---

[17]     F&D relies heavily on the state court's Elgin Decision to argue that its claims against LCP are not claims under the Indemnity Agreement, but rather are claims that arise first out of the Annexation Agreement and then out of the real property itself. This is consistent with the Elgin Decision, which found that the duty of KHH as developer to complete the public improvements, as set forth in the Annexation Agreement, was a covenant that ran with the land that was not "discharged" by this bankruptcy case. *City of Elgin*, 53 N.E.3d at 40. The state appellate court found that Illinois law provided that annexation agreements "shall be binding upon the successor owners of record of the land which is the subject of the agreement." *Id.* (*citing* 65 ILCS 5/11–15.1–4 (West 2012)). The *Elgin* court, however, found that the ultimate issue of TRG's liability, as current owner of record, was not before it and therefore made "no final determination of that liability." *Id.* F&D's argument is, however, inconsistent with Third-Party Complaint itself, wherein F&D expressly asserts its claims under theories of indemnity. Third-Party Compl., at pp. 39,45.

[18]     While still asserted in the Sugar Grove Lawsuit, the state appellate courts in two of the other F&D and TRG lawsuits found that the claims based on exoneration and *quia timet* were moot due to F&D's settlement with the respective municipalities. *City of Elgin*, 53 N.E.3d at 42; *Vill. of Montgomery*, 2016 IL App (2d) 150571-U, ¶ 27.

[19]     As noted above, the other two counts in the Third-Party Complaint were conceded to be moot and thus only Count I remains for consideration here.

[20]     As noted above, F&D also agreed in the Village Stipulation that the Indemnity Agreement was rejected by the Debtors and that any claims from the Indemnity Agreement were subjected to the Plan Injunction. Village Stip., at ¶¶ 1, 3, J.

acquired from KHH, is entitled to invoke those protections. The Third-Party Complaint as brought in the Sugar Grove Lawsuit is, therefore, in direct violation of the terms of the Plan and F&D is in contempt of the Confirmation Order.

      2.     *The Request for Leave to Amend*

      Having determined that F&D filed the Sugar Grove Lawsuit in violation of the Release and the Plan Injunction, the court concludes that by the same token, the filing of the Request for Leave to Amend also violated the Plan Injunction. As an attempt to continue a lawsuit brought in direct violation of the Plan Injunction and during the ongoing litigation in this court where F&D represented that it would not do so, the Request for Leave to Amend violates the Plan Injunction and is sanctionable. *See In re Hall-Walker*, 445 B.R. 873, 876 (Bankr. N.D. Ill. 2011) (Cox, J.) ("'[A] party violating [an injunction], through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding, or risk possible sanctions for willful violations ....'") (*quoting Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002)).

      A party may not pursue litigation remedies in violation of a stay or injunction and then seek to amend that suit until it finds a path that does not so offend. The Ninth Circuit has addressed such actions fully in *In re Capriati Constr. Corp., Inc.*, Case No. BAP NV-17-1200-BHTA, 2018 WL 1404439 (B.A.P. 9th Cir. Mar. 20, 2018). In *Capriati Construction*, the Ninth Circuit found that a state court action filed in violation of a stay was void and that the party filing the action could not "rely on those claims for relief either as initially pled or as amended." *Id.*, at \*7-8; *see also Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001).

      Just as the Ninth Circuit also declined to opine on possible new claims, the court here has not been asked nor will it speculate as to whether the proposed new counts, if brought in a vacuum, would also violate the Release and the Plan Injunction.[21] They are not brought in a vacuum, but rather the Third-Party Complaint was lodged in violation of the Plan and Confirmation Order. The Third-Party Complaint is void and must be dismissed.

D.    <u>Damages</u>

      LCP has demonstrated that the Third-Party Complaint in the Sugar Grove Lawsuit violated the Release and Plan Injunction and thus the Plan and the Confirmation Order.

      As with TRG, TRG Decision, 565 B.R. at 902, the court will by order concurrent with this Memorandum Decision compel F&D to dismiss its claims against LCP in the Sugar Grove Lawsuit. Failure to abide by such order will be punishable by civil contempt. *See* Fed. R. Bank. P. 9020.

      What remains, therefore, is damages. As the court stated with respect to TRG,

      The Seventh Circuit has made clear that a bankruptcy court may sanction a party for violating the injunction under section 524(a)(2). *In re Taylor*, 793 F.3d 814, 819-20 (7th Cir. 2015) ("The bankruptcy court is permitted to 'sanction a party for violating the discharge injunction' ...") (citation omitted); *Zale Delaware*, 239 F.3d at 916-17. It

---

[21]     Nor will it speculate here as to the propriety of such claims against TRG, who has not joined in the briefing in this matter with respect to the pending Request for Leave to Amend.

follows that the bankruptcy court has the same power to sanction a party for a violation of the injunction issued under the authority in section 524(g). *See, e.g.,* *Grossman v. The Belridge Grp. (In re Lothian Oil, Inc.* ), 531 Fed.Appx. 428, 445 (5th Cir. 2013). That too, is punishable by civil contempt. Fed. R. Bank. P. 9020; *Zale Delaware*, 239 F.3d at 916.

TRG Decision, 565 B.R. at 902 (*citing to Cox v. Zale Del., Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001)). As a result, the court will set a further hearing to determine how to proceed with respect to damages.

CONCLUSION

Having considered the arguments of the parties, it is the conclusion of the court that claims asserted by F&D in the Third-Party Complaint against LCP violate the terms of the Release and the Plan Injunction. By pursuing these claims, F&D has subjected itself to further order of this court and civil contempt damages.

By separate order entered current herewith, the court therefore orders F&D to dismiss its claims against LCP in the Sugar Grove Lawsuit and sets a further status hearing on the question of the amount of civil contempt damages, if any, owed to LCP.

Dated: October 2, 2018                                    ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge