UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 08bk10095 |
| In re Kimball Hill, Inc., *et al.*, | Chapter 11 |
| Debtors. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court comes on for consideration following the vacating, in part, and remand of this court's determination of the Purchaser's Motion for Entry of an Order (I) Enforcing Confirmation Order; (II) Directing Dismissal of State Court Claims; (III) Awarding Damages and (IV) Granting Related Relief [Dkt. No. 3969] (the "Motion") filed by TRG Venture Two, LLC ("TRG") by the District Court for the Northern District of Illinois (the "District Court"). The District Court has asked this court on remand to determine whether this court's prior determination of contempt and damages stands in light of the standards espoused in the subsequently issued opinion of the United States Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) ("*Taggart*").

In the Motion, TRG alleges that the court should find Fidelity and Deposit Company of Maryland ("F&D") in contempt for violation of the court's confirmation order in this case. Findings of Fact, Conclusions of Law, and Order Confirming Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code [Dkt. No. 1118] (the "Confirmation Order").

The court has issued two opinions in this case concerning the Motion. The first found that F&D violated the injunction in the Confirmation Order when it filed state court lawsuits against TRG, seeking to have the state courts hold that TRG was liable to F&D for costs it incurred as an indemnity of the Kimball Hill Debtors [Dkt. No. 4051]. *In re Kimball Hill, Inc.*, 565 B.R. 878 (Bankr. N.D. Ill. 2017) ("Kimball I"). The second, entered after a trial, found that F&D's violations of the Confirmation Order were grounds for an award of contempt damages in favor of TRG [Dkt. No. 4292]. *In re Kimball Hill, Inc.*, 595 B.R. 84 (Bankr. N.D. Ill. 2019) ("Kimball II"). F&D appealed both Kimball I and Kimball II.

In the Memorandum Opinion and Order [Dkt. No. 4350], *Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC*, Case No. 19 C 389, 2019 WL 5208853 (N.D. Ill. Oct. 16, 2019) (the "Appellate Opinion"), remanding the matter, Judge Gúzman of the District Court held that this court was correct in Kimball I in determining that the bankruptcy court had subject-matter jurisdiction to determine the Motion and that it was correct for this court not to abstain from such determination. Appellate Opinion, 2019 WL 5208853, at *2–3. The District Court further held that, "[b]ased on the Bankruptcy Court's informed and considered rulings as stated above, the [District] Court cannot find that [the bankruptcy court] abused its discretion in interpreting the Plan to

include TRG as a successor under the Plan" and in interpreting that F&D's claims were released under the Plan. *Id.* at *4–5.

The District Court, however, remanded the matter to the bankruptcy court, asking this court to determine whether contempt was appropriate under the standards set forth in *Taggart*, which was determined by the Supreme Court after Kimball II was entered. Specifically, the Appellate Opinion provides, "[i]t is not clear whether the standard articulated in *Taggart* would alter the Bankruptcy Court's decision that F&D acted in contempt of its order. Thus, because the Bankruptcy Court did not expressly consider whether there was a 'fair ground of doubt' as to whether F&D's conduct might be lawful, its order granting [the Motion] is vacated and remanded for a determination of contempt under the standard articulated in *Taggart*." Appellate Opinion, 2019 WL 5208853, at *6.[1]

On remand, the bankruptcy court entered a scheduling order for TRG and F&D to brief two, distinct issues under the Appellate Opinion:

> a. Given the evidence in this case, including that upheld in the Appellate [Opinion], is the standard set forth in *Taggart* satisfied (and if so, how); and
> b. If the evidence in this case does not satisfy such standard, can or should the bankruptcy court reopen evidence in order for the parties to address such standard (and if so, how).

Scheduling Order [Dkt. No. 4358] (the "Scheduling Order").

Both parties have complied with the court's Scheduling Order and argued their positions on the Motion in light of the Appellate Opinion in a hearing held on April 20, 2020 (the "Hearing").

For the reasons set forth below, the court finds that the evidence in this case is sufficient to allow the court to determine whether F&D's violation of the Confirmation Order satisfies the standards for contempt set forth by the Supreme Court in *Taggart*. The court, therefore, finds no cause to reopen evidence in this case in order to determine the Motion under the *Taggart* standard. Further, the court finds that F&D's violation of the injunction set forth in the Joint Plan of Reorganization of Kimball Hill, Inc. and Its Debtor Subsidiaries Pursuant to Chapter 11 of the

---

[1] The standard articulated by the Supreme Court in *Taggart* was not applicable to the Motion and this court's determination thereof when Kimball I and II were decided. In deciding the standard applicable to a violation of a discharge order entered by the bankruptcy court, the "Supreme Court rejected both the strict liability standard applied by the bankruptcy court and the subjective standard applied by the Ninth Circuit. Under the strict liability standard, sanctions are appropriate if a creditor is both aware of the discharge order and intended the actions taken in violation of the discharge whereas a creditor's good faith belief that the discharge order does not apply precludes a finding of contempt under the subjective standard." *Matter of Jenkins*, 608 B.R. 565, 572 (Bankr. N.D. Ala. 2019) (*citing Taggart*, 139 S. Ct. at 1799). Instead, the Supreme Court relied on nonbankruptcy case law to hold "that civil contempt 'should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*, 139 S. Ct. at 1801–02 (2019) (*citing California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). In the Seventh Circuit, the applicable standard at the time was the strict liability standard, Kimball I, 565 B.R. at 891,95–96 (collecting cases from the Seventh Circuit), which standard was applied at the time the court determined whether F&D's actions were contemptuous in Kimball I. Further, as discussed below, *Taggart* related to the violation of the statutory discharge injunction, which is purely a question of federal law. The matter at bar mixes both the court's inherent contempt authority and the state law-governed contractual provisions barring the conduct in question.

2

Bankruptcy Code [Dkt. No. 814, as amended] (the "Plan") and memorialized in the Confirmation Order satisfies that standard. As a result, the damages set forth in Kimball II remain the proper determination of the damages stemming from F&D's contempt. This resolves fully the issue on remand and concludes the matter before the court.

For the sake of brevity, the court incorporates all findings of Kimball I and II and the Appellate Opinion in this court's decision of the Motion on remand.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

In this court's initial determinations of the Motion, F&D argued that the bankruptcy court does not have jurisdiction or should have abstained from adjudicating the Motion. The court rejected those arguments, finding instead in both Kimball I and II that it possesses the jurisdiction and statutory and constitutional authority to determine the Motion, Kimball I, 565 B.R. at 882, 888-91; Kimball II, 595 B.R. at 89–90, and that abstention was not appropriate. Kimball I, 565 B.R. at 891–92. The District Court affirmed the bankruptcy court's findings regarding its authority and abstention. Appellate Opinion, 2019 WL 5208853, at *2–3. That determination is the law of this case.

While F&D originally made no mention of the court's authority to determine the Motion on remand, new counsel[2] for F&D has mentioned in recent hearings, most notably the hearing on the motion of the liquidating trust administrator under the confirmed Plan (the "Plan Administrator") for a final decree in this case, that the court may not have jurisdiction to consider the Motion. To the extent that F&D's attempts to assert again that this court may not determine the Motion based on jurisdiction, statutory or constitutional authority or abstention theories, such an argument is not appropriate on remand. *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) ("[A]ny issue conclusively decided by this court on the first appeal is not remanded.") (*citing United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001)).

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion, both generally and in light of procedural posture of this matter.

BACKGROUND

This history of the dispute between TRG and F&D has been set forth by the court in both of its prior decisions addressing the Motion. Kimball I, 565 B.R. at 883–88; Kimball II, 595 B.R. at 90–91. The court hereby incorporates the same in this Memorandum Decision.

In short, the dispute over F&D's claims in this case began in April 2013 and has involved multiple claim objections by the Plan Administrator and an appeal by F&D of the court's determinations on F&D's claims. Kimball I, 565 B.R. at 886–87. While F&D disputed issues in this case, it at the same time interplead TRG, a purchaser of the assets of Kimball Hill, Inc. and related debtors (the "Debtors"), on liability suits brought against F&D in the state courts (the "State Court Lawsuits").[3] *Id.* at 887. F&D's attempts to pursue TRG were unsuccessful and TRG obtained dismissal from the State Court Lawsuits. *Id.* F&D, however, obtained reversal in part after appealing the dismissals in two cases—the Elgin and Montgomery Lawsuits. *Id.*

As a result, TRG filed the Motion asking this court to enforce the Confirmation Order and the injunction therein.

---

[2]  During the District Court's determination of F&D's appeal of Kimball I and II and this court's determination of damages following a finding of contempt against F&D based on their pursuit of a second party under similar facts, *see In re Kimball Hill, Inc.*, 591 B.R. 313 (Bankr. N.D. Ill. 2018) (Barnes, J.) ("Kimball III"), F&D changed counsel in the matter. *See* Order Authorizing Substitution of Counsel for Fidelity and Deposit Company of Maryland [Dkt. No. 4328]. New counsel for F&D settled the dispute with the second party before damages were determined by this court, *see* Order Concluding Remainder of LCP SLJV 2008-1 IL-1, LLC's Motion for Entry of an Order (I) Enforcing Confirmation Order; (II) Awarding Damages; and (III) Granting Related Relief [Dkt. No. 4348] (the "LCP Settlement Order"), but continues to pursue determination of the Motion against TRG.

[3]  These cases are: (a) City of Elgin v. Fidelity & Dep. Co. of Maryland, pending in the Circuit Court of Kane County, Illinois, Case No. 12 MR 53 (the "Elgin Lawsuit"); (b) Village of Montgomery v. Fidelity & Dep. Co. of Maryland, pending in the Circuit Court of Kane County, Illinois, Case No. 10 MR 598 (the "Montgomery Lawsuit"); (c) Village of Sugar Grove v. Fidelity & Dep. Co. of Maryland, pending in the Circuit Court of Kane County, Illinois, Case No. 10 MR 597; (d) United City of Yorkville v. Fidelity & Dep. Co. of Maryland, pending in the Circuit Court of Kendall County, Illinois, Case No. 2014 MR 90; and (e) Village of Shorewood v. Fidelity & Dep. Co. of Maryland, pending in the Circuit Court of Will County, Illinois, Case No. 2014 L 471.

In taking up the Motion, the court first determined in Kimball I that F&D had acted in contempt of the Confirmation Order. In Kimball II, after F&D's request to alter Kimball I was denied and the court had held a trial on August 27, 28 and 29, 2018, and September 18, 2018 (the "Trial") on the propriety and quantification of TRG's damages stemming from F&D's contempt, the court determined the measure of damages stemming from such contempt, thereby fully adjudicating all remaining issues raised in the Motion.

F&D thereafter appealed Kimball I and II and, following briefing and oral argument in the District Court, the Appellate Opinion was decided. As noted above, the Appellate Decision remands the matter to this court on the limited question of whether F&D's contempt rises to the level of the standard articulated in *Taggart*.

PROCEDURAL HISTORY

In this determination, the court has considered its prior rulings in this matter, including Kimball I and II, the Appellate Opinion and the arguments of the parties at the Hearing, and has reviewed and considered the following filed documents relating to the limited remand of the Motion:

(1)  The Scheduling Order;

(2)  TRG's Brief Following Limited Remand [Dkt. No. 4461] (the "TRG Brief"); and

(3)  Fidelity and Deposit Company of Maryland's Amended Brief in Opposition to Motion for Order of Contempt [Dkt. No. 4369] (the "F&D Brief").

The court has also taken into consideration any and all exhibits submitted in conjunction with the Motion and the foregoing filings, and has again considered the evidence put forth by the parties at the Trial, which evidence was undisturbed on appeal. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

DISCUSSION

As noted above, the District Court affirmed this court's determination in Kimball I and II, (i) of its jurisdiction and authority to decide the Motion, (ii) that TRG was a successor under the Plan, and (iii) that the Plan and injunction therein, as memorialized by the Confirmation Order, applied to F&D's claims. Appellate Opinion, 2019 WL 5208853, at *3–5.

During the briefing of the appeal, however, the Supreme Court decided *Taggart*, which set a new standard applicable to a finding of contempt arising from a violation of a statutory discharge injunction in a bankruptcy case. The District Court correctly noted that in determining whether F&D's violation of the Plan rose to the requisite standard, this court applied a different standard in Kimball I than the Supreme Court did twenty-seven months later in *Taggart*. The District Court thus

5

remanded the issue of whether F&D's actions satisfy the standard for contempt set forth in *Taggart* to this court for consideration. *Id.* at *6.

In order to determine the issues on remand, the court must first examine what the *Taggart* standard is before applying that standard to the evidence submitted in this case in order to determine whether contempt exists. First, however, the court notes that the application of *Taggart* to this matter, while required by the Appellate Opinion, is not a foregone conclusion generally.

A.  Applicability of *Taggart* to the Motion

Given the clear language of the Appellate Opinion, this court is obligated to examine how, not if, the standard articulated in *Taggart* applies to the facts of this case. The matter at bar is not, however, one directly parallel to that of *Taggart*.

In *Taggart*, the Supreme Court examined the statutory discharge injunction under section 524 of the Bankruptcy Code, which provides in pertinent part that the bankruptcy court's order of discharge "operates as an injunction against" postbankruptcy collection of discharged debts. 11 U.S.C. §§ 524(a)(2), (3); *Taggart*, 139 S. Ct. at 1799. Because that statute treats the discharge with the force of an injunction, the Supreme Court concluded that enforcement of a discharge should follow traditional rules for enforcing injunctions. *Taggart*, 139 S. Ct. at 1801–02 (Sections 105 and 524 of the Bankruptcy Code "authorize[ ] a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful *under the discharge order*. … Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a *discharge order* based on an objectively unreasonable understanding of the *discharge order* or the statutes that govern its scope.") (emphasis added).

The Motion does not seek enforcement of the discharge injunction in section 524, however. Instead, the injunction in question exists in the Plan, as given force by way of the Confirmation Order. Plan, at VIII.F; Confirmation Order, at ¶ 19(d) (together, the "Plan Injunction"). While this may be a distinction without a difference, the question of whether a bankruptcy plan provision has been violated is a question of underlying state law as such a plan is a contract governed by the same. *In re Harvey*, 213 F.3d 318, 320 (7th Cir. 2000) ("[B]ankruptcy plans are to be treated as contracts and interpreted under state law ….").

As such, the question of whether the Plan Injunction has been violated should be answered under, in this case, applicable Illinois contract law. That is, in fact, how this court answered the question at bar. Kimball I, 565 B.R. at 897–99. A section 524 discharge injunction applies to all creditors, regardless of their assent. With respect to the Plan here, however, F&D expressly voted for the Plan and thus acceded to the terms of the Plan Injunction. Any consideration of the reasonableness of F&D's actions must take into account its knowing acceptance but later violation of the terms of the Plan.

Of course, once a violation has been determined, the question remains of what remedy to apply. While a violation could, presumably be remedied as a matter of contract damages, the point of such an injunctive provision would be largely lost in so doing. At the same time, however, applying the higher standard set forth in *Taggart* might in large part also render meaningless the state law contractual nature of such plan injunctions.

6

This, perhaps, is why some courts have declined to apply *Taggart* outside of the express context within which it arose. *See, e.g., In re Rice*, 613 B.R. 690, 695 (Bankr. N.D. Ill. 2020) (Schmetterer, J.) (declining to apply *Taggart* on a motion for sanctions stemming from a violation of the automatic stay because the language of section 362(k) requires a finding of willfulness, which the Supreme Court declined to apply in *Taggart*); *In re Spiech Farms, LLC*, 603 B.R. 395, 408 (Bankr. W.D. Mich. 2019) (finding that *Taggart* does not apply to violations of the injunction created by the automatic stay); *In re Freeland*, Case No. BR 19-32309-PCM7, 2020 WL 4726580, at *2 n.3 (Bankr. D. Or. Aug. 12, 2020) (noting the lack of clarity regarding the applicability of *Taggart* to violations of the automatic stay based on the nature of the debtor).

Further, the Appellate Opinion states that this court "stated that creditors 'may be held in contempt if they willfully violated the injunction,' and that such 'burden is met by establishing that [the creditors] (1) had knowledge of the post-discharge injunction; and (2) intended the actions which violated the injunction.'" Appellate Opinion, 2019 WL 5208853, at *6. While this is correct, this court did not apply only that standard to the Motion. *See* Kimball I, 565 B.R. at 891 (finding the standard as "helpful"). Instead, the court considered a broader standard, which considered the existence of an injunction, F&D's knowledge of the same and the content and scope of the same, F&D's knowledge that its actions violated those same terms and F&D's actions having been committed with the requisite intent. *Id.* at 896 ("TRG must demonstrate that the claim that is the subject of the State Court Lawsuits was released or enjoined, and if it was, that F&D had knowledge of the release/injunction and intended the act that violated the release/injunction.").

Regardless, this court on remand is limited to the Appellate Opinion's express directions. Appellate Opinion, 2019 WL 5208853, at *6 (The Motion is "remanded for a determination of contempt under the standard articulated in *Taggart*."). In order to satisfy that directive, the court now turns to what precisely *Taggart* held.

B.     The *Taggart* Standard

In *Taggart*, the issue before the Supreme Court was what standard applied "when a court may hold a creditor in civil contempt for attempting to collect a debt that a discharge order has immunized from collection." *Taggart*, 139 S. Ct. at 1800. In *Taggart*, a prepetition creditor of a chapter 7 debtor whose debts had been discharged revived its suit against the debtor after the bankruptcy case was closed. The debtor, in turn, sought a finding of contempt from the bankruptcy court for violation of the statutory injunction of the debtor's discharge. Following a successful appeal of the debtor, the bankruptcy court found the creditor in civil contempt for violating the discharge injunction and awarded damages. *In re Taggart*, 522 B.R. 627, 634 (Bankr. D. Or. 2014), *rev'd*, 548 B.R. 275 (B.A.P. 9th Cir. 2016), *aff'd*, 888 F.3d 438 (9th Cir. 2018), *vacated and remanded sub nom. Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

The bankruptcy court applied a standard analogous to "strict liability" where civil contempt sanctions are appropriate, regardless of the creditor's beliefs, where the creditor was "aware of the discharge" injunction and intended the actions that violated the discharge. *Id.* at 1799. The Court of Appeals for the Ninth Circuit, however, disagreed. Applying instead a subjective standard, the Ninth Circuit concluded that a court cannot hold a creditor in civil contempt if the creditor has a "good faith belief" that the discharge order "does not apply to the creditor's claim." *Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438, 444 (9th Cir. 2018). That is so, the Court of Appeals held, "even if the creditor's belief is unreasonable." *Id.*

7

On *certiorari*, the Supreme Court considered the effect and application of two Bankruptcy Code provisions, sections 524 and 105. Under section 524, "a discharge order 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset' a discharged debt." *Id.* at 1801. Section 105, in turn, "authorizes the court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *Id.*

In considering each, the Supreme Court stated that its conclusions rest on this "longstanding interpretive principle: When a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" *Id.* As the language in section 524(a)(2) brings with it "old soil" that has governed how courts enforce injunctions, neither section 105(a) nor the Bankruptcy Code would give courts "unlimited authority to hold creditors in civil contempt." *Id.* The Supreme Court asserted that the Ninth Circuit's standard of a "creditor's good faith belief" in that the discharge order "does not apply to the creditor's claim…even if the creditor's belief is unreasonable" is inconsistent with traditional civil contempt principles. *Id.* at 1800–01. This standard, the Court explained, relies on "difficult-to-prove" states of mind and will lead creditors to collect discharged debt on "shaky legal ground." *Id.* at 1803.

On the other hand, the Supreme Court explained that a standard of "strict liability" employed by the bankruptcy court would lead risk-averse creditors to seek an advance determination in bankruptcy court even where there is only slight doubt as to whether a debt has been discharged, stating that "[b]ecause discharge orders are written in general terms and operate against a complex statutory backdrop, there will often be at least some doubt as to the scope of such orders." *Id.* The use of the "strict liability" standard would alter who decides whether a debt has been discharged and move litigation from state courts into federal courts, risking additional federal litigation, additional costs and additional delays. *Id.* This procedure may interfere with the purpose of bankruptcy law, "to secure a prompt and effectual" resolution of bankruptcy cases "within a limited period." *Id.*

As a result, the Supreme Court held that the proper standard in the case before it should be a subjective one, but different than the Ninth Circuit's, stating that "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id.* at 1804. This "fair ground of doubt" standard is now referred to as the *Taggart* standard.

C. <u>Burdens</u>

The parties differ on who carries the burden of proof with respect to *Taggart*. TRG argues that because F&D's concurrent actions against it in the state court and to increase its claim in this court qualify as "persistent violations" and "persistent contumacy," under *Taggart*, the "burden of any uncertainty in the decree [rests] on [the] shoulders" of the party who violated the court order. TRG Brief, at pp. 20-21; *see Taggart*, 139 S. Ct. at 1802 (*citing McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192–93 (1949)). F&D argues that "a party seeking a civil contempt order bears the burden of proving facts warranting such relief by clear and convincing evidence." F&D Brief, at p. 9; *see United*

8

*States Sec. and Exch. Comm'n v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010); *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989).[4]

The two lines of cases cited by the parties do not, however, conflict. If they did, *Taggart* as the higher and more recent authority would govern. Instead, though, there is nothing inconsistent with requiring TRG, as the movant, to set forth the facts that warrant relief and requiring F&D, as the respondent, to carry the burden of any uncertainty in the decree. *Bateman v. GenCap Lending I, LLC* (*In re Bateman*), Case No. 1:16-BK-00982, 2019 WL 3731532, at *5–6 (B.A.P. 9th Cir. Aug. 7, 2019) (finding that the burden shifts under *Taggart*).

As such, the court must first consider whether there are actions that satisfy the initial burden—that the alleged contemnor's actions were persistent violations of an injunction. For that the burden rests on the moving party, in this case, TRG. *Hyatt*, 621 F.3d at 692; *Stotler*, 870 F.2d at 1163; *see also* Kimball I, 565 B.R. at 891.

D.  F&D's Actions

Following the Trial, the court made many findings of facts surrounding F&D's actions. As it relates to the matter at bar, the court found in detail the facts regarding F&D's continued efforts to recover on its claims, either through the pursuit of TRG in the State Court Lawsuits or of the bankruptcy estate in the litigation of its claims in this case. Kimball II, 595 B.R. at 95–99. The court also found that the amount of effort made by F&D to pursue purchasers of assets in other bankruptcy cases, and even of the second purchaser in this case, disproportionate with its efforts against TRG. *Id.* at 95. F&D did not appeal any of the findings and the findings were undisturbed on appeal. As such, the court need not redetermine those facts here. *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) (a court will generally not revisit an issue previously decided in the same case).

In particular, F&D issued bonds in favor of municipalities to secure the completion of residential projects built by the Debtors. During the recession of 2008, the Debtors filed for bankruptcy relief in April 2008. Kimball II, 595 B.R. at 94. F&D filed claims in the Debtors' bankruptcy cases and voted its claims in favor of the Debtors' Plan, which was confirmed by this court. The Plan called for a liquidating trust to be created with the limited purpose of liquidating the Debtors' assets and distributing recovery to the Debtors' creditors. The Plan also released all claims by those that voted in favor of the Plan and both the Plan and the Confirmation Order contained an injunction prohibiting those parties whose claims had been released from pursuing the same claims. Kimball I, 565 B.R. at 884–85.

---

[4] It should be noted that in making this argument, F&D argues that this court erred in applying the preponderance of the evidence mandated by the Supreme Court in civil matters. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake.") (*citing Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–390 (1983); *Addington v. Texas*, 441 U.S. 418, 423 (1979)). It is unclear whether that issue was determined by the District Court though raised by F&D on appeal. As it is possible that *Taggart* does now require such a standard and thus this is with the scope of remand and as, in any event, TRG has met both possible standards, the court will consider both standards when considering the matter on remand.

9

After the Plan was confirmed, the Plan Administrator filed objections to some of F&D's claims based on theories of duplicity and failure to provide documents supporting the claims. After litigation on the same, the court sustained the Plan Administrator's objections, which ruling was affirmed by the District Court. Kimball II, 595 B.R. at 95; *see also In re Kimball Hill, Inc.*, Case No. 13 C 07146, 2014 WL 5615650, at *5 n.9 (N.D. Ill. Nov. 4, 2014) (where the District Court held that F&D's "efforts to preserve their various individual claims amount to an impermissible collateral attack on a settlement Plan that was confirmed over five years ago.").

In accordance with the Plan, the Plan Administrator also sold a portion of the Debtors' assets to TRG. F&D, despite having its claims released and being enjoined by the Plan Injunction, pursued TRG in the State Court Lawsuits for payment of those same claims. *Id.* at 95–97. F&D had never pursued a party that had purchased real property through a sale under section 363(f) of the Bankruptcy Code, but F&D's Litigation Committee decided "that pursuing purchasers was a 'unique' and 'one of a kind' suit." *Id.* at 97. TRG successfully obtained dismissal from the State Court Lawsuits, but F&D appealed. While those appeals were largely unsuccessful, two of the appeals resulted in reversals in the Elgin and Montgomery Lawsuits. *Id.*

Even after TRG filed the Motion with this court, F&D did not stop pursuing TRG on its claims. The success in the Elgin and Montgomery Lawsuits emboldened F&D to pursue another purchaser, LCP, with similar claims. LCP, however, filed a similar request to the Motion and the court found there that F&D violated the Plan and the Confirmation Order's injunction by pursuing the released claims. *See* Kimball III. After that finding, F&D settled the claims against it by LCP. *See* LCP Settlement Order.

As is its right, F&D has disputed every decision by this court, filing motions to amend and repeating arguments through subsequent stages that the court has already determined. F&D has repeatedly informed the court that it will appeal every decision made not in its favor, including last month at the court's determination to enter a final decree.

Despite F&D's fervor, nothing has changed regarding this court's earlier determination of F&D's violations, which determination was affirmed by the District Court. Despite voting for the Plan, F&D has repeatedly and knowingly violated the terms of the Plan Injunction and the Confirmation Order. It has pursued claims that it knew were released on theories where it knew the law was settled against it. While F&D, over the course of its litigation with TRG, has developed theories why it should be allowed to do what it has done, these theories are both new and unavailing. F&D knew when it commenced its course of action against TRG that it was not permitted to act as it did, but did so anyway with the hope of obtaining a ruling running contrary to existing law. *See* Kimball II, 595 B.R. at 102 (demonstrating how F&D was testing its legal theory).

These actions unequivocally violate the injunction in the Plan and thus the court's Confirmation Order. They have been persistent and contumacious. TRG has shown this both by a preponderance of the evidence and by clear and convincing evidence. This therefore satisfies TRG's initial burden as the movant and the burden shifts to F&D under *Taggart* to demonstrate the uncertainty of the order it violated or, put in other terms, that there was a fair ground of doubt that F&D's action were enjoined. *See Taggart*, 139 S. Ct. at 1802.

10

    E.    <u>Fair Ground of Doubt</u>

In *Taggart*, the Supreme Court articulated that the contempt standard courts must apply to violations of the discharge injunction is the fair ground of doubt standard. As discussed above, while the *Taggart* decision was one under section 524 of the Bankruptcy Code, the language is broad enough to potentially cover chapter 11 plan injunctions when set forth in a confirmation order. As the Court stated, "[u]nder the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* As noted above, the burden of uncertainty is on the actor, in this case F&D. *Id.* (*citing McComb*, 336 U.S. at 192–93).

As a result, in the context of this case, F&D must show that a fair ground of doubt existed with respect to its pursuit of TRG.

Despite this clear standard, the majority of F&D's arguments in this regard are to the effect that TRG has failed to demonstrate that F&D's actions were unreasonable. This is not the standard or the burden. It is F&D's burden to demonstrate that its actions were reasonable under the fair ground of doubt standard.

Courts applying *Taggart* have focused on different factors in determining whether a fair ground of doubt exists.

In one of the first decisions applying *Taggart*, the bankruptcy court in Vermont held a creditor liable in contempt for repeated violations of court orders where the creditor received notice of the orders and had been sanctioned for a similar, prior action. *In re Gravel*, 601 B.R. 873, 890 (Bankr. D. Vt. 2019), *motion to certify appeal granted*, Case No. 11-10112, 2019 WL 3783317 (Bankr. D. Vt. Aug. 12, 2019) ("The Debtor Current Orders in each of these cases put [the creditor] on notice it was enjoined from seeking to collect any fees or expenses allegedly incurred during the period encompassed by each Order, if not specified in the Order. Moreover, any inquiry into whether [the creditor] was aware of its obligations under the Debtor Current Orders, and what fees and expenses it was enjoined from collecting, must take into account the fact that [the creditor] had been sanctioned once before, in the same … case, for an identical violation of Rule 3002.1.").

Here, F&D not only had notice of the terms of the Plan and the Confirmation Order entered with respect to the Plan, but affirmatively voted in favor of the Plan and its provisions. There is no question that F&D had notice of the injunction contained in the Plan as reinforced by the Confirmation Order. Further, F&D knew based on prior case law involving it and the results of its actions taken before this court, the state court and the District Court that it was acting in contravention of the Plan Injunction. Under *Gravel* and its interpretation of *Taggart*, F&D would therefore be subject to civil contempt.

In a similar case cited by F&D, however, Judge Schmetterer of this court declined to impose civil contempt for repeated violations of a discharge injunction. *In re Shuey*, 606 B.R. 760 (Bankr. N.D. Ill. 2019) (Schmetterer, J.). Judge Schmetterer concluded that "[i]t is difficult to state with conviction that Creditor's belief was objectively unreasonable given that he can cite to authority that supports his position." *Shuey*, 606 B.R. at 764.

11

In contrast, the Ninth Circuit addressed a situation more to the point here, where a creditor had no relevant supporting law to support its actions. *Suh v. Anderson (In re Jeong)*, Case No. 6:19-BK-10728-WJ, 2020 WL 1277575 (B.A.P. 9th Cir. Mar. 16, 2020). In the context of the creditor's stay violation, it stated that:

> This argument has no merit. The authorities he relies on concern the underlying validity of conveyances. They have nothing to do with the perfection of secured interests in real property or with the priority of competing interests in real property. There is nothing in Suh's authorities even suggesting that, under California law, the holder of a deed of trust can record a corrective deed of trust and thereby obtain priority over intervening lien creditors and bona fide purchasers. As noted by the bankruptcy court, such argument is antithetical to the race notice nature of California's statutory priority scheme. *See Great W. Bank v. Snow (In re Snow)*, 201 B.R. 968, 974–75 (Bankr. C.D. Cal. 1996) (examining the contents and effect of California's race-notice recording statutes). …
>
> Furthermore, we agree with the bankruptcy court's determination that Suh's stay exception theory did not constitute a reasonable ground for Suh to doubt the applicability of the automatic stay to his actions. *His inability to cite any pertinent authority in support of his theory is telling.*

*Jeong*, 2020 WL 1277575, at *5–6 (emphasis added).

Judge Thorne of this court also recently issued a similar decision based on the creditor's failure to demonstrate a reasonable basis for its action. *In re Ann Terrell*, 614 B.R. 300, 305 (Bankr. N.D. Ill. Apr. 8, 2020) (Thorne, J.) ("Although *Taggart* warns us not to impose sanctions if there is an objectively reasonable basis for concluding that the conduct might be lawful, Beaufort has not demonstrated any reasonable basis for concluding that the conduct was lawful.").

In this matter, the court holds that the approach taken by Judge Thorne and the Ninth Circuit carries the day. F&D has provided no holding from case law or statute to support the theories that F&D advances in the State Court Lawsuits—that a surety may pursue a purchaser of assets through a sale under section 363(f) of the Bankruptcy Code despite the surety having settled and released its claims in the bankruptcy itself. F&D's artificial, after-the-fact reasoning is not the measure of its actions. The measure is that F&D knew its actions were in contravention of applicable law when it took them. In Kimball II, the court stated that "[t]he evidence, in fact, demonstrates clearly that if any party was testing the waters, it was F&D. F&D has had numerous dismissals of its theories by this and other courts, yet it has continued its efforts against purchasers of [the Debtors'] property." 595 B.R. at 102. Those actions remain prohibited today, despite the novel theories that F&D has developed. F&D's argument that its actions were reasonable is unavailing.

While F&D likens its interpretation of the Confirmation Order with Judge Schmetterer's determination in *Shuey*, the facts of this case are easily distinguishable from the *Shuey* case. As noted above, F&D knew the case law did not support its actions when it took them. Further, this court and the District Court have repeatedly told F&D that its claims were released in the Plan and enjoined by the Plan and Confirmation Order. *See* Kimball I, Kimball II and the Appellate Opinion. The creditor in *Shuey* did not have such experience with adverse determinations.

12

F&D further argues that its actions were reasonable in light of pre-*Taggart* case law given that such law made the Confirmation Order unclear. F&D Brief, at p. 11 (*citing In re Batista-Sanchez*, 604 B.R. 734, 741 (Bankr. N.D. Ill. 2019)). While F&D may have succeeded in convincing the state court that such a possibility exists, through the course of F&D's repeated arguments concerning the Motion, never once has F&D provided this court with any case law to support the result it desires. As this court previously stated:

> Despite F&D's assertions that it has been vindicated by the appellate court rulings, neither the Elgin Decision nor the case which relies on its logic rules on the propriety of F&D's theory, rather they merely provide that half of F&D's claims are "sufficiently pled." Nothing in either decision reaches the issues addressed by this court in [Kimball I] and here today. F&D cannot for these reasons escape liability for damages stemming from its pursuit of TRG.

Kimball II, 595 B.R. at 102. F&D's actions most closely resemble those taken by the creditors in the *Jeong* and *Terrell* cases. The evidence of F&D's pursuits in multiple forums and lack of supporting case law demonstrate what this court has already found—that F&D's pursuit of TRG was a gamble by F&D to overturn precedent and create new law that would allow it double recovery, against both bankruptcy estates and subsequent purchasers of bankruptcy property.

There is no doubt, let alone a fair ground of doubt, that F&D's actions were unlawful under the orders entered in the case. The court thus finds that in determining the Motion in light of the limited remand set forth in the Appellate Opinion, the actions of F&D rise to the level of civil contempt set forth by the Supreme Court in *Taggart*.

F.   <u>Sufficiency of Evidence</u>

F&D has also argued that the court should reopen evidence in this case to determine the Motion under *Taggart*. As previously stated, the findings of fact that have been previously entered in this court were undisturbed on appeal. In making those findings and adducing the evidence underlying them, the court and the parties examined the propriety of F&D's conduct, its intent and its knowledge of the legal framework within which it acted. What has changed, if anything, is the legal theory to be applied to that evidence, not the evidence itself. The evidence as it stands is more than sufficient for the court to determine whether the standards set forth in *Taggart* exist, whether it be by a preponderance of the evidence or by clear and convincing evidence. There is therefore no need for the court to reopen evidence in determining the Motion. The request of F&D to reopen evidence for additional discovery is, therefore, denied.

G.   <u>Damages</u>

While not expressly an issue before the court on remand, having found that F&D's actions satisfy the standard for civil contempt under *Taggart*, the court further finds that such determination effects no change to the damages awarded in Kimball II. The evidence underlying that determination was undisturbed on appeal. As before, however, the court makes no determination on what damages, if any, might be awarded as a result of F&D's continued conduct after the actions outlined in the Motion.

13

## CONCLUSION

Having considered the arguments of the parties at the Hearing in light of the Supreme Court's decision in *Taggart*, and in accordance with the evidence of this case, it is the conclusion of the court that the court's previous finding of civil contempt and award of damages in relation thereto remains the appropriate result. A separate order to that effect will be entered concurrently herewith.

Dated: September 30, 2020                          ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge