UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-10095 |
| KIMBALL HILL, INC., | Hon. Timothy A. Barnes |
| Debtor. | |

**TRG'S REPLY IN SUPPORT OF MOTION FOR SUPPLEMENTAL DAMAGES**

As and for TRG's reply in support of its *Motion, Pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure for Entry of an Order Granting TRG (I) Supplemental Damages; (II) Leave to Further Supplement Damages Through the Date of a Final, Non-Appealable Order; and (III) Granting Related Relief* (Dkt. 4396, the "Motion")[1], TRG states as follows.

**PRELIMINARY STATEMENT**

1. Ignoring each of the arguments and case authorities that support the award of supplemental damages, Fidelity offers unrelated theories and three dozen inapposite decisions that provide no reasoned basis to deny the Motion.

2. Fidelity would mechanically apply the mandate rule and the law of the case doctrine to a small subset of the damages TRG seeks. These efforts fail, because whatever reach these policy-based, prudential principles may have does not limit this Court's discretion to award TRG the full measure of supplemental damages. The District Court did not forbid this Court from evaluating damages in light of *Taggart*. And TRG not filing a cross-appeal of this Court's "not ruling" upon certain damages two years ago does not preclude the granting of full compensatory damages now. Fidelity remains in contempt of the Confirmation Order. Fidelity has not dismissed

---

[1] Capitalized terms used and not defined herein have the same meaning ascribed to such terms in the Motion. Herein, the Federal Rules of Civil Procedures are referred to as "Rule," the Federal Rules of Appellate Procedure are referred to as "FRAP" and the Bankruptcy Rules are referred to as "Bankruptcy Rule."

the State Court Litigation. All the while, TRG has been continuing to defend itself, while being unable to liquidate the Property because of Fidelity's persistent and contumacious misconduct—misconduct it does not even acknowledge here, let alone defend. Any applicable prudential legal principles resulting from the absence of a cross-appeal are relaxed in these circumstances.

3.      Moreover, Fidelity claims a dubious victory in the District Court and denounces this Court's power to compensate TRG for its appellate fees. This entire argument, including the Supreme Court decision Fidelity relies upon, has no application to the Motion because TRG has not requested any sanctions for frivolous filings. Fidelity's failure to recognize this difference undermines the credibility of the entire Response and actually invites *sua sponte* consideration of such sanctions. Rules designed to deter frivolous filings do not displace this Court's inherent powers to remedy contempt. These powers permit the granting of the Motion, in full. Exercising these powers here also serves the dual purpose of compensating TRG while vindicating this Court's authority to enforce the Injunction in the wake of Fidelity's ongoing contempt.

4.      Finally, Fidelity's accusations of TRG's alleged "flip-flopping" are based upon incomplete and misleading soundbites taken out of context. (*See* Response, at 3-6.) Even if TRG could be said to have taken an inconsistent position during its decade-long defense of Fidelity's contemptible litigation campaign across the trial and appellate courts of multiple state and federal jurisdictions, any such inconsistencies were entirely a product of Fidelity's shifting and invented legal theories.

**ARGUMENT**

I. **DESPITE THE CONTEXT AND TIMING OF THE MOTION, PRUDENTIAL DOCTRINES DO NOT FORECLOSE THIS COURT'S DISCRETION TO FASHION SUPPLEMENTAL REMEDIES TO COMPENSATE TRG FOR FIDELITY'S ONGOING CONTEMPT**

Responding to this Court's first two inquiries, Fidelity's opening argument contends that the Motion is precluded by the mandate rule and the law of the case doctrine. (*Cf.* Response, at 6-11 *with* Scheduling Order ¶ 6(a)-(b).) Fidelity strains to support application of these principles with a litany of general legal propositions, none of which provide meaningful guidance in the matters before this Court. Fidelity couples its failure to cite any analogous authority with its outright refusal to address even one of the authorities cited in TRG's Motion, effectively conceding their application here. Indeed, Fidelity does not even bother to address the basis upon which the Motion was brought. This Court need not wade through Fidelity's inapt case law, nor dwell overlong on the mandate rule or law of the case doctrine, for two fundamental reasons.

First, evaluating the import of the mandate rule and the law of the case doctrine serves limited utility because these principles would apply, if at all, to only a portion of TRG's supplemental damages—specifically TRG's additional Legal Fees, Consultant Fees and Property Management Fees incurred from the Original Damages Request through July 2018. Fidelity admits as much, conceding that the mandate rule and law of the case doctrine do not preclude the granting of TRG's supplemental damages related to (a) each of these three categories from and after July 2018 or (b) additional Property Value damages after the Original Damages Request. (*See* Response, at 4.) *See also United States v. Husband*, 312 F.3d 247, 251 n.4 (7th Cir. 2002) ("Issues that arise anew on remand are generally within the scope of the remand.").

Second, whatever application these principles may now have is not dispositive of the Court's ability to grant the Motion, because they are policy-based, prudential doctrines that do not

3

limit a court's power to award supplemental damages on remand. *See Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982) ("The doctrine is a self-imposed prudential limitation rather than a recognition of a limitation of the courts' power."); *United States v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000) ("Likewise, the mandate rule, which generally requires trial court conformity with the articulated appellate remand, is a discretion-guiding rule.") (internal quotations omitted). Fidelity tries to conceal this maxim, but its authority corroborates it. *See In re Olde Prairie Block Owner*, 447 B.R. 578, 588 (Bankr. N.D. Ill. 2011) (collecting binding authorities, and reasoning that the law of the case doctrine is a "flexible rule," "not a limit on their power," and "is not a straitjacket").

Accordingly, even if this Court were to find prudential doctrines applicable, they serve only as a guidepost to the Court's discretion—and even then, only as to a subset of the relief sought by TRG. And with respect to those limited categories, the mandate rule and law of the case doctrine would not call for a discretionary denial of the Motion even if they were applied, whether based upon the scope of the remand or the timing of TRG's Motion, as detailed below.

### A.     **The Motion is not Beyond the Scope of the Remand**

The discretionary mandate rule pertains only to those appellate rulings that, unlike here, actually decide an issue, whether explicitly or implicitly. *See Gertz*, 680 F.2d at 532; *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) ("[T]his court has held that a mandate is controlling as to all matters within its compass, while leaving any issue not expressly or impliedly disposed of on appeal available for consideration by the trial court on remand."). Divining the scope of remand from appellate court rulings is not always a simple exercise, which may produce ancillary appellate litigation that disserves judicial economy. *See generally United States v. Adams*, 767 F.3d 734, 743-45 (7th Cir. 2014). This is one reason why the mandate rule and the law of the case doctrine are policy-based guideposts, not immutable, unbending directives. Yet that is

4

precisely what Fidelity promotes with its robotic application, based upon Fidelity's generous spin on what it believes the District Court mandated. (*See* Response, at 9 ("Determining whether F&D's conduct violated the standard in *Taggart* simply has nothing to do with whether and to what extent TRG may have been damaged by any such violation.").)

While the District Court did not expressly rule on damages or expressly instruct this Court to further evaluate damages in light of *Taggart*, the Appellate Opinion did not forbid such considerations. Rather, the District Court left open for this Court to consider whether the compensatory damages continuing to stem from Fidelity's violation of the Injunction remained appropriate in light of *Taggart*, and by extension, whether supplemental compensatory damages were justified. To be sure, the District Court referenced both *Kimball I* and *Kimball II* and found that it "is not clear whether the standard articulated in *Taggart* would alter the Bankruptcy Court's decision that F&D acted in contempt of its order . . . and remanded for a determination of contempt under the standard articulated in *Taggart*." Appellate Opinion, at 7. *Taggart* was premised upon "traditional principles of equity practice," including the Supreme Court's recognition that "courts have long imposed civil contempt sanctions to . . . compensate the complainant for losses stemming from the defendant's noncompliance with an injunction." 139 S. Ct. 1801 (internal citations omitted).

Accordingly, based on this Court's prior rulings in *Kimball I* and *Kimball II*, the mandate for a "determination of contempt under *Taggart*" does not forbid consideration of the damage award, which is presumably why this Court expressly confirmed the prior damages on remand:

> While not expressly an issue before the Court on remand, having found that F&D's actions satisfy the standard for civil contempt under *Taggart*, the court further finds that determination effects no change to the damages awarded in Kimball II.

Remand Opinion at 13.

To ensure a thorough record, and potentially avoid additional piecemeal litigation, this Court properly reconsidered its prior damages ruling.[2] Just as the mandate rule did not preclude such reconsideration, the rule also does not preclude the Court from considering the supplemental damages TRG incurred through such ruling, as well. *See Safeco Ins. Co. of Am. v. Lawrence Brunoli, Inc.*, No.: 12-1105, 2015 WL 7760159, at *3 (D. Conn. Dec. 2, 2015) (holding the mandate rule did not apply on remand to preclude court from awarding supplemental attorneys' fees under a contractual fee-shifting provision incurred in defense of appeal where, as here, appellate court did not address such fees, either explicitly or implicitly); *Odima*, 53 F.3d at 1497 (affirming district court's authority, on appeal of remand opinion, to award enhanced damages where, as here, the first appellate ruling did not encompass choice of remedies).

Moreover, to the extent that *Taggart* effected an intervening change in the law on the standards of contempt, the silence of the District Court regarding damages does not foreclose this Court's reasonable reconsideration of damage issues. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) (affirming the district court's reexamination on remand of an issue based upon an intervening change in law, reasoning that neither the mandate rule nor law of the case doctrines are "inflexible" and do not permit reversal as long as the trial court's analysis of the intervening case was reasonable). Finally, even if strict reliance upon FRCP 59(e) or other procedural rules may not afford complete relief, this Court nevertheless possesses the inherent authority to grant the Motion in full. *See infra*, § II; *Safeco*, 2015 WL 7760159, at *5 (surveying national case law for its conclusion that authority existed to award supplemental attorneys' fees

---

[2] Similarly, this Court made sound, substantive rulings on the "clear and convincing standard," despite the arguable lack of explicit rulings by the District Court with respect to such matters. *See* Remand Opinion at 9, n.4. No legal or equitable justification supports a distinction between, on the one hand, the Court's proper exercise of remand authority to consider these clear and convincing arguments while, on the other hand, denying authority to further compensate a victim from continuing contempt damages forced upon it by a stubborn litigant.

incurred in defending appeal to serve judicial economy, "whether the entitlement to fees is under a contract, statute, or court rule").[3]

### B. This Court has Discretion to Grant the Motion in Full Even without a Similar Motion (or Cross Appeal) after *Kimball II*

As this Court has unquestioned authority to award supplemental compensatory damages on remand as a general matter, whatever remains for consideration under the mandate rule and the law of the case doctrine is narrow. Indeed, the only residual issue is whether the Court has discretionary authority to award a subset of TRG's supplemental damages now, despite (i) this Court's prior decision in which it expressly did not rule on the damages TRG originally sought at trial in September 2018 and (ii) TRG not cross-appealing that lack of ruling. These supplemental damages relate exclusively to the legal, consulting and management fees TRG was forced to incur during the year it prosecuted Fidelity's contempt, between TRG's original damages filing and trial. In total, these damages account for 40% of the liquidated amounts sought in the Motion.[4] The mandate rule and the law of the case do not limit this Court's ability to award these amounts, either.

Fidelity insists that the Court cannot, "as a matter of law," consider the same subset of damages it did not rule upon in *Kimball II* based upon TRG's not filing a cross-appeal. (Response, at 6-8.) However, the out-of-context decisions upon which Fidelity relies to support its legal proposition relate to the failure of *appellants*—not appellees—to properly preserve an issue on

---

[3] In *Safeco*, the court also reasoned that the jurisdictional basis to award fees for defending the appeal was sound under Supreme Court precedent, which permits lower courts to award such fees where doing so serves to either (i) permit a single disposition of factually interdependent claims or (ii) enables the court to vindicate its authority. *Id.* at 6. The *Safeco* court found other categories of damages sought did not serve either purpose. Here, however, awarding TRG the full supplemental damages requested in its Motion serves both purposes. All of TRG's damages are factually interdependent of the underlying enforcement proceeding; and, in fact identical in substance to the Initial Damage Award. Moreover, granting the Motion enables the Court to vindicate its authority by enforcing its prior orders. *Id.* at 6-10.

[4] These $987,296.46 of damages are much less than 40% when including the unliquidated amounts of additional damage Fidelity's contempt caused to TRG's Property Value.

7

appeal, none of which are applicable here. This distinction is critical because principles of forfeiture, waiver, the mandate rule and the law of the case doctrine are far more relaxed as applied to the alleged failure of an appellee to preserve, on subsequent remand, a cross-issue during the appellant's initial appeal. *See* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Jurisdiction* § 4478.6 (2d ed. 2020) (examining case law and concluding that "[w]hen the outcome of the appeal is that further trial-court proceedings are held, it is not evident that anything should turn on the question whether the argument not made would have required a cross-appeal"). *See also Schering Corp. v. Ill. Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996) (recognizing generally that these principles have "limited applicability" as applied to appellees); *De Jong v. JLE-04 Parker, LLC (In re De Jong)*, 588 B.R. 879, 891-93 (9th Cir. B.A.P. 2018) (holding that appellee's support of initial bankruptcy court damages ruling on appeal did not preclude, on remand, such party's ability to challenge damages, and reversing bankruptcy court's improper reliance on the mandate rule).

Relaxing these discretionary guidelines in favor of allowing TRG to be compensated for these amounts is proper, for several reasons. First, Fidelity cannot claim prejudice or surprise for TRG's decision to seek to supplement its damages, which request TRG has made throughout each phase of these enforcement proceedings. (Motion, at 3-7.) *See Safeco*, 2015 WL 7760159, at *5 & n.3 (reasoning that the litigant "should not be forced to initiate a new lawsuit, especially where the fee award simply seeks to update the previous award to reflect changed circumstances," where, as here, respondent was on notice that litigant would "eventually seek supplemental fees"). Relatedly, TRG sought to expedite resolution of this matter at every step to continue to mitigate the tens of millions in damages to its purchase, all of which was forestalled by Fidelity's improper tactics and

8

procedural maneuvers. *See, e.g.*, *Kimball II*, 595 B.R. at 91. Mechanically applying forfeiture principles against TRG rewards Fidelity for its misconduct.

Second, this Court retains inherent power to continue to enforce the Injunction, through a variety of remedies. *See infra*, § II. Compensating TRG for the additional damages inflicted upon it by Fidelity's contempt is a proper exercise of such power. Third, the unique procedural posture of this case, including the intervening entry of the Final Decree (ignored by Fidelity in its Response) and principles of judicial economy call for awarding these damages on remand. (Motion, at 9.)

## II. OTHER STATUTES AND RULES DESIGNED TO DETER FRIVOLOUS FILINGS DO NOT CONSTRAIN THIS COURT'S ABILITY TO AWARD SUPPLEMENTAL DAMAGES PURSUANT TO ITS INHERENT POWERS AND SECTION 105 OF THE BANKRUPTCY CODE

Fidelity devotes a significant portion of its Response to the fallacy that this Court lacks authority to award TRG any supplemental damages incurred by TRG as a result of Fidelity's initial appeal of *Kimball I* and *Kimball II*. (*See* Response, at 11-13.) Fidelity does so by setting up a strawman—namely, the notion that TRG has accused Fidelity of nothing more than filing frivolous pleadings. Under this false premise, Fidelity concludes that because TRG did not seek sanctions under FRAP 38 or Bankruptcy Rule 8020, this Court is powerless to award such sanctions in the form of damages.

Not so. As threshold matters, since these arguments misrepresent TRG's Motion, they may independently justify additional sanctions under the authority Fidelity itself relies upon. Moreover, Fidelity's arguments relate exclusively to TRG's request for attorneys' fees that were incurred on appeal. These arguments have no application to either (i) any of the other categories of supplemental damages sought by the Motion, whether incurred during Fidelity's appeal or

9

otherwise, or (ii) any attorneys' fees TRG incurred as a result of Fidelity's continued contempt on remand or from the Original Damages Request through *Kimball II*.

On the merits, none of Fidelity's cases support application of statutes[5] or procedural rules[6] (all designed to curb frivolous filings) as a handcuff on the power of a trial court to compensate contempt victims. Rather, these decisions stand for unexceptional but irrelevant propositions, including that: (i) only an appellate court can award sanctions for a frivolous appeal; (ii) a trial court cannot award sanctions under FRAP 38 and Bankruptcy Rule 8020; and (iii) an appellee cannot obtain, through Rule 11, the additional attorneys' fees it incurs defending the sanctioned party's appeal of a trial court's Rule 11 order. This body of case law has no application here for the simple reason that TRG has not pursued any damages or sanctions against Fidelity under any of these statutes or rules.

What is *sub judice* is the additional amount of remedial damages necessary to compensate TRG for the substantial harm caused by Fidelity's continuing violation of the Confirmation Order. Critically, the source of this Court's power to fashion such relief is not based upon any of the statutes or rules Fidelity's Response highlights. Rather, as this Court previously instructed, civil contempt authority exists both "statutorily in section 105 of the Bankruptcy Code" and "inherently" to, among other things, enforce compliance with court orders. *Kimball II*, 595 B.R. at 100, 104-05, 109-110 (collecting cases, and further reasoning that civil contempt damages are designed to "attempt to restore losses from violation of a court order").

Indeed, despite telling this Court that TRG's request for fees incurred on appeal "must be rejected" under the Supreme Court's 1990 decision in *Cooter v. Gell*—which involved neither

---

[5] *E.g.* 27 U.S.C. § 1927.

[6] *E.g.* Rule 11, FRAP 38 or Bankruptcy Rule 8020.

contempt nor the exercise of a court's inherent authority, but rather Rule 11—Fidelity neglects the Supreme Court's on-point decision one year later in *Chambers v. Nasco*. (*Cf*. Response, at 13 *with* 501 U.S. 32 (1991).) "The 'ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.'" *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (citations omitted).

In *Chambers*, the Supreme Court squarely held that statutory powers and procedural rules do not displace a trial court's inherent powers, including (i) the power to award all attorneys' fees incurred in defending civil contempt damages (for violating an injunction) on appeal, as well as (ii) the imposition of sanctions based on conduct occurring outside of the trial court. *Chambers*, 501 U.S. at 38, 40, 50, 55, 57 (affirming the trial court's discretion to impose sanctions of nearly $1 million, representing the "entire amount of NASCO's litigation costs paid to its attorneys"). The court reasoned that the "power to punish for contempts is inherent in all courts," which power "reached both conduct before the court and that beyond the court's confines," particularly where, as here, the underlying concern stems from "disobedience to the orders of the Judiciary." *Id*. at 44 (citing *Young v. United States ex rel Vuitton et Fix S.A.*, 481 U.S. 787 (1987)). Accordingly, and consistent with this Court's analysis, the Supreme Court recognized that there are ample grounds authorizing a trial court's inherent power to assess attorneys' fees incurred to remedy willful violations of court orders. *Id.* at 45 (holding that such discretion extends to a trial court's imposition of sanctions of "attorney's fees representing the entire cost of the litigation," including appellate legal fees); *see also Kimball II*, 595 B.R. at 109-110 (justifying an exception to the "American Rule," and awarding TRG compensation "for the damages it has incurred in successfully prosecuting the Motion" because of Fidelity's willful disobedience of the Injunction).

*Chambers* is dispositive here, and flatly belies Fidelity's reliance on *Cooter* and analogies to Rule 11, FRAP 38, and Bankruptcy Rule 8020. *See Chambers*, 501 U.S. at 46, 50 (holding that "[t]hese other mechanisms, taken alone or together, are not substitutes for the inherent power" and instructing trial courts to "safely rely on its inherent power" to craft sanctions where "in the informed discretion of the court, neither the statute nor the Rules are up to the task").[7] Notably, the Supreme Court also criticized the appellant's mitigation arguments, which sought fee reductions based upon the appellee's alleged failure to take swifter action in the litigation. The court rejected these arguments because—just like Fidelity here—the appellant made swift resolution "impossible" by "continuing to assert" that material disputes existed. *Id*. at 57.

Therefore, there is no basis for Fidelity's attempt to restrain this Court's authority to impose supplemental civil contempt damages based upon the attorneys' fees TRG incurred in defending Fidelity's appeal. This result is also compelled by sound policy. *See id.* at 46 (use of inherent power serves the purpose of "making the prevailing party whole for expenses caused by his opponent's obstinacy") (internal quotations and citations omitted). *See also F.T.C. v. Trudeau*, 662 F.3d 947, 950–51 (7th Cir. 2012) ("Longstanding precedent dictates that the district court had power to provide 'full remedial relief . . . to compensate the complainant for *losses sustained*.") (internal citations omitted, emphasis in original).

Fidelity remains in contempt of the Injunction, having refused to dismiss the State Court Litigation. These actions, coupled with Fidelity's appeals of this Court's rulings, continue to prevent TRG from selling the Property and require TRG to incur costs defending itself by

---

[7] The Seventh Circuit has limited *Cooter* to its particular facts. *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 787-88 (7th Cir. 1994) (distinguishing *Cooter*, and awarding fees incurred by appellee in defending appeal of discovery sanction, reasoning that "[n]othing less will make her whole; anything less would defeat the function of Rule 37(a)(4)"); *See also Citizens For A Better Env't v. The Steel Co.*, No. 95 C 4534, 1999 WL 412439, at *2 & n.3 (N.D. Ill. June 9, 1999).

12

continuing to pay lawyers, consultants and property managers. While Fidelity certainly has the right to pursue good faith appeals, it cannot evade liability for the attendant damages to TRG, particularly when those damages are the consequences of Fidelity's continued flouting of the Injunction. Irrespective of whether other statutes and rules proscribe Fidelity's conduct, this Court's inherent powers authorize discretionary sanctions to compensate TRG while, at the same time, vindicating this Court's orders. *See Schermerhorn v. Centurytel, Inc. (In re Skyport Global Commc'ns, Inc.)*, 10-3150, 2013 WL 4046397, at *81-83 (Bankr. S.D. Tex. Aug. 7, 2013) (compensatory sanctions act "as reparation, restoring the parties to the positions they would have been in had the respondent complied with the court's order in the first place," and justifying the award of full damages in contempt proceedings because doing otherwise could "discourage[] other parties from coming forward with evidence of contempt, and turn[] a court order into mere mockery") (internal quotations omitted).

### III.     THIS COURT CAN AND SHOULD FULLY RESOLVE THE MOTION

In response to this Court's third and fourth inquiries, Fidelity argues that the Court should rule on the Motion now, rather than hold any ruling pending the results of Fidelity's second appeal. (*Cf.* Response, at 13-14 *with* Scheduling Order ¶ 6(c)-(d).) Fidelity bases these arguments on principles of finality and judicial economy.

TRG agrees. This Court can—and, respectfully, must—fully resolve the Motion in order for Fidelity to pursue an "effective" appeal of this Court's rulings in *Kimball I*, *Kimball II*, the Remand Opinion and any ruling on the Motion. *See* Fed. R. Bankr. P. 8002(b) ("If a party files a notice of appeal after the court announces or enters a judgment, order, or decree—but before it disposes of any motion listed in subdivision (b)(1)—the *notice becomes effective* when the order

13

disposing of the last such remaining motion is entered.") (emphasis added).[8] An effective appeal, therefore, may not proceed if the Court were to grant TRG leave to supplement, but defer ruling on the amounts of such supplementation.

Moreover, even if such a comingling of jurisdiction is possible under applicable rules, deferring a full resolution on the Motion would likely threaten judicial economy and inject unnecessary appellate complications. For example, there is no certainty that any appellate court would agree and, rather than address the merits in the first instance, such appeals courts could remand for a full consideration of the Motion, which would inevitably cause delay. A deferred ruling would likely also necessitate the filing of protective, contingent cross-appeals on that issue alone to ensure a complete reservation of rights, further complicating this case.

Finally, despite Fidelity's suggestion that resolving TRG's supplemental damages requires a new trial, there are very few factual matters (and no legal matters) subject to a live dispute. (*See* Motion, at 4-6, 13-14.) Indeed, now that Fidelity has waived any right to dispute that its contempt caused TRG's supplemental damages, the Court need only consider whether the various amounts of these supplemental damages are reasonable. *See* Scheduling Order ¶¶ 4 ("Except for the reservations set forth in paragraph 8 of this order, all arguments not made in . . . the Response . . . will be waived"), 8 (reserving the parties' rights to address only "the quantification of propriety of individually asserted costs or other damages").) Accordingly, for each of these reasons, TRG respectfully requests that this Court can, and should, issue a complete ruling on the Motion.

---

[8] Federal Rule of Bankruptcy Procedure 8002(b)(1) identifies four categories of timely filed motions that, unless and until all such are decided by a bankruptcy court, preclude parties from filing an effective notice of appeal. Fed. R. Bankr. P. 8020(b)(1). These categories include motions brought under Rules 7052 and 9023, as here. *Id.*

WHEREFORE, TRG respectfully requests that the Court enter an order granting the Motion and granting such other and further relief as the Court deems just and appropriate.[9]

Dated:  December 21, 2020

Respectfully submitted,

TRG VENTURE TWO, LLC, as successor to the KHI POST-CONSUMMATION TRUST

By:  */s/ William W. Thorsness*
Douglas J. Lipke
William W. Thorsness
VEDDER PRICE P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005
dlipke@vedderprice.com
wthorsness@vedderprice.com

- and -

Edward B. Ruff, III
Michael P. Turiello
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone:  (312) 578-7450
Facsimile:  (312) 346-8242
eruff@pretzel-stouffer.com

---

[9] Consistent with this Court's instructions, this reply is addressed only to (i) the arguments made in Fidelity's Response and (ii) in response to the questions set forth in the Scheduling Order. TRG continues to reserve its rights and relief requested in the Motion, including the request for leave to further supplement additional damages through a Resolution Date, including additional loss of Property Value through a supplemental expert report.

15

## **CERTIFICATE OF SERVICE**

      I, William Thorsness, an attorney, certify on this 21st day of December, 2020, that a true and correct copy of **TRG'S REPLY IN SUPPORT OF ITS MOTION FOR SUPPLEMENTAL DAMAGES,** (the "Reply") was filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, using the CM/ECF filing system, which caused a copy to be electronically mailed to all CM/ECF participants registered to receive electronic notices in the above-captioned case.

      On December 21, 2020, at my direction and under my supervision, employees of Vedder Price P.C. will also cause the Reply to be e-mailed to the party set forth below.

| **COMPANY** | **ADDRESS** |
|---|---|
| Fidelity & Deposit Company of Maryland<br>c/o Fox Swibel Levin & Carroll LLP<br>Attn: David Koropp | 200 West Madison Street, Suite 3000<br>Chicago, Illinois 60606<br>Phone: (312) 224-1234<br>Fax: (312) 224-1201<br>panderson@foxswibel.com<br>dkoropp@foxswibel.com |

Dated:  December 21, 2020

                                                                              /s/ *William W. Thorsness*