UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08bk10095 |
| | ) | |
| In re Kimball Hill, Inc., *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court comes on for consideration on TRG's Motion, Pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, for Entry of an Order Granting TRG (I) Supplemental Damages; (II) Leave to Further Supplement Damages Through the Date of a Final, Non-Appealable Order[;] and (III) Related Relief [Dkt. No. 4396] (the "Supplemental Damages Motion") filed by TRG Venture Two, LLC ("TRG"), in light of this court's Memorandum Decision [Dkt. No. 4390] and Order [Dkt. No. 4388] (together, the "Decision on Remand"), *In re Kimball Hill, Inc.*, 620 B.R. 894 (Bankr. N.D. Ill. 2020) (Barnes, J.), wherein this court considered the District Court for the Northern District of Illinois (the "District Court")'s questions on remand and, for the reasons set forth in the Decision on Remand, found that the conduct of Fidelity and Deposit Company of Maryland ("F&D") continued to be sanctionable even when considered in light the recent United States Supreme Court decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019).

After the Decision on Remand but before F&D's renewed appeal thereof divested this court of jurisdiction, TRG filed the Supplemental Damages Motion seeking further damages as a result of alleged continuing conduct by F&D.

Having considered the Supplemental Damages Motion and the filings made in conjunction therewith, the court concludes that, while it has jurisdiction to hear the Supplemental Damages Motion, the request is improvident in light of the pending, second appeal and uncertain application of the court's earlier stay pending appeal and related bond. TRG has failed to convince the court that an award of supplemental damages is appropriate at this time. As a result, for the reasons stated herein, the Supplemental Damages Motion will be denied without prejudice.

---

[1]     The debtors in these cases include: Kimball Hill, Inc.; KH Financial Holding Company; KHH Texas Trading Company L.P.; Kimball Hill Far East Detroit, LLC; Kimball Hill Homes Austin, L.P.; Kimball Hill Homes California, Inc.; Kimball Hill Homes Dallas, L.P.; Kimball Hill Homes Florida, Inc.; Kimball Hill Homes Houston, L.P.; Kimball Hill Homes Illinois, LLC; Kimball Hill Homes Nevada, Inc.; Kimball Hill Homes San Antonio, L.P.; Kimball Hill Homes Texas Investments, L.L.C.; Kimball Hill Homes Texas Operations, L.L.C.; Kimball Hill Homes Texas, Inc.; Kimball Hill Texas Investment Company, L.L.C.; Kimball Hill Urban Centers Chicago One, L.L.C.; Kimball Hill Urban Centers, L.L.C.; National Credit and Guaranty Corporation; and The Hamilton Place Partnership (collectively, the "Debtors").

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

In this court's initial determinations of the underlying motion,[2] F&D argued that the bankruptcy court does not have jurisdiction or should have abstained from adjudicating the Damages Motion. The court rejected those arguments, finding instead that it possesses the jurisdiction and statutory and constitutional authority to determine the Damages Motion, *In re Kimball Hill, Inc.*, 565 B.R. 878, 888–91 (Bankr. N.D. Ill. 2017) (Barnes, J.) ("Kimball I"); *In re Kimball Hill, Inc.*, 595 B.R. 84, 89–90 (Bankr. N.D. Ill. 2019) (Barnes, J.) ("Kimball II"), and that abstention was not appropriate. Kimball I, 565 B.R. at 891–92. The District Court affirmed the bankruptcy court's findings regarding its authority and abstention. Memorandum Opinion and Order [Dkt. No. 4350], *Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC*, Case No. 19 C 389, 2019 WL 5208853, at *2–3 (N.D. Ill. Oct. 16, 2019) (the "Appellate Decision"). That determination is the law of this case.

---

[2]   Purchaser's Motion for Entry of an Order (I) Enforcing Confirmation Order; (II) Directing Dismissal of State Court Claims; (III) Awarding Damages[;] and (IV) Granting Related Relief [Dkt. No. 3969] (the "Damages Motion").

In the Decision on Remand, the court considered and rejected further objections of F&D to this court's jurisdiction. As stated therein, "[t]o the extent that F&D[] attempts to assert again that this court may not determine the [Damages] Motion based on jurisdiction, statutory or constitutional authority or abstention theories, such an argument is not appropriate on remand. *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) ("[A]ny issue conclusively decided by this court on the first appeal is not remanded.") (*citing United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001))." Decision on Remand, 620 B.R. at 900.

It follows that if the court has the jurisdiction, statutory authority and constitutional authority to determine a dispute and nothing has changed since so doing, the court also has jurisdiction, statutory authority and constitutional authority to consider a request to modify its prior rulings. *Gerba v. Nat'l Hellenic Museum*, 351 F. Supp. 3d 1097, 1099 (N.D. Ill. 2018) (a court has the authority to revisit its rulings).

Pending a discussion below of the limitations on this court's jurisdiction when an appeal pends, accordingly and for the reasons set forth in the Decision on Remand, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Supplemental Damages Motion.

BACKGROUND

This history of the dispute between TRG and F&D has been set forth by the court in the Decision on Remand and in both of its prior decisions addressing the Damages Motion. *Id.* at 900–01; Kimball I, 565 B.R. at 883–88; Kimball II, 595 B.R. at 90–91.

In context, in Kimball I the court found that F&D's actions on interpleading TRG, the successive owner to certain assets of the bankruptcy estate, into state court actions wherein F&D asserted claims that had been treated in, released and enjoined by the Debtors' Plan,[3] F&D had violated the terms of the court's Confirmation Order[4] and the Release and Plan Injunction[5] contained in the Plan and the Confirmation Order. Kimball I, 565 B.R. at 902.

In Kimball II, the court determined and awarded damages as a remedial contempt sanction. Kimball II, 595 B.R. at 104. There it stated that:

… TRG seeks damages from the date of the Demand Letter to August 2, 2017. ….

At the Trial, TRG increased its request, asking for additional legal fees, consultant fees and project management fees from August 2, 2017 to July 30, 2018. No increase was sought for additional lost property value. *No evidence was submitted to*

---

[3]     Joint Plan of Reorganization of Kimball Hill, Inc. and Its Debtor Subsidiaries Pursuant to Chapter 11 of the Bankruptcy Code [Dkt. No. 814, as amended] (the "Plan").

[4]     Findings of Fact, Conclusions of Law, and Order Confirming Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code [Dkt. No. 1118] (the "Confirmation Order").

[5]     Plan, at VIII.E; Confirmation Order, at ¶ 19(b) (together, the "Release"); Plan, at VIII.F; Confirmation Order, at ¶ 19(d) (together, the "Plan Injunction").

*support the additional damages; therefore, the court will not rule on the increase in damages requested by TRG.*

> As a result, the court finds that the scope of the [Damages] Motion allows TRG to recover damages from date of the Demand Letter, August 9, 2011, to August 2, 2017.

*Id.* (emphasis added).

Following the entry of the order in Kimball II, but prior to filing its Notice of Appeal [Dkt. No. 4300] (the "First Appeal"), F&D moved for an order of this court staying its orders pending appeal. Motion for Stay Pending Appeal [Dkt. No. 4295]. That Motion was heard and granted on January 22, 2019. Order Granting Motion [of] Fidelity and Deposit Company of Maryland for Stay Pending Appeal [Dkt. No. 4306] (the "Stay Order"). The Stay Order provided that, in exchange for a supersedeas bond in the amount of $15 million,

> [i]mmediately upon F&D's posting of the supersedeas bond, the following orders are stayed pending appeal; March 20, 2017 Memorandum Decision [Docket No. 4051], March 20, 2017 Order [Docket No. 4052], July 21, 2017 Order (Docket No. 4187], January 3, 2019 Memorandum Decision [Docket No. 4292] and January 3, 2019 Order [Docket No. 4293].

Stay Order, at ¶ 4. The Stay Order was prepared by counsel for F&D but reviewed by counsel to TRG. By its express terms, it stayed the decisions and orders in both Kimball I and Kimball II "pending appeal." *Id.*

In the First Appeal F&D challenged a number of issues but did not challenge the amount of the damages awarded by the court. *See* Minute Entry [Granting Request to Amend Statement of Issues on Appeal] [Dkt. No. 29 in *Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC*, Case No. 19 C 00389, N.D. Ill. filed Jan. 18, 2019]; Brief for Appellant Fidelity and Deposit Company of Maryland [Dkt. No. 30, at pp. 2–4, in Case No. 19 C 00389] (the "Statement of Issues on Appeal"). While F&D challenged this court's determination not to abstain, the court's conclusion that F&D violated the terms of the Plan and the standard of proof applied by this court in reaching that latter conclusion, it did not challenge the court's calculation of damages. *See* The Statement of Issues on Appeal. At the same time, TRG neither sought reconsideration of nor cross-appealed the court's orders including the court's decision not to award damages beyond that requested in the Damages Motion.[6]

This court summarized Judge Gúzman's decision on the First Appeal as follows:

---

[6]     The Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide that Rules 59 and 60 of the Federal Rules of Civil Procedure (the "Civil Rules") applies in bankruptcy cases generally, *see* Fed. R. Bankr. P. 9023 and 9024, and that Rule 52 of the Civil Rules (which has its own, internal reconsideration mechanism in Rule 52(b)) applies in adversary proceedings and contested matters in bankruptcy cases. *See* Fed. R. Bankr. P. 7052; Fed. R. Bankr. P. 9014(c). Motions under any of this Rules are often referred to as "motions for reconsideration."

In the [Appellate Opinion], remanding the matter, Judge Gúzman of the District Court held that this court was correct in Kimball I in determining that the bankruptcy court had subject-matter jurisdiction to determine the Motion and that it was correct for this court not to abstain from such determination. Appellate Opinion, 2019 WL 5208853, at *2–3. The District Court further held that, "[b]ased on the Bankruptcy Court's informed and considered rulings as stated above, the [District] Court cannot find that [the bankruptcy court] abused its discretion in interpreting the Plan to include TRG as a successor under the Plan" and in interpreting that F&D's claims were released under the Plan. *Id.* at *4–5.

The District Court, however, remanded the matter to the bankruptcy court, asking this court to determine whether contempt was appropriate under the standards set forth in *Taggart*, which was determined by the Supreme Court after Kimball II was entered. Specifically, the Appellate Opinion provides, "[i]t is not clear whether the standard articulated in *Taggart* would alter the Bankruptcy Court's decision that F&D acted in contempt of its order. Thus, because the Bankruptcy Court did not expressly consider whether there was a 'fair ground of doubt' as to whether F&D's conduct might be lawful, its order granting [the Motion] is vacated and remanded for a determination of contempt under the standard articulated in *Taggart*." Appellate Opinion, 2019 WL 5208853, at *6.

Decision on Remand, 620 B.R. at 897–98 (footnote omitted).

In the Decision on Remand, this court observed that "[t]he evidence of F&D's pursuits in multiple forums and lack of supporting case law demonstrate what this court has already found— that F&D's pursuit of TRG was a gamble by F&D to overturn precedent and create new law that would allow it double recovery, against both bankruptcy estates and subsequent purchasers of bankruptcy property." *Id.* at 909. As a result, the court concluded that "[t]here is no doubt, let alone a fair ground of doubt, that F&D's actions were unlawful under the orders entered in the case." *Id.* As a result, the court reinstated its earlier decisions and orders finding F&D to be in civil contempt and assessing damages as a result of that contempt. *Id.* at 910–11.

After the Decision on Remand but before F&D's renewed appeal thereof,[7] TRG filed the Supplemental Damages Motion seeking further damages as a result of alleged continuing conduct by F&D. F&D filed a notice of objection to the Supplemental Damages Motion, Fidelity & Deposit Company of Maryland's Notice of Objection to TRG Venture Two, LLC's Motion Pursuant to Rules 52(b) and 59(e) [Dkt. No. 4403],[8] and the court thereafter entered a scheduling order, Order Scheduling TRG's Motion, Pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, for Entry of an Order Granting TRG (I) Supplemental Damages; (II) Leave to Further Supplement Damages Through the Date of a Final, Non-Appealable Order[;] and (III) Related

---

[7]     Notice of Appeal [Dkt. No. 4397] (the "Second Appeal") filed on October 13, 2020.

[8]     A notice of objection is a procedural device implemented by this court in its Third Amended General Order 20-03 (Court Proceedings During COVID-19 Public Emergency). Available at https://www.ilnb.uscourts.gov/sites/default/files/general-ordes/Gen-Ord-20-03-ThirdAmendedCorrected.pdf (last visited May 11, 2021). It is used to ensure that, prior to the initial presentment of a motion, the court not grant the motion in chambers. *Id.* at ¶ 7(d).

Relief [Dkt. No. 4405] (the "Scheduling Order").  In accordance with the Scheduling Order, the following documents were then filed by the parties:

- Fidelity & Deposit Company of Maryland's Brief in Opposition to TRG Venture Two, LLC's Motion Pursuant to Rules 52(b) and 59(e) [Dkt. No. 4411]; and

- TRG'S Reply in Support of Motion for Supplemental Damages [Dkt. No. 4412] (the "Reply").

Both parties argued their positions on the Supplemental Damages Motion at a hearing held on January 11, 2021 (the "Hearing").  The court thereafter took the Supplemental Damages Motion under advisement.

In this determination, the court has considered its prior rulings in this matter, including Kimball I and II, the Stay Order, the Appellate Decision and the Decision on Remand, the arguments of the parties at the Hearing, and has reviewed and considered the Supplemental Damages Motion and each of the filings related thereto.  Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at \*2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## DISCUSSION

As noted above, F&D's involvement in this case has been ongoing and has lasted the better part of a decade.  In particular, the dispute regarding F&D's contempt of this court's Confirmation Order and violations of the injunction in the Debtor's confirmed Plan has been before the court on a number of occasions in the past five years.  In 2017, this court found F&D's actions to be in violation of the Release and Plan injunction, and thus subject to civil contempt damages.  Kimball I, 565 B.R. at 901.  At that time, the court ordered F&D to dismiss its claims against TRG in the applicable state law actions, stating that "[f]ailure to abide by such order will be punishable by civil contempt." *Id.* at 902.  In the same decision, the court put into motion a procedure by which the damages for F&D's actions would be determined. *Id.* at 903.  On January 3, 2019, after further briefing and a four-day trial (the "Trial"), this court determined those damages.  Kimball II, 595 B.R. at 104.

As noted above, the court in Kimball II determined damages for an express period of time, from "August 9, 2011, to August 2, 2017." *Id.*  TRG now, through the Supplemental Damages Motion, seeks an additional $2,482,180.48 for damages beyond that period. *See* Supplemental Damages Motion, at ¶ 15.  These damages contain additional damages originally sought by TRG at the Trial but for which evidence was not offered, plus supplemental damages for alleged continuing violations of the Release and Plan Injunction. *Id.* at ¶¶ 29–33.

TRG argues in the Supplemental Damages Motion that it is appropriate for this court to consider supplemental damages at this time for what are essentially two reasons: (i) the bankruptcy court has continuing authority under Bankruptcy Rules 7052 and/or 9023; and (ii) it would be appropriate for the court to consider supplemental damages given that F&D has allegedly not ceased the conduct that the court found impermissible in Kimball I and Kimball II.

F&D responds by arguing that: (a) the relief requested is beyond the scope of the remand from the District Court; and (b) the District Court is the appropriate forum to consider additional damages relating to F&D's conduct during the pendency of the appeal.

TRG replies and attempts to counter F&D's arguments, arguing that the court "can—and, respectfully, must—fully resolve the [Supplemental Damages] Motion in order for [F&D] to pursue an 'effective' appeal."  Reply, at p. 13.

In considering the parties' arguments, the court has considered what its authority on remand is in light of the limited scope of the appeal and the directions given it from the District Court.  The court has also considered the appropriate role of the bankruptcy court in light of the fact that the majority of the conduct for which TRG seeks supplemental damages has occurred during the pendency of the First Appeal.  Finally, the court has considered whether this court's decision declining to afford TRG relief at this time in any way affects the parties' rights to pursue such relief following the Second Appeal or any later date.  The court will discuss each of these considerations, in turn.

A.     Bankruptcy Court Jurisdiction After Appeal

"[F]ederal courts, being courts of limited jurisdiction, must assure themselves of jurisdiction over any controversy they hear, regardless of the parties' failure to assert any jurisdictional question." *Noel Canning v. N.L.R.B.*, 705 F.3d 490, 496 (D.C. Cir. 2013), *aff'd,* 573 U.S. 513 (2014).

The Seventh Circuit has observed "the ancient stricture that, when a case is on appeal, all lower courts lose jurisdiction over it and related matters." *Levey v. Systems Div., Inc.* (*In re Teknek, LLC*), 563 F.3d 639, 650 (7th Cir. 2009) (*citing In re Statistical Tabulating Corp., Inc.,* 60 F.3d 1286, 1289 (7th Cir. 1995) (*citing Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982))).  As the Supreme Court in *Griggs* explained, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." 459 U.S. at 58.  As the Seventh Circuit further explained, "[t]he purpose of this rule is to avoid the confusion of placing the same matter before two courts at the same time and to preserve the integrity of the appeal process." *Teknek*, 563 F.3d at 650.

That loss of jurisdiction is, however, subject to conditions and restrictions.

First, except in circumstances not applicable here, only final orders are appealable.  *In re Sobczak-Slomczewski*, 826 F.3d 429, 431 (7th Cir. 2016) ("Congress confers jurisdiction on district courts to hear appeals from *final* orders of a bankruptcy court ….") (emphasis added).  A pending motion for reconsideration renders the order in question nonfinal, and such a motion "tolls the time limit for filing an appeal until after full resolution of that motion." *B-3 Properties, LLC v. Lasco*, 517 B.R. 889, 894 (N.D. Ind. 2014) (*citing Martinez v. City of Chicago,* 499 F.3d 721, 725 (7th Cir. 2007)).  Such motions for reconsideration that cause the bankruptcy court to retain jurisdiction even where an appeal is pending are set forth in Bankruptcy Rule 8002(b). *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002).

7

Second, the loss of jurisdiction is limited to the issues "involved in the appeal." *In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 691 (7th Cir. 1992) (*quoting In re Commodore Corp.,* 86 B.R. 564, 567 (Bankr. N.D. Ind. 1988)).

Last, the bankruptcy court, as the trial court, retains jurisdiction to handle matters still within its purview regarding the appeal, namely a request for a stay pending appeal. *See, e.g.*, Fed. R. Bankr. P. 8007(a)(1), (2) (providing that a request for a stay pending appeal is made first to the bankruptcy court and that request may be made before *or after* the notice of appeal is filed).

Here, there can be little question that F&D's First Appeal divested this court of jurisdiction over the Damages Motion. While F&D did not appeal the calculation of damages in Kimball II, it did appeal causation and without a final order on causation the damages calculation is meaningless. Further, there was no motion for reconsideration filed with respect to the Damages Motions prior to the First Appeal.

The bankruptcy court did, however, retain jurisdiction to rule on F&D's request for a stay pending appeal, Motion for Stay Pending Appeal [Dkt. No. 4295], and granted that motion with the Stay Order. The Stay Order stayed, "pending appeal," each of the court's previous decisions and orders in Kimball I and Kimball II. Stay Order, at ¶ 4.

The bankruptcy court's jurisdiction did not return until the First Appeal was concluded. At such time, unless the conclusion was by limited remand in which the appellate court retained jurisdiction but for the issue remanded, *United States v. Bell*, 826 F.3d 378, 380 (7th Cir. 2016) ("During a limited remand, we retain jurisdiction."), the trial court presumably regains full jurisdiction over the matter.

When a matter is not fully remanded, the trial court must "confine its discussion to the issues remanded." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). It seems obvious that a remand should be treated as limited if the appellate court says that it is. But here, the Appellate Decision is silent on limitations on continuing jurisdiction. Absent that, what exactly makes a remand limited is not clear in the case law. The Seventh Circuit has implied that if the appellate case remains open, the remand is limited and the jurisdiction of the trial court is not therefore absolute. *United States v. Johnson*, 427 F.3d 1053, 1058 (7th Cir. 2005).

Here, the District Court closed the First Appeal after the remand to the bankruptcy court. *See* FINAL Closing Order [Docket entry dated 10/24/2019 in Case No. 19 C 00389]. Further, the District Court issued no stay of its own order which, in turn, may have continued to stay the bankruptcy court's underlying orders. *See* Fed. R. Bankr. P. 8025(c). As a result, the court must conclude that the remand was not limited by anything other than general strictures of the law of the case and the mandate rule, discussed below, and this court therefore has jurisdiction over the matter at bar.

B.     The Law of the Case and the Mandate Rule

While this court may have regained jurisdiction over the entirety of the matter following the First Appeal, the scope of what may or may not be considered on remand is not unlimited.

The first limitation is that imposed by the law of the case. As the Supreme Court has stated,

"[a]s most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (citations omitted).

The second is the mandate rule.[9] The mandate rule, by any other name, is the law of the case as applied to appellate matters. *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014). It requires a lower court "to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart." *Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997); *see also Moore v. Anderson*, 222 F.3d 280, 283 (7th Cir. 2000).

Put another way, after "an appellate court either expressly or by necessary implication decides an issue, the decision [is] binding upon all subsequent proceedings in the same case." *Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018) (*quoting Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). That is the law of the case. When an issue court sends an issue back to the lower court to act upon, that is the mandate rule. Each prevents the court from straying beyond what is actually before it—one by prohibiting the court from revisiting what is done and the other by causing lower courts to follow the directions of higher ones.

Further, "an issue that could have been raised on appeal but was not is waived and, therefore, not remanded." *United States v. Whitlow,* 740 F.3d 433, 438 (7th Cir. 2014). "Thus, the law of the case doctrine precludes a [party] from raising an argument not raised during his first appeal." *Adams*, 746 F.3d at 744 (*citing United States v. Sumner,* 325 F.3d 884, 891 (7th Cir. 2003)). That again is the law of the case.

Only under very limited circumstances may a lower court go outside of what is dictated by the law of the case and the mandate rule. The Seventh Circuit has stated that these doctrines are not entirely "inflexible," *Delgado v. United States Dep't of Just.*, 979 F.3d 550, 557 (7th Cir. 2020), that a lower court might vary from an appellate decision where there is a "compelling reason to depart." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (*quoting Law*, 113 F.3d at 783). These reasons must be "'sufficiently compelling circumstances,' such as 'subsequent factual discoveries or changes in the law.'" *Delgado*, 979 F.3d at 557 (*citing Carmody v. Bd. of Trustees*, 893 F.3d 397, 407–08 (7th Cir. 2018) (*citing EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005))).

These doctrines also do not limit the scope of the lower court's consideration of other matters. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (*citing Sprague v. Ticonic Nat'l*

---

[9]    Unlike in matters heard by the Court of Appeals, *see* Fed. R. App. P. 41, there is no provision in the Bankruptcy Rules regarding the issuance of an express mandate on appeal. Still, the general appellate rules do anticipate that a formal mandate might not issue. Fed. R. App. P. 41(a). In such an instance, the federal appellate rules provide that the mandate is the appellate court's judgment, its opinion, if any, and any direction about costs. *Id.* Here, in the absence of a formal mandate not contemplated under the rules, it seems provident to treat the Appellate Decision as a whole as the District Court's implied mandate, and expressly follow the District Court's directions contained therein.

*Bank*, 307 U.S. 161, 168 (1939)); *In re Elk Grove Vill. Petroleum, LLC*, 562 B.R. 708, 715 (Bankr. N.D. Ill. 2016) (Barnes, J.), *aff'd sub nom. Illinois Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465 (7th Cir. 2018).

So, when the District Court remanded the issues resolved by this court in the Decision on Remand, it created four distinct categories of issue before this court.

The first are those issues which were expressly or impliedly remanded. *Moore*, 222 F.3d at 283 (7th Cir. 2000). Those are limited to "a determination of contempt under the standard articulated in *Taggart*." Appellate Decision, 2019 WL 5208853, at *6.[10]

The second are those issues which, while included in the First Appeal, were either expressly affirmed or were outside the scope of the remand. *Christianson*, 486 U.S. at 816. Those issues include the court's jurisdiction to hear the matters before it.

The third are those issues which were final and appealable but were not a part of the First Appeal. *See, e.g.*, Fed. R. Bankr. P. 8002(a)(1) (providing that appeals must filed within fourteen days after the entry of judgment, order, or decree being appealed); *Adams*, 746 F.3d at 744; *Whitlow,* 740 F.3d at 438; *Sumner,* 325 F.3d at 891. Those issues include the court's calculation of damages for the period from August 9, 2011, to August 2, 2017, in Kimball II, which could have been appealed by either party but were not. Reconsideration was not sought by either party at that time and these calculations are not the subject of the present Supplemental Damages Motion.

Last are all those issues outside of the court's determination of the Damages Motion. Those, by definition, would include damages, if any, accruing after the court's decision in Kimball II.

Here, the court need not consider either the first or second category, nor revisit the calculation of damages from August 9, 2011, to August 2, 2017, in the third category. Those matters are now the law of the case.

The court must, however, consider further the propriety of TRG's request for additional damages.

C.      TRG's Request for Additional Damages

TRG has requested two types of additional damages. First, TRG has sought reconsideration of the court's earlier refusal to consider damages from August 2, 2017, to July 30, 2018. Second, TRG has sought damages for F&D's alleged continuing contempt of this court's orders in Kimball I and Kimball II after July 30, 2018.

---

[10]      As noted in the Decision on Remand, that may or may not include whether the evidentiary standard should be different than that which was applied in Kimball I and Kimball II. Decision on Remand, 620 B.R. at 905 n.4. As noted by the court therein, it has been established that F&D's actions violated the Release and Plan Injunction by both the preponderance of the evidence, the standard dictated by the Supreme Court for civil matters in *Grogan v. Garner*, 498 U.S. 279, 286 (1991), applied by the court in Kimball I and Kimball II and not addressed by the District Court and thus arguably the law of this case, and by clear and convincing evidence, the standard implied by *Taggart. Id.* at 907.

TRG's request is brought by way of a motion to reconsider the court's Decision on Remand. For several reasons, this is inappropriate.

Both Civil Rules 52 and 59, upon which the Supplemental Damages Motion is predicated, are modified as they apply in bankruptcy matters. Each provides that the applicable time period for seeking amended findings or an amended judgment, respectively, is fourteen days. *See* Fed. R. Bank. P. 7052 and 9023. Here, the Supplemental Damages Motion was filed on October 13, 2020, within fourteen days of the Decision on Remand issued on September 30, 2020. It is not, however, the Decision on Remand that TRG really seeks to alter. The Decision on Remand made no independent finding on damages. Damages were not included in the First Appeal and was not within the scope of the mandate from the District Court. Instead, it was Kimball II that found the damages that TRG seeks to alter.

Kimball II, however, was entered on January 3, 2019. Any motion seeking to revisit the court's findings under either Civil Rule 52 or 59 was, by the rules, required to be filed no later than January 17, 2019. *See* Fed. R. Bank. P. 7052 and 9023. The Supplemental Damages Motion is not timely under either Rule. True, F&D did appeal in the interim, but as discussed above, the appeal waits for the reconsideration, not the other way around. *PrimeSource Bldg. Prod., Inc. v. Felten*, Case No. 16 CV 11468, 2018 WL 10425921, at *2 (N.D. Ill. Mar. 8, 2018) (a "notice of appeal has no effect until the motion to reconsider is disposed of"); *B-3 Properties*, 517 B.R. at 894.

Neither the Appellate Decision nor the Decision on Remand did anything to change the timing required by Civil Rules 52 and 59 in accordance with Bankruptcy Rules 7052 and 9023. TRG's Supplemental Damages Motion, as it seeks damages that could have been sought at the time of the court's initial finding of damages in Kimball II, is thus untimely under the Rules on which it relies.

Further, nothing in the Supplemental Damages Motion addresses in any fashion the Stay Order, which provided that, in exchange for a supersedeas bond, the court's orders in Kimball I and Kimball II "are stayed pending appeal." Stay Order, at ¶ 4. As the movant, TRG bears the burden on its motion. Yet TRG states nothing regarding the state of the bond and the state of the Stay Order as either or both relate to the request before the court. In so doing, TRG also does nothing to clarify how the potentially broad "pending appeal" language may have meaning as to subsequent appeals. If the Stay Order continues to apply, the terms of this court's previous orders are stayed. While damages might continue to accrue, the court cannot clearly see how F&D could be held to task over such damages until such time as the stay lifts. As either the continued application of the stay or the application of the bond could change the result of the Supplemental Damages Motion,[11] TRG, by failing to provide clarity over whether the orders remained stayed pending the First, the Second or any further Appeals, the period for which it seeks supplemental damages, and whether the bond still protects TRG—also a factor to be considered—has failed to demonstrate that its damages request is appropriate at this time. That failure militates against the relief sought by TRG.

---

[11] As the Stay Order imprecisely refers to the period of the stay as "pending appeal" without addressing whether the application is for one or all subsequent appeals, the Stay Order could arguably remain in effect. Further, TRG doesn't assist the court in informing it how F&D can be held liable at this time for complying with orders that may still be stayed.

Finally, TRG seeks as continuing damages an award that compensates it for its litigation costs during the First Appeal. While TRG may be correct that as part of this court's ability to enforce its contempt order, this court may sanction F&D for behavior before the District Court, *compare Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990) (while a district court has continuing jurisdiction to sanction under Civil Rule 11 even after an appeal is filed, "[t]he Federal Rules of Appellate Procedure place a natural limit on Rule 11's scope.") *with Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions …."), TRG hasn't convincingly explained why it is compelling for the court to act now. As the Supreme Court said in *NASCO*, "inherent powers must be exercised with restraint and discretion." 501 U.S. at 44.

TRG's major argument is that the court "can and should fully resolve the [Supplemental Damages] Motion." But the circumstances of TRG's request belie any assertion that an order from the court at this time would somehow fully resolve TRG's pursuit of sanctions against F&D. TRG's Supplemental Damages Motion itself seeks damages for costs incurred defending F&D's First Appeal.[12] Yet the Second Appeal is presently pending, which appeal will again delay enforcement of the Kimball I and Kimball II orders. TRG's actions in bringing the Supplemental Damages Motion are a clear indication that damages would not be fully resolved by an order granting the Supplemental Damages Motion, as TRG might and likely would seek similar supplementation following the conclusion of the Second Appeal.

Finally, as to the presently pending, Second Appeal, while *Cooter* seems to indicate that this court might still consider contempt sanctions even with an appeal pending, *Cooter & Gell*, 496 U.S. at 396 (describing Civil Rule 11 sanctions as a collateral matter and not one on the merits), ruling on the Supplemental Damages Motion while the resolution of the District Court's mandate from the Appellate Decision remains open and subject to an appeal would in the court's view create a moving target for the District Court. That is just the type of confusion and challenge to the integrity of the appeal process that the Seventh Circuit has warned against. *Teknek*, 563 F.3d at 650.

CONCLUSION

For all of the foregoing reasons, while the court finds that it has jurisdiction to consider the Supplemental Damages Motion, the court finds that the request is inappropriate under the present circumstances. Because the request is improvident, the court need not determine if TRG has lost the opportunity to seek damages not previously sought. When it does, however, the court will apply the principles set forth herein.

---

[12] The court is aware that TRG has argued that this court may award appeal costs as further contempt damages even if the District Court does not award costs, and reserves judgment on the propriety of such a request. *NASCO*, 501 U.S. at 46; *see also F.T.C. v. Trudeau*, 662 F.3d 947, 950–51 (7th Cir. 2011) (addressing the trial court's ability to provide "full remedial relief.").

12

The Supplemental Damages Motion is, therefore, DENIED without prejudice.  A separate order to that effect will be entered concurrently herewith.

Dated:  June 10, 2021                                                    ENTERED:

                                                                                    _____
                                                                                    Timothy A. Barnes
                                                                                    United States Bankruptcy Judge